Debtor 1 _____    Case number (if known)_____
         First Name    Middle Name    Last Name

| | Describe the nature of the business | Employer Identification number |
|---|---|---|
| Business Name | | Do not include Social Security number or ITIN. |
| | | EIN: __ __ - __ __ __ __ __ __ __ |
| Number   Street | Name of accountant or bookkeeper | Dates business existed |
| City        State      ZIP Code | | From _____ To _____ |

28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.

☑ No
☐ Yes. Fill in the details below.

|  | Date issued |
|---|---|
| Name | MM / DD / YYYY |
| Number   Street | |
| City        State      ZIP Code | |

| Part 12: | Sign Below |
|---|---|

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

✗ _____    ✗ _____
Signature of Debtor 1                Signature of Debtor 2

Date 12.04.2024            Date _____

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?
☑ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?
☑ No
☐ Yes. Name of person_____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| In Re: | Case Number 24-41202-EDK |
|--------|--------------------------|
| Kyra Isabel Nelson | Chapter 13 |

**OBJECTION OF WELLS FARGO BANK, N.A. TO DEBTOR'S CHAPTER 13 PLAN**

Now comes Wells Fargo Bank, N.A. ("Secured Creditor") and hereby files this Objection to the Debtor's Chapter 13 Plan. As grounds for said Objection, Secured Creditor states the following:

1. Secured Creditor is the holder of a mortgage encumbering the property located at *65 Lovers Lane, Groton, MA 01450* (the "Property"), originally given by Bradley R. Nelson to World Savings Bank, FSB (the "Mortgage"). The Mortgage is dated March 2, 2007 and is recorded with the Middlesex County (Southern District) Registry of Deeds in Book 49111, Page 205. Upon information and belief, Secured Creditor is a successor in interest to World Savings Bank, FSB as the originating lender. Consequently, the Mortgage has not been assigned of record. Wells Fargo Bank, N.A. is also the current servicer for this loan.

2. The Mortgage secures a promissory note given by Bradley R. Nelson to World Savings Bank, FSB in the original principal amount of $511,500.00 (the "Note").

3. Upon information and belief, Kyra Isabel Nelson (the "Debtor") holds an interest in the Property by virtue of the Warranty Deed from Bradley R. Nelson to Kyra Isabel Nelson (a/k/a Kyra I. Nelson) recorded with the Middlesex County (Southern District) Registry of Deeds in Book 82344, Page 531.

4. The Debtor's Chapter 13 Petition was filed on November 21, 2024.

5. The deadline for filing timely Proofs of Claim in this case is January 30, 2025. Secured Creditor anticipates filing a timely Proof of Claim in this case setting forth a pre-petition arrearage claim of approximately $457,628.10.

6. On or about December 6, 2024, the Debtor filed a Chapter 13 Plan [Doc. No. 14]. The Debtor's Plan does not propose to cure Secured Creditor's pre-petition arrears, nor does it provide for the maintenance of post-petition mortgage payments directly to Secured Creditor as such payments come due during the pendency of this Chapter 13 case. In fact, the proposed Plan makes no reference to the Property and/or Secured Creditor's claim.

7. While Secured Creditor acknowledges that the Debtor is/was not a party to the Mortgage or Note and is not obligated to make payments pursuant to same, Secured Creditor asserts that the Debtor has no basis for proposing a Plan which fails to state that its full pre-petition arrearage claim will be cured through the Plan and/or for the maintenance of post-petition mortgage payments as such payments come due in light of her current ownership of the Property (which is subject to the contractual terms and conditions of the Mortgage and its related documents). Secured Creditor asserts that in the alternative of proposing a so-called "cure-and-maintain" Plan, the Debtor shall provide for the surrender of the Property (which is a part of her bankruptcy estate) or some other disposition of same that is permissible under the Code.

8. In its current state, the proposed Chapter 13 Plan fails to appropriately provide for the cure of the full pre-petition arrears owed to Secured Creditor and/or the maintenance of post-petition payment obligations

pursuant to the due date set forth in the Note, and per the explicit terms of the Note and Mortgage at issue, and consequently, the proposed Plan violates 11 U.S.C. § 1322(b)(5).

WHEREFORE, Secured Creditor respectfully requests that the Court:

(1)     Withhold confirmation of the Debtor's Chapter 13 Plan until the Debtor files an Amended Plan which addresses this Objection; and/or

(2)     Grant such other relief as the Court deems just and proper.

Dated:  December 19, 2024

> Respectfully submitted,
> Wells Fargo Bank, N.A.
> By its attorney,
>
> /s/ Marcus E. Pratt
> Marcus E. Pratt, Esquire
> BBO #684610
> Korde & Associates, P.C.
> 900 Chelmsford Street, Suite 3102
> Lowell, MA 01851
> Tel: (978) 256-1500
> bankruptcy@kordeassociates.com

24-046462 / BK01

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| In Re: | Case Number 24-41202-EDK |
|---|---|
| Kyra Isabel Nelson | Chapter 13 |

**CERTIFICATE OF SERVICE**

I, Marcus E. Pratt, Attorney for **Wells Fargo Bank, N.A.** hereby certify that on December 19, 2024 I electronically filed the foregoing *Objection to Debtor's Chapter 13 Plan* with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System. I served the forgoing documents on the following CM/ECF participants:

Richard King, Assistant U.S. Trustee
David Mawhinney, Trustee

I certify that I have mailed by first class mail, postage prepaid the documents electronically filed with the Court on the following non-CM/ECF participants:

Kyra Isabel Nelson
65 Lovers Lane
Groton, MA 01450

/s/ Marcus E. Pratt
Marcus E. Pratt, Esquire
BBO #684610
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
Tel: (978) 256-1500
bankruptcy@kordeassociates.com

24-046462 / BK01

Kyra I. Nelson
65 Lovers Lane
Groton, MA 01450
kyra.nelson5@gmail.com
(617) 821-2341

<div align="center">

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

</div>

|  |  |
|---|---|
| | Chapter 13 |
| In re: | Case # 24-41202 |
| KYRA I, NELSON, | **RESPONSE TO WELLS FARGO BANK, N.A.'S OBJECTION TO CHAPTER 13 PLAN** |
| Debtor, | |

<div align="center">

**RESPONSE TO WELLS FARGO BANK,
N.A.'S OBJECTION TO CHAPTER 13 PLAN**

**INTRODUCTION**

</div>

COMES NOW Plaintiff KYRA NELSON and files this Response to Wells Fargo Bank, N.A.'S (hereinafter referred to as Wells Fargo) Objection to Chapter 13 Plan Objection Pursuant to RULE 3015 as follows.

WELLS FARGO's objection to the Plan is premature as Wells Fargo has not filed a Proof of Claim and is not recognized as a Creditor in this case at this time. Wells Fargo should be prohibited from filing a Proof of Claim against Kyra Nelson unless Wells Fargo can prove a valid debt and a valid lien as a secured creditor. This is doubtful given the Recordation Act that is the only verifiable means to claim a secured lien on property in Massachusetts. See Exhibit A County Records (no modified or assigned lien to Wells Fargo exists).

1

The Objection does not state with particularity what compensation is allowed

for payment of a discharged debt, or a law that allows collection of arrearage for

a party that is not obligated to a Note or Mortgage.  The request for any payment

is a violation of the Bankruptcy Discharge Injunction, pursuant to §524(a)(2) of

the Code.  Response to the Objection is as follows:

1. Wells Fargo is not a secured Creditor of Kyra I. Nelson (hereinafter referred to as

'Kyra').  Wells Fargo is not the holder of a mortgage encumbering Kyra's property and,

as such, is not a secured creditor.  Wells Fargo is not the successor in interest to the

World Savings Bank that was the lender to the former owner of the property and, as

such, is not a creditor.  The World Savings Bank mortgage has never been assigned of

record.  The debt from lender World Savings Bank has extinguished due to expiration of

the Statute of Limitations.  As such, Wells Fargo has no standing to file any papers in

this bankruptcy, including an objection to the Plan. **1**

---

1 Wells Fargo claims an interest in the World Savings Note and Mortgage through dicta in a different court.
In Massachusetts, dicta in a bankruptcy appellate decision is never binding in subsequent cases. Bankruptcy
Appellate Panel (BAP) cannot ignore the Supreme Court's unambiguous statement of the law. Dicta is
defined as a judicial comment made during the course of delivering a judicial opinion but is unnecessary to
the decision in the case and therefore not precedential, see *In re Hoskins*, 262 B.R. 693 (2001). Courts are
free to reject dicta found in otherwise precedential opinions because such passages have not been "refined
by the adversary presentation" (*In re Heft*, 564 B.R. 389 (2017).

Federal appellate courts should afford deference and respect to Supreme Court dicta, particularly when it is
consistent with longstanding Court precedent (In re Belew, 588 B.R. 875 (2018). However, not all dicta
are created equal, and the binding nature of dicta can vary depending on the context and the court's
interpretation (*In re Belew*, supra).    The dicta Wells wants followed, or as Wells claims was a
"discussion", would be that without evidence of transfer of assets, Wells "merger," created an asset
transfer.  In this case, it was not even a merger of the company that held the asset, and therefore, could
never be a ruling against Kyra Nelson's claim that she has no debt owed to Wells. Dicta of debt transfer
was inappropriate and had no relevance to a request for an evidentiary hearing to prove the transfer. At the
time an objection to a claim was presented by a different bankrupt party, the BK court was unaware that
Wells' claim was void pursuant to the D'oench Doctrine of Common Law Estoppel. Where Debtor was not
permitted to reveal the Established Rules of Decision of the United States Courts as Authority in other
United States Courts, the fact remains, previous decisions are controlling as Precedents and cannot be
ignored by the BAP.  The bankruptcy appellate panel was unaware that the FDIC and the OCC records did
not find that the lender merged with Wells; rather, these records proved the opposite. The Supreme Court's
D'oench Doctrine imparts that no bank can claim assets alleged to be transferred in a merger, as claimed
by Wells. Debtor has the records proving, by Wells own report to Congress as well as the FDIC and the

2

.   The time-barred debt has relieved the mortgage of worth and it and does not
secure anything. See *Deutsche Bank Nat. Trust Co. v. Fitchburg Capital, LLC*, 471
Mass. 248 (2015) wherein the court stated that "a mortgage ultimately depends
on the underlying debt for its enforceability" and that "a mortgage does not
mature distinctly from the debts or obligations that it secures". The value of a
mortgage is inherently linked to the debt it secures.

.   In *Geffen v. Paletz*, 312 Mass. 48 (1942), the court noted that "the debt
was the principal thing and the mortgage an incident" and that without the
debt, the mortgage would at most be a "naked legal title". The mortgage's
enforceability and value are contingent upon the existence of the underlying
debt. *Maglione v. BancBoston Mortg. Corp.*, 29 Mass.App.Ct. 88 (1990)).

---

OCC records, Wells cannot have this asset. Since it was Well's own report that verified no assets were
given to Wells, this can be seen as fraud on the court by the Wells representatives and perjury by counsel.
When dicta in a bankruptcy appellate decision is shown to be in violation of a federal act, subsequent courts
are not bound by it and can disregard it. If a BAP is unaware of a previous federal doctrine and makes a
ruling contrary to actual laws of the U.S., the ruling can be challenged. For instance, in In re Repository
Technologies, Inc.,601 F.3d 710 (2010), the court noted that dicta are not appealable rulings and do not
create a justifiable controversy. If a ruling is based on dicta or is contrary to federal law, it can be contested
and declared void in subsequent litigation

In Massachusetts, judicial review of agency decisions, including those by the BAP, is governed
by M.G.L.A. 30A § 14. This statute provides a mechanism for challenging and potentially voiding
decisions that are contrary to federal law. M.G.L.A. 30A § 14, which allows for judicial review if the
decision is in violation of constitutional provisions, exceeds statutory authority, or is based on an error of
law, among other grounds.

Courts view BAP decisions as persuasive but not binding *In re Hunter*, 380 B.R. 753 (2008). In the context
of Massachusetts bankruptcy appellate cases, there is no specific case found where dicta was treated as a
ruling and fell under the statute of limitations to perform. However, the general principle remains that dicta
is not binding and does not have the authority of adjudication (*In re MIG*, LLC, 543 B.R. 527 (2015)

In summary, dicta in Massachusetts bankruptcy appellate decisions is not binding and can be nullified by
federal laws and doctrine if shown to be in violation of a federal act. Courts are free to reject dicta, and it
does not have the authority of adjudication. Since no court has ever held that Wells was the Assignee of
the Mortgage or acquired any debt from lender World Savings, there is merely dicta. Of course, had a
court so ruled, then such ruling would be void and vacated under the *D'Oench Doctrine*.

3

This highlights that the mortgage's purpose and value are tied to the debt it secures.

. Kyra is the owner of the property. She did not purchase the property with a debt or lien from Wells Fargo as no lien from Wells Fargo was included on the Deed. *Consumers Sav. Bank v. Coven*, 8 Mass.App.Ct. 594 (1979). This case establishes that when land is conveyed subject to a mortgage, the grantee does not undertake to be bound by or to pay the mortgage debt unless there are explicit words in the deed indicating such an obligation. In this action, the Deed has no such obligation. The mortgage at issue restates these terms that upon sale of the collateral property the only remedy to Lender is acceleration of the debt to the BORROWER, never to a third party without formal written acceptance of the third party to pay the debt (Mortgage of World Savings and Mr. Nelson as paragraph 26).

. Kyra timely filed the Plan on November 21, 2024.

. On November 21, 20024, Kyra Nelson had no debt with Wells Fargo, no personal obligation to pay to Wells Fargo and no note that was due to Wells Fargo, N.A. *In Galiastro v. Mortgage Electronic Registration Systems, Inc.*,467 Mass. 160 (2014) the court confirmed that under Massachusetts common law, the transfer of an underlying note does not carry with it the mortgage. A mortgage can be separated from the note. The court concluded that unless a foreclosing party holds both the mortgage and the underlying mortgage note, a foreclosure by power of sale is invalid, as is the ability to file a Proof of Claim. Kyra Nelson has no obligation to Lender World Savings. Wells Fargo has no perfected lien to bring to this Honorable Court. The Recordation Act of

4

Massachusetts is clear that Wells Fargo has no lien on the property. Consequently, no lien holder can transfer the debt to Kyra Nelson through a lien.

.    Wells Fargo is not a secured creditor, had no pre-petition lien in 2012 when the prior owner's Chapter 7 took place and had no lien recognized by this same Bankruptcy Court that allowed for a "ride-through" lien and Debtor is not anticipating that Wells Fargo will file a valid Proof of Claim in this Bankruptcy.

.    Wells Fargo is not a secured creditor and was not a holder of a perfected lien at the time Kyra Nelson purchased the property. A lien does not transfer a debt obligation to the property owner. Debtor has no obligation to cure Wells Fargo arrearage of a discharged note. Wells Fargo does not have a right to be present in this case.

.    Since Wells Fargo is not a creditor of Kyra Nelson and certainly not a secured creditor, its objection to Kyra paying her creditors should be stricken.

.    The Chapter 13 Plan should not include anything for Wells Fargo since Wells Fargo has no claims to make. Wells Fargo was never the prior lender of the prior owner. The prior owner's debt to World Savings Bank is no longer viable as the debt may never be asserted since the debt is beyond the Statute of Limitations. Wells Fargo also has no viable lien or mortgage.

.    Wells Fargo's unfounded claims against nonborrower Kyra Nelson are disallowed pursuant to the Bankruptcy Discharge Injunction 11 U.S.C. § 524(a)(2).

.    Kyra has record evidence from the OCC and the FDIC that show clearly that the lender of the prior loan (World Savings Bank) has no relationship to Wells Fargo, that pursuant to the D'Oench Doctrine no court may make any ruling contrary to the records of the OCC and the FDIC, and that any court holding contrary to the records of the OCC and FDIC is void ab initio. It matters not that Wells Fargo merged with some other World Savings Bank – since Wells Fargo #3511 did not merge with the lender World Savings

5

84

Bank, now known as Wells Fargo South Central (#5146), Wells Fargo (#3511) has no interest in that note or mortgage and is not a creditor, much less a secured creditor.

.   The following legal principles and cases are relevant regarding whether it is a violation of the bankruptcy injunction for a party that is not a borrower or a property owner at the time the loan was signed, to be responsible for payment of the note seventeen (17) years later as well as whether it is a violation for Wells Fargo to file a new claim in Kyra Nelson's bankruptcy for payment in a new Chapter 13 case, twelve (12) years later after the debt is discharged against the borrower for lapse of the debt under the Statute of Limitations:

a. Discharge Injunction: The discharge injunction pursuant *11 U.S.C.A. §524(a)(2)* prohibits any act to collect, recover, or offset any discharged debt as a personal liability of the debtor *11 U.S.C.A. § 524.* This means that once a debt is discharged in bankruptcy, creditors are barred from attempting to collect that debt from any debtor personally.

b. Violation of Discharge Injunction: In *In re Brown*, 481 B.R. 351 (2012), the court found that a mortgage lender's attempt to collect a discharged debt by indicating an incorrect amount required to bring the debtor's loan current was a violation of the discharge injunction. *In re Forson.* 583 B.R. 704 (2018). Similarly, *In re Forson*, (supra), the court held that adding a discharged debt as a new loan to debtor violated the discharge injunction, regardless of the creditor's intent or good faith  In re Smith, 224 B.R. 388 (1998).

c. New Debt Post-Discharge: In *In re Smith*, 224 B.R. 388 (1998), the court concluded that a post-petition loan that included an obligation to

6

85

repay a portion of a discharged debt constituted a willful violation of the discharge injunction; see *In re Watkins*, 240 B.R. 668 (1999). This confirms that creating a new obligation that includes a discharged debt is prohibited.

d. *In Personam* Actions: The discharge injunction prevents enforcement of personal liability. See *Federal National Mortgage Association v. Cawood,* 610 B.R. 281 (2019). Therefore, actions to collect the debt from the debtor personally (*in personam*) are prohibited.  No lawful Proof of Claim against Kyra Nelson can be filed.

e. Subsequent Chapter 13 Filing: Under *In re Sharak*, 57 1 B.R. 13 (2017), a debtor can receive a discharge of all debts provided for by the plan or disallowed under section 502.  A third party bankruptcy is a new claim for a new Bankrupt party filed in a new Chapter 13 case, and Wells Fargo (#3511) must comply with the provisions of Chapter 13 and the discharge injunction. In this case, Kyra Nelson is not an obligor to the note or mortgage in question and has no need to include Wells Fargo in her plan for repayment of her debts.

. Attached see Exhibit B the evidence for in this matter, Wells Fargo received no assets from its mergers with Wachovia or with any bank known as Wells Fargo Southwest, which also received no assets from Wachovia.

1.  Due to the evidence present in this matter, Wells Fargo should not be permitted to file anything in this matter.

### CONCLUSION

Debtor Kyra Nelson hereby Responds to Wells Fargo's Objection to Chapter 13 Plan since Wells Fargo is not a creditor of debtor, has no note or obligation from Debtor, Wells Fargo has no lien and Wells Fargo not a secured creditor, and any claims Wells Fargo may have otherwise had (which are denied), are beyond the Statute of Limitations and no longer capable of being sought, especially against Debtor.

WHEREFORE Kyra I. Nelson respectfully Moves this Honorable Court to Disallow and Strike Wells Fargo Bank, N.A.'s Objection to the Chapter 13 Plan as being without any credible basis and hold them Not to be a Secured Creditor of debtor.

I declare under penalty of perjury under the laws of the State of Massachusetts that the foregoing is true and correct.


Dated: January 6, 2025

Kyra Nelson   pro se

Kyra I. Nelson
65 Lovers Lane
Groton, MA  01450
Kyra.nelson5@gmail.com
(617) 821-2341

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

In Re:                                  Chapter 13
                                        Case Number: 24-41202 EDK
Kyra Isabel Nelson                      Judge Elizabeth D. Katz


CERTIFICATE OF SERVICE

I, Kyra I. Nelson, Debtor, hereby certify that on January 6, 2025, I electronically filed the
foregoing Opposition to the Objection of Wells Fargo Bank, NA to Confirmation of
Chapter 13 Plan with the United States Bankruptcy Court for the District of
Massachusetts using the prose_filings@mab.uscourts.gov. I served the foregoing
documents on the following participants:

Richard King, Assistant U.S. Trustee
prose_filings@mab.uscourts.gov

David Mawhinney, Trustee
prose_filings@mab.uscourts.gov


Marcus E. Pratt, Esquire
Korde & Associates, P. C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
Tel:  (978) 256-1500
bankruptcy@kordeassociates.com


                                        Kyra Nel      pro se
                                        Kyra I. Nelson
                                        65 Lovers Lane
                                        Groton,  MA  01450

# EXHIBIT

# A

# Judicial Notice Request

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kyra I. Nelson
65 Lovers Lane
Groton, MA 01450
kyra.nelson5@gmail.com
(617) 821-2341

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

KYRA I, NELSON,

    Debtor,

Chapter 13

Case # 24-41202

**REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF PLAINTIFF'S OPPOSITION TO
WELLS FARGO'S OBJECTION TO DEBTOR'S
PLAN**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Massachusetts Notice of Law, Mass. R. Evid 202,  Plaintiff hereby respectfully

requests that the Court take Judicial Notice of the following documents, instruments, and other things,

and to consider them, for purposes of Plaintiff's **OPPOSITION TO WELLS FARGO'S**

**OBJECTION TO DEBTOR'S PLAN and Plaintiff's** entire action, to be included and incorporated

by reference in every paper by all parties, at every hearing, and at trial.

**POINTS AND AUTHORITIES**

Mass. Guid. Evid. Section 202 – Judicial Notice of Law (as amended through October 3, 2024)

**(a) Mandatory.** A court shall take judicial notice of

1
Plaintiff's Request for Judicial Notice

**(1)** the General Laws of the Commonwealth, public acts of the Massachusetts Legislature, the common law of Massachusetts, rules of court, the contents of the Code of Massachusetts Regulations, and Federal statutes, and

**(2)** the contents of Federal regulations and the laws of foreign jurisdictions that are brought to the court's attention.

**(b)Permissive.** A court may take judicial notice of the contents of Federal regulations and the laws of foreign jurisdictions not brought to its attention, legislative history, municipal charters, and charter amendments.

**(c)Not Permitted.** A court is not permitted to take judicial notice of municipal ordinances, town bylaws, special acts of the Legislature, or regulations not published in the Code of Massachusetts Regulations.

*Subsections (a)(1) and (2).* These subsections are derived from 44 U.S.C. §1507 (contents of the Federal Register shall be judicially noticed); G. L. c. 30A, §6 (regulations published in the Code of Massachusetts Regulations shall be judicially noticed); and G. L. c. 233, §70 ("The courts shall take judicial notice of the law of the United States or of any state, territory or dependency thereof or of a foreign country whenever the same shall be material."). See also Cohen v. Assessors of Boston, 344 Mass. 268, 269 (1962); Ralston v. Commissioner of Agric., 334 Mass. 51, 53-54 (1956); Mastrullo v. Ryan, 328 Mass. 621, 622 (1952); Brodsky v. Fine, 263 Mass. 51, 54 (1928). While the court must take judicial notice of the existence of a law, that notice does not extend to notice of the adjudicative fact that the law was followed. See, e.g., Commonwealth v. Tantillo, 103 Mass. App. Ct. 20, 27-29 (2023) (in prosecution for negligent operation of motor vehicle where prescription bottles of Tramadol and Clonazepam were found in defendant's car, judge could take judicial notice of requirement of G. L. c. 94C, §21, that prescriptions contain cautionary statements, but it was improper for judge to take judicial notice that "all bottles would" have cautionary statements on them, since labels could be dislodged or contents of bottles could be combined).

**Pursuant to Evidence Code §201**

**(a) Scope.** This section governs judicial notice of an adjudicative fact only, not a legislative fact.

**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it

    **(1)** is generally known within the trial court's territorial jurisdiction or

    **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

 **(c) When Taken.** A court may take judicial notice at any stage of the proceeding, whether requested or not, except a court shall not take judicial notice in a criminal trial of any element of an alleged offense.

 **(d) Opportunity to Be Heard.** On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

 1  (e) **Instructing the Jury.** In a civil case, the court must instruct the jury to accept the noticed fact as
 2  conclusive. In a criminal case, the court must instruct the jury that it may or may not accept the noticed
    fact as conclusive.

 3  *A judge may take judicial notice of a firmly established theory or methodology that has been
 4  determined to be reliable in our courts. Commonwealth v. Davis, 487 Mass. 448, 454-455 (2021).*

 5  *In Yankee Atomic Elec. Co. v. Secretary of the Commonwealth, 402 Mass. 750, 759 n.7 (1988), the
    court explained the difference between "judicial notice" of facts and "official notice" of facts. The latter*
 6  *includes matters that are "indisputably true," as well as other factual matters that an agency may take
    notice of due to its special familiarity with the subject matter. See G. L. c. 30A, §6.*

 7
 8  ***Court Records and Prior Proceedings.*** *"[A] judge may take judicial notice of the court's records in a
    related action." Jarosz v. Palmer, 436 Mass. 526, 530 (2002). See also Adoption of Zak, 90 Mass. App.*
 9  *Ct. 840, 844 n.7 (2017); Home Depot v. Kardas, 81 Mass. App. Ct. 27, 28 (2011). In contrast, "[a]
    judge may not take judicial notice of facts or evidence brought out at a prior hearing that are not also*
10  *admitted in evidence at the current hearing." Commonwealth v. O'Brien, 423 Mass. 841, 848-849
    (1996); Furtado v. Furtado, 380 Mass. 137, 140 n.1 (1980); Ferriter v. Borthwick, 346 Mass. 391, 393*
11  *(1963). See also Care & Protection of Zita, 455 Mass. 272, 283 (2009) ("We recognize the challenges
    that confront a judge who has presided over a case that is closely related to a new proceeding; it may*
12  *be impossible to erase a judge's memory of the prior case. But each party is entitled to an impartial
    magistrate and a decision based on the evidence presented in her case."); Matter of Hernandez, 101*
13  *Mass. App. Ct. 856, 869 & n.20 (2022) (in civil commitment proceeding, judge erred in taking judicial
    notice of prior competency findings in same proceeding but was entitled to take judicial notice of*
14  *procedural history of related criminal case).*

15          **Property records attached as Exhibit 1 through 8, and Exhibits 13 and 14, here are records**

16  **from the Registry's Office of Middlesex South Registry of Deeds that follows the necessary**

17  **elements of the Recordation Act of Massachusetts requiring enforceability of only perfected**

18  **and recorded, publicly noticed documents.  These records reflect the exact name of the**

19  **party that has received a right or interest, and that the right and interest has been perfected**

20  **and duly noticed to the public before it can take effect and be enforceable.  Without this**

21
22  **recordation and notice to the public, no rights, including judgments, are enforceable against**

23  **a property owner.  These records state the parties that have obtained legal rights and**

24  **interest in Debtor's real property in Massachusetts.  These records also reflect the fact that**

25  **the parties with the rights have not relinquished their rights to another party and still**

26  **maintain and hold the rights and interests that are duly perfected with the Registry's**

27  **office.  Without this perfection, there can be no lawsuits, rulings, judgments or liens that**

28

Plaintiff's Request for Judicial Notice

1   can be enforced against the Debtor Kyra Nelson in this bankruptcy case and unrecorded,

2   unnoticed entities cannot request payment as a secured creditor without the perfection of its

3   claim.  The property rights and Recordation Act and enforcement are clear as to the parties

4   with enforceable rights against the property at 65 Lovers Lane, Groton, MA 01450 and are

5   attached here to make it known to the Court the entitlements as they are recorded and

6   perfected on the property without question as to who has these rights.  We are seeking

7   judicial notice as Wells Fargo has made unverifiable claims that there are recorded and

8   perfected liens, interests or rights, which these documents will prove have not been lawfully

9   perfected and do not exist on the property at 65 Lovers Lane, Groton, MA 01450.  For

10   many years Wells Fargo has perpetuated a serious fraud on the court by making claims on

11   real property which are not based on the laws of real property rights in Massachusetts.  The

12   long standing and strictly construed Recordation Laws and other statutes in Massachusetts

13   that perfect property interests cannot be by-passed or ignored by the Court and create an

14   interest that lawfully does not exist.  Well Fargo continues to attempt to  convince the courts

15   that an unenforceable right exists when in reality, all Federal and State regulator records

16   actually say the opposite of what Wells Fargo stated; therefore the need for judicial notice

17   of the federal regulator records and perfected interests are necessary for the Debtor to

18   prove Wells Fargo's claims to be a fraud on the court from which this Court should cause

19   Wells Fargo to cease and desist in its claims of interest.  Wells Fargo's Claims that have not

20   and cannot be perfected, and which the statute of limitation has run on the claims, that have

21   now been discovered to be deceptively, fraudulently and unlawfully brought in front of the

22   Court will present them to be false claims against the Debtor.

- **Exhibit 1** is a true and correct copy of the Original Deed to Bradley R. Nelson that was
  provided when the previous owner gave up all rights, title and interest in the property and

4

Plaintiff's Request for Judicial Notice

transferred the real estate to Mr. Nelson.  Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 2** is a true and correct copy of the Option One Mortgage voluntarily granted by Mr. Nelson to use the property as collateral for the loan agreement. "Covenants:  Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for the encumbrances of record."  Wells Fargo has no interest in the property regarding this transaction. Mr. Nelson had a right to secure the payment of the loan on originated on 2/27/2004 for as long as Mr. Nelson was in control of the collateral. (This lien was later released when it was paid off in 2006 as shown in Exhibit 5.) Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 3** is a true and correct copy of the Option One Mortgage voluntarily granted by Mr. Nelson to use the property as collateral for the loan agreement. "Covenants:  Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for the encumbrances of record."  Wells Fargo has no interest in the property regarding this transaction. Mr. Nelson had a right to secure the payment of the loan originated on 12/23/2005 for as long as Mr. Nelson was in control of the collateral. (This lien was later released when it was paid off in 2006 as shown in Exhibit 6.) Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 4** is a true and correct copy of the Decision One Mortgage voluntarily granted by Mr. Nelson to use the property as collateral for the loan agreement. "Covenants:  Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for the encumbrances of record."  Wells Fargo has no interest in the property regarding this transaction. Mr. Nelson had a right to secure the

Plaintiff's Request for Judicial Notice

94

payment of the loan on originated 7/28/2006 for as long as Mr. Nelson was in control of the collateral. (This lien was later released when it was paid off in 2006 as shown in Exhibit 5.) Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 5** is a true and correct copy of the Discharge of Mortgage originated on 3/1/2004 by Option One Mortgage Corporation. See Exhibit 3, is paid off and released on the property. Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 6** is a true and correct copy of the Discharge of Mortgage originated on 12/23/2005 by Option One Mortgage Corporation. See Exhibit 4, is paid off and released on the property. Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 7** is a true and correct copy of the World Savings FSB Loan voluntarily granted by Mr. Nelson to use the property as collateral for a First Position Lien funding a nonnegotiable loan agreement between Borrower (Mr. Nelson) and World Savings FSB (Charter # 33966): "Covenants: Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for the encumbrances of record." This lien was never modified, or granted a release by the Lender to anyone. This lien secured a funding where World Savings FSB provided money to Mr. Nelson and this debt was never transferred to another party by World Savings, FSB to intercept the payments due to World Savings Bank. There has been no authorized release of this lien or transfer of its rights and the lien is still the only perfected and duly recorded lien providing World Savings FSB its position on the property, per Massachusetts statutes and laws recorded to reflect property rights dating back over hundred years. Mr. Nelson had a right to secure the payment of the loan originated on 3/2/2007 for as long as Mr. Nelson was in control of the collateral. Page 9, Paragraph 26, of this lien states that the "**AGREEMENTS ABOUT LENDERS RIGHTS IF**

1    **THE PROPERTY IS SOLD OR TRANSFERRED"** has the <u>only remedy available, per the</u>

2    <u>actual contract</u>, to World Savings:

3    "**Acceleration of Payment of Sums Secured**. Lender may, at its option, <u>require immediate</u>

4    <u>payment in full of all</u> Sums Secured by this Security instrument if all or any part of the Property,
or if any right in the Property, is sold or transferred without Lender's prior written permission.

5    However, Lender shall not require immediate payment in full if this is prohibited by Federal Law

6    in effect on the date of the Security Instrument."

7    There is only a remedy is acceleration, as there is no remedy of foreclosure on the property to a

8    new beneficial owner or transferee in this Agreement.

9

10    Wells Fargo has no interest in the property regarding this transaction. Wells Fargo has no interest

11    in the property regarding this transaction.  There have been no "rights" exercised by Wells Fargo

12    because there are no lawful rights that Wells Fargo has acquired regarding this real estate

13    pursuant to the Statute of Frauds.

14

15    •   **Exhibit 8** is a true and correct copy of the World Savings FSB Loan voluntarily granted by

16    Mr. Nelson to use the property as collateral for a Second Position Lien funding a nonnegotiable

17    loan agreement between Borrower (Mr. Nelson) and World Savings FSB (Charter # 33966):

18    "Covenants:  Borrower is lawfully seized of the estate hereby conveyed and has the right to

19    mortgage, grant and convey the Property and that the Property is unencumbered, except for the

20    encumbrances of record."  This lien was never modified, or granted a release by the Lender to

21    anyone.  This lien secured a funding where World Savings FSB provided money to Mr. Nelson

22    and this debt was never transferred to another party by World Savings, FSB to intercept the

23    payments due to World Savings Bank.  There has been no authorized release of this lien or

24    transfer of its rights and the lien is still the only perfected and duly recorded lien providing World

25    Savings FSB its position on the property, per Massachusetts statutes and laws recorded to reflect

26    property rights dating back over hundred years. Mr. Nelson had a right to secure the payment of

27

28    the loan originated on 3/2/2007 for as long as Mr. Nelson was in control of the collateral. Page 8,

1   Paragraph 16, of this lien states that the: **"Transfer of the Property or a Beneficial Interest in**

2   **Borrower"** has the only remedy available to World Savings:

3   "If all or any part of the Property, or any interest in it is sold or transferred (or if Borrower is not a
4   natural person and a beneficial interest is Borrower is sold or transferred), Lender may at its
    option, require immediate payment in full 'of all sums secured by this Security Instrument.
5   However, this option shall not be exercised by Lender if exercise is prohibited by Federal Law."

6       There is no remedy of foreclosure on the property to a new beneficial owner or transferee
7   in this Agreement.

8       Wells Fargo has no interest in the property regarding this transaction.  There have been no
    "rights" exercised by Wells Fargo because there are no lawful rights that Wells Fargo has
9   acquired regarding this real estate pursuant to the Statute of Frauds.

10

11  **Property records attached as Exhibit 9, 10, 11 and 12 here are records from the**

12  **Government Offices the Federal Deposit Insurance Corporation and the Office of the**

13  **Comptroller of the Currency and the Courts of the United States that follow the necessary**

14  **elements of the public notice requiring enforceability of only perfected and recorded,**

15  **publicly noticed documents.  These records reflect the exact name of the party that has**

16
    **received a right or interest, and that the right and interest has been perfected and duly**
17
    **noticed to the public before it can take effect and be enforceable.  Without this recordation**
18
    **and notice to the public, no rights, including judgments are enforceable against a property**
19
    **owner.  These records state the parties that have obtained legal rights and interest that**
20
21  **affect the Debtor's real property in Massachusetts.**

22

23  • **Exhibit 9** is a true and correct copy of the Federal Deposit Insurance Corporation's official

24  Government website confirming the World Savings Bank at 2005 Taylor Street, Houston,

25  TX, has merged with Wells Fargo Bank South, N.A. and subsequently merged into Wells Fargo

26  South Central, N.A. as it is known today.  Wells Fargo (Charter #3511) in South Dakota has no

27  interest in this transaction.

28

Plaintiff's Request for Judicial Notice

- **Exhibit 10** is a true and correct copy of the Congressional Records reported by Wells Fargo banking entities as to the mergers and acquisitions of the Holding Company Wells Fargo & Company, and its subsidiaries acquisitions of certain assets acquired by the subsidiaries themselves. The records show that the Wachovia mergers and acquisitions provided no assets to Wells Fargo Chatter #3511 in South Dakota during these mergers. These records also clearly demonstrate that there have been no mergers of Worlds Savings Bank, FSB, Wachovia Mortgage Company or Wells Fargo Southwest that have any reported acquisitions of assets to Wells Fargo Chatter #3511 in South Dakota. No court order (much less dicta) or bank may alter the information from a federal regulator, including the OCC and the FDIC. Any claims other than those based on the actual records of the federal regulators are void pursuant to the D'Oench Doctrine of Common Law Estoppel. The OCC and FDIC records show that Defendant has no interest in the lien or debt. Wells Fargo (Charter #3511) in South Dakota has no interest in this transaction and any claims otherwise are void ***ab initio***.

- **Exhibit 11** is a true and correct copy of the Office of the Comptroller of the Currency's public listing of "NATIONAL BANKS ACTIVE as of 4/30/2024. This public acknowledgement lists the bank Wells Fargo South Central, N. A (5146). at 2005 Taylor Street, Houston, Tx as a separate charter and national bank that is not connected to the Wells Fargo Bank, N.A. (3511) in Sioux Falls, South Dakota. This listing confirms that there is no such bank known as "Wells Fargo" as the name of a single bank:

Wells Fargo Bank South Central, N. A., 2005 Taylor Street Houston TX "5146"

Wells Fargo Bank, N. A., 101 North Philips Avenue Sioux Falls SD "3511"

Wells Fargo Delaware Trust Company, N. A. 2200 Concord Pike, 5th Floor Wilmington DE "34465"

Wells Fargo National Bank West 4455 Spring Mountain Road Las Vegas, NV "27389"

Wells Fargo Trust Company, N. A, 2389 Washington Boulevard Ogden UT "13718"

Wells Fargo (Charter #3511) in South Dakota has no interest in this transaction that was the property of Wells Fargo South Central, N.A.

- **Exhibit 12** is a true and correct copy of the Chapter 7 Bankruptcy Discharge of Debtor ordered by the Court granting a discharge under section 727 of title 11, U.S.C, (the Bankruptcy Code) by Judge Joan N. Feeney the U S Bankruptcy Judge on October 23, 2012. Mr. Bradley Nelson was discharged of all personal liability for the debts evidenced by the nonnegotiable Notes in favor of World Savings Bank, FSB in March of 2007 when World Savings Bank funded two loan agreements for Mr. Nelson secured by liens that have not been released or assigned to another entity since the inception of the loan agreements.  Wells Fargo did not participate in this Chapter 7 Bankruptcy and therefore had no lien "ride-through" in this bankruptcy, had no Proof of Claim allowing them to be a "secured creditor" with any privileges afforded secured creditors, and has no claims that a judge agreed that any debts or liens were in favor of Wells Fargo, as all pre-petition liens were accepted as lawfully recorded and perfected liens ONLY, according to the well establish laws and statutes of the State of Massachusetts.  Wells Fargo (Charter #3511) in South Dakota has no interest in this action, was not accepted on the Debtor's schedule and did not require payments or arrearages to be enforced by Wells Fargo as a secured creditor.  The judicial notice is to show why the Bankruptcy jurisdiction is to administer reorganization of Debtor's liabilities only and it is not the court of land holder or land entitlement issues. The Judge abandoned the property back to the Debtor, Mr. Nelson, in the pre-petition condition without any liens in the name or entitlement to Wells Fargo (#3511).

Wells Fargo (Charter #3511) in South Dakota has no interest in this bankruptcy action.

- **Exhibit 13 is** a true and correct copy of the Warranty Deed for Kyra Nelson to show what was warranted by the seller in the transaction.  All rights, title and interests were transferred in the real estate transaction.  There were no liens that had been amended or noticed to be anything other than the exact records of the Registry of Middlesex South in Massachusetts.  There were no notices of assignments or transfers and no records of *lis pendens* on the property.

    Wells Fargo (Charter #3511) in South Dakota has no interest in this real estate transaction.

- **Exhibit 14 is** a true and correct copy of the Mortgage securing the payment of $499,000 to the seller of the property in exchange for all rights, title and interest in the real estate.

    Wells Fargo (Charter #3511) in South Dakota has no interest in this real estate transaction.

## II. CONCLUSION

Under Section 201 and 202 of the Evidence Code, judicial notice is mandatory "of any matter specified in Mass. Guid. Evid. Section 202 – Judicial Notice of Law (as amended through October 3, 2024), as a court shall take judicial notice of the above.  Debtor requests that the Court provide the opportunity to be heard on the key issues why Wells Fargo has no interest in Debtor's bankruptcy.

For the reasons stated above, Plaintiffs respectfully request that the Court take judicial notice of the above listed facts, information, documents, and exhibits.

Respectfully Submitted.

Dated: January 6, 2025.

By: *Kyra Nel* pro se .
Kyra I. Nelson
65 Lovers Lane
Groton, MA 01450
kyra.nelson5@gmail.com
(617) 821-2341

11
Plaintiff's Request for Judicial Notice

1

## DECLARATION OF KYRA I. NELSON

2

3
I, Kyra I. Nelson, am the debtor, herein in this matter and declare that the following statements are true

4
and correct to the best of my personal knowledge and belief, except as to the matters which are

5
therein stated upon my information and belief, and as to those matters, I believe it to be true.  If called

6
to testify, I am competent to testify to the following facts:

7
1.    Attached as Exhibit 1 is a true and correct copy of the Original Deed to Bradley R. Nelson when

8
he purchased the property at 65 Lovers Lane in Groton, Massachusetts.

9
2.    Attached as Exhibit 2 is a true and correct copy Option One Mortgage voluntarily granted by Mr.

10
Nelson on 2/27/2004.

11
3.    Attached as Exhibit 3 is a true and correct copy of Option One Mortgage voluntarily granted by

12
Mr. Nelson on 12/23/2005.

13
4.    Attached as Exhibit 4 is a true and correct copy of the Decision One Mortgage voluntarily granted

14
by Mr. Nelson on 7/28/2006.

15
5.    Attached as Exhibit 5 is a true and correct copy of the Discharge of Decision One Mortgage

16
voluntarily granted by Mr. Nelson on 3/1/2004.

17
6.    Attached as Exhibit 6 is a true and correct copy of Discharge of Mortgage originated on

18
12/23/2005 by Option One Mortgage Corporation.

19
7.    Attached as Exhibit 7 is a true and correct copy of World Savings FSB Loan voluntarily granted by

20
Mr. Nelson to use the property as collateral for a First Position Lien funding a nonnegotiable loan

21
agreement between Borrower (Mr. Nelson) and World Savings FSB (Charter # 33966).

22
8.    Attached as Exhibit 8 is a true and correct copy of World Savings FSB Loan voluntarily granted by

23
Mr. Nelson to use the property as collateral for a Second Position Lien funding a nonnegotiable loan

24
agreement between Borrower (Mr. Nelson) and World Savings FSB (Charter # 33966).

25
9.    Attached as **Exhibit 9** is a true and correct copy of the Federal Deposit Insurance Corporation's

26
official Government website confirming the World Savings Bank at 2005 Taylor Street, Houston, TX,

27

28

101

1    was merged with Wells Fargo Bank South, N.A. and subsequently merged into Wells Fargo South

2    Central, N.A. as it is known today.

3    10.    Attached as **Exhibit 10** is a true and correct copy of the Congressional Records reported by

4    Wells Fargo banking entities as to the mergers and acquisitions of the Holding Company Wells Fargo

5    & Company, and its subsidiaries acquisitions of certain assets acquired by the subsidiaries

6    themselves. These records also clearly demonstrate that there have been no mergers of Worlds

7    Savings Bank, FSB, Wachovia Mortgage Company or Wells Fargo Southwest that have any reported

8    acquisitions of assets to Wells Fargo Charter #3511 in South Dakota.

9    11.    Attached as **Exhibit 11** is a true and correct copy of the Office of the Comptroller of the

10   Currency's public listing of "NATIONAL BANKS ACTIVE as of 4/30/2024. This public

11   acknowledgement lists the bank Wells Fargo South Central, N. A (5146) at 2005 Taylor Street,

12   Houston, Tx, as a separate charter and national bank that is not connected to the Wells Fargo Bank,

13   N.A. (3511) in Sioux Falls, South Dakota.

14   12.    Attached as **Exhibit 12** is a true and correct copy of the Chapter 7 Bankruptcy Discharge of

15   Debtor ordered by the Court granting a discharge under section 727 of title 11, U.S.C, (the Bankruptcy

16   Code) by Judge Joan N. Feeney the U S Bankruptcy Judge on October 23, 2012. Mr. Bradley Nelson

17   was discharged of all personal liability for the debts evidenced by the nonnegotiable Notes in favor of

18   World Savings Bank, FSB in March of 2007 when World Savings Bank funded two loan agreements for

19   Mr. Nelson secured by liens that have not been released or assigned to another entity since the

20   inception of the loan agreements.

21   13.    Attached as **Exhibit 13** is a true and correct copy of the Warranty Deed for Kyra Nelson to show

22   what was warranted by the seller in the transaction.  All rights, title and interests were transferred in the

23   real estate transaction.

24   14.    Attached as **Exhibit 14** is a true and correct copy of the Mortgage securing the payment of

25   $499,000 to the seller of the property in exchange for all rights, title and interest in the real estate.

1    I declare under penalty of perjury under the laws of the State of Massachusetts and the Bankruptcy

2    Code of Title 11 that the foregoing is true and correct.

3

4    Dated: January $\underline{6}$, 2025

5

6                        *Kyra Nelson* pro se
                     Kyra I. Nelson

7                      65 Lovers Lane
                     Groton, MA 01450

8                      kyra.nelson5@gmail.com
                     (617) 821-2341

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

103

# EXHIBIT

## 1

## Original Deed for Bradley R. Nelson

MASSACHUSETTS EXCISE TAX
Southern Middlesex District ROD # 6
Date: 03/01/2004 02:28 PM
Ctrl# 025172 08587 Doc# 00049425
Fee: $2,508.00 Cons: $550,000.00



2004 00049425
Bk: 42148 Pg: 493 Doc: DEED
Page: 1 of 1 03/01/2004 02:28 PM

## MASSACHUSETTS QUITCLAIM DEED

We, Richard M. Akins and Ann M. Akins, of 65 Lovers Lane, Groton, Massachusetts 01450, for consideration paid, and in full consideration of FIVE HUNDRED FIFTY THOUSAND AND 00/100 Dollars (U.S. $550,000.00) grant to Bradley R. Nelson, Individually, of 127 Smith Place, Cambridge, Massachusetts 02138 with *quitclaim covenants* the following property in Groton, Middlesex County, Massachusetts:

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1" = 100', dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, Page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997 and recorded with said Deeds in Book 17796, Page 330.

Being the same premises conveyed to the herein named grantors by deed recorded with Middlesex South District Registry of Deeds in Book 35449, Page 285.

Witness our hands and seals this 27th day of February, 2004.

Richard M. Akins

Ann M. Akins

Commonwealth of Massachusetts

Middlesex, ss.                                          Date: February 27, 2004

On February 27, 2004, before me, the undersigned notary public, personally appeared the above-named Richard M. Akins and Ann M. Akins and proved to me through satisfactory evidence of identification, which was a driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

Notary Public Meridith A. Gregory
My Commission Expires: 1/22/2010

REGISTRY OF DEEDS
SOUTHERN DISTRICT
ATTEST:

REGISTER

PROPERTY ADDRESS:   65 Lovers Lane Groton, Massachusetts 01450

105

## Southern Middlesex - 20/20 Perfect Vision i2 Document Detail Report

Current datetime: 12/30/2024 2:33:01 PM

| Doc# | Document Type | Town | Book/Page | File Date | Consideration |
|------|--------------|------|-----------|-----------|---------------|
| 49425 | DEED | | 42146/493 | 03/01/2004 | |

| Property-Street Address and/or Description |
|---|
| 65 LOVERS LN |

| Grantors |
|---|
| AKINS RICHARD M,   AKINS ANN M |

| Grantees |
|---|
| NELSON BRADLEY R |

| References-Book/Pg  Description  Recorded Year |
|---|
| 49111/233  HOME  2007 |

| Registered Land Certificate(s)-Cert#  Book/Pg |
|---|

106

# EXHIBIT

2

WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

Bk: 42146 Pg: 494   Doc: MTG
Page: 1 of 10   03/01/2004 02:28 PM

Loan Number: 161031546
Servicing Number: 001283655-7

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on    February 27, 2004          . The mortgagor is
BRADLEY R NELSON

("Borrower"). This Security Instrument is given to
        Option One Mortgage Corporation, a California Corporation                    ,
which is organized and existing under the laws of        CALIFORNIA            , and whose address is
        3 Ada, Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
        FOUR HUNDRED NINETY FIVE THOUSAND
        . . . AND NO/100THs   Dollars (U.S.  $495,000.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on    March 01, 2034        . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described
property located in     Middlesex                                   County, Massachusetts:
MAP O, BLK 270, LOT AA5(115-30

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of        65  LOVERS LANE, GROTON
                                                                                    [Street, City]
Massachusetts        01450-1831          ("Property Address");
                    [Zip Code]

Property: 65 Lovers Lane, Groton

    TOGETHER WITH all the improvements now or hereafter erected on the property and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.
All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and
will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal
of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

MASSACHUSETTS - Single Family
Page 1 of 6                                                                MAD10011 (04-22-99)

108

Loan Number: 161031546        Servicing Number: 001283655-7        Date: 02/27/04

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

Page 2 of 6                                                                                    MAD10012 (04-22-99)

Loan Number:  161031546        Servicing Number:  001283655-7        Date:  02/27/04

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to

Page 3 of 6                                                                                    MAD10013 (04-22-99)

110

Loan Number: 161031546          Servicing Number: 001283655-7          Date: 02/27/04

commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

Page 4 of 6                                                                MAD10014 (04-22-99)

Case 24-41202   Doc 180-1   Filed 05/21/25   Entered 05/21/25 10:11:53   Desc
Case 24-41202   Doc 24-1 appli Filed 06/22   Eage 37 of 07/25 08:06:19   Desc Exhibit
1-2 k: 42 Page 24 of 29

Loan Number:  161031546          Servicing Number:  001283655-7          Date:  02/27/04

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest
thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter exercise the statutory power of sale and/or any other remedies or take any other actions permitted by applicable law.  Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. Misrepresentation and Nondisclosure. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. Time is of the Essence. Time is of the essence in the performance of each provision of this Security Instrument.

26. Waiver of Statute of Limitations. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. Reimbursement. To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. Clerical Error. In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with this Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents. In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. Assignment of Rents. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

Page 5 of 6                                                                                    MAD10015 (04-22-99)

Loan Number: 161031546          Servicing Number: 001283655-7          Date: 02/27/04

[Check applicable box(es)]

[X] Adjustable Rate Rider            [ ] Condominium Rider              [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider  [ ] Planned Unit Development Rider  [ ] Occupancy Rider
[X] Other(s) (specify)
    Exhibit A

        BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and
in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____          _____(Seal)
Meridith A. Gregory                                                      -Borrower


_____          _____(Seal)
                                                                         -Borrower


_____(Seal)    _____(Seal)
BRADLEY R NELSON          -Borrower                                      -Borrower


_____(Seal)    _____(Seal)
                          -Borrower                                      -Borrower


COMMONWEALTH OF MASSACHUSETTS,                    County ss:  Middlesex

        On this    27th      day of   February        , 2004, before me personally appeared
        Bradley R. Nelson

acknowledged the foregoing to be    his        free act and deed.

My Commission Expires:    1/22/10

                                          _____
                                          Notary Public   Meridith A. Gregory

BK: 42146 Pg: 500

Exhibit A

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1" = 100', dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, Page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997 and recorded with said Deeds in Book 17796, Page 330.

Being the same premises conveyed to the herein named mortgagor by deed recorded with Middlesex South District Registry of Deeds herewith.

Loan Number: 161031546    Servicing Number: 001283655-7    Date: 02/27/04

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made February 27, 2004 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
        Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

        65  LOVERS LANE,  GROTON, MA 01450-1831

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of        6.200%            . The
Note provides for changes in the interest rate and the monthly payments, as follows:

4.      **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
        **(A) Change Dates**
        The interest rate I will pay may change on the first day of    March 01    2006    ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
        **(B) The Index**
        Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
        If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
        **(C) Calculation of Changes**
        Before each Change Date, the Note Holder will calculate my new interest rate by adding
        FOUR AND 60/100                        percentage point(s) ( 4.600%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                USRI0021 (02-23-99)

Loan Number: 161031546     Servicing Number: 001283655-7     Date: 02/27/04

be my new interest rate until the next Change Date.

  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

  **(D) Limits on Interest Rate Changes**

  The interest rate I am required to pay at the first Change Date will not be greater than 9.200%   or less than   6.200%                     . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than   12.200%       or less than   6.200%

  **(E) Effective Date of Changes**

  My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

  **(F) Notice of Changes**

  The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

  **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Covenant 17 of the Security Instrument is amended to read as follows:

  **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

  To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

  If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 2 of 3

USRI0022 (02-23-99)

Loan Number: 161031546     Servicing Number: 001283655-7     Date: 02/27/04

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
BRADLEY R NELSON

_____(Seal)          _____(Seal)

_____(Seal)          _____(Seal)

REGISTRY OF DEEDS
SOUTHERN DISTRICT
ATTEST:

REGISTER

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 3 of 3

USRI0023 (02-23-99)

117

# EXHIBIT

## 3

WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

Bk: 46737 Pg: 38    Doc: MTG
Page: 1 of 11    12/28/2005 02:34 PM

Loan Number: 681010622
Servicing Number: 002052400-5

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on    December 23, 2005    . The mortgagor is
BRADLEY R NELSON

("Borrower"). This Security Instrument is given to
    Option One Mortgage Corporation, a California Corporation    ,
which is organized and existing under the laws of    CALIFORNIA    , and whose address is
    3 Ada, Irvine, CA 92618
("Lender"). Borrower owes Lender the principal sum of
    FIVE HUNDRED FORTY THOUSAND
    . . . AND NO/100THS    Dollars (U.S. $540,000.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on    January 01, 2036    .This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described
property located in    Middlesex    County, Massachusetts:
115-30

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

Property: 65 Lovers Lane, Groton

which has the address of    65  LOVERS LN, GROTON
    [Street, City]
Massachusetts    01450-1831    ("Property Address");
    [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.
All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and
will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal
of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

MASSACHUSETTS - Single Family
Page 1 of 6    MAD10011 (02-27-04)

119

Loan Number: 681010622      Servicing Number: 002052400-5      Date: 12/23/05

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

Page 2 of 6                                                                                            MAD10012 (02-27-04)

120

Loan Number: 681010622          Servicing Number: 002052400-5          Date: 12/23/05

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to

Page 3 of 6

MAD10013 (02-27-04)

Loan Number:   681010622        Servicing Number:  002052400-5        Date:  12/23/05

commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

Page 4 of 6                                                          MAD10014 (02-27-04)

122

Loan Number: 681010622    Servicing Number: 002052400-5    Date: 12/23/05

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter exercise the statutory power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. Misrepresentation and Nondisclosure. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. Time is of the Essence. Time is of the essence in the performance of each provision of this Security Instrument.

26. Waiver of Statute of Limitations. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. Reimbursement. To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. Clerical Error. In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents. In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. Assignment of Rents. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

Page 5 of 6          MAD10015 (02-27-04)

123

Loan Number: 681010622        Servicing Number: 002052400-5        Date: 12/23/05

[Check applicable box(es)]

| | | | |
|---|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] No Prepayment Penalty Option Rider | [ ] Planned Unit Development Rider | [ ] Occupancy Rider |
| [X] Other(s) (specify) | [ ] | |
|     Exhibit A | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____(Seal)
Erica Gesing                                                                    -Borrower

_____          _____(Seal)
                                                                                -Borrower

_____(Seal)    _____(Seal)
BRADLEY R NELSON            -Borrower                                           -Borrower

_____(Seal)    _____(Seal)
                            -Borrower                                           -Borrower


COMMONWEALTH OF MASSACHUSETTS,            County ss: Middlesex

On this     23rd            day of December 2005            , before me, the undersigned notary public,
personally appeared

    Bradley R. Nelson


proved to me through satisfactory evidence of identification, which was/were  driver's license
to be the person(s) whose name(s) is signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires:    11/10/11
(Seal)

_____
Notary Public   Erica Gesing

# RIDER

### Release of Massachusetts Homestead / Sole Ownership Certification

This rider amends the terms of the Mortgage dated December 23, 2005 between Option One Mortgage Corporation, principally located in Foxborough, Massachusetts "(Bank)" and Bradley R. Nelson (each a "Mortgagor").

A.  Mortgagor signing below releases any and all rights acquired pursuant to the Declaration of Homestead dated March 24, 2004 and recorded with the Middlesex South Registry of Deeds in Book 42318, Page 358 as against the holder of the Mortgage only. Mortgagor signing below specifically reserves all other rights acquired pursuant to said Declaration of Homestead.

B.  The Mortgagor signing below certifies that he is the sole owner of the property described in the Mortgage and that he is not married.

Executed as an instrument under seal this 23 day of December 2005.

_____
Bradley R. Nelson

#### COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On December 23, 2005, before me, the undersigned notary public, personally appeared the above-named Bradley R. Nelson and proved to me through satisfactory evidence of identification, which was a driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

Notary Public:  Erica George
My Commission Expires:  11/10/11

*MARGINAL reference*
*B 42318 P 358*

125

Loan Number: 681010622    Servicing Number: 002052400-5    Date: 12/23/05

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made December 23, 2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
    Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

            65  LOVERS LN,  GROTON, MA 01450-1831

                    [Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of         7.050%              . The
Note provides for changes in the interest rate and the monthly payments, as follows:

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The interest rate I will pay may change on the first day of    January 01      2009      ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
    **(B) The Index**
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
    **(C) Calculation of Changes**
    Before each Change Date, the Note Holder will calculate my new interest rate by adding
    FIVE AND 60/100                       percentage point(s) ( 5.600%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                           USRI0021 (02-23-99)

126

Bk: 46737 Pg: 46

Loan Number: 681010622      Servicing Number: 002052400-5      Date: 12/23/05

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.050%   or less than   7.050%                 . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than     13.050%          or less than   7.050%

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan Number: 681010622   Servicing Number: 002052400-5   Date: 12/23/05

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
BRADLEY R NELSON

_____ (Seal)        _____ (Seal)

_____ (Seal)        _____ (Seal)

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3

USRI0023 (02-23-99)

128

Exhibit A

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1" = 100', dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, Page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997 and recorded with said Deeds in Book 17796, Page 330.

Being the same premises conveyed to the herein named mortgagor by deed recorded with Middlesex South District Registry of Deeds in Book 42146, Page 493.

REGISTRY OF DEEDS
SOUTHERN DISTRICT
ATTEST:

*Eugene C. Brune*

REGISTER

COMMONWEALTH OF MASSACHUSETTS.
MIDDLESEX S.S. 12/23/2024
SOUTH DIST. REGISTRY OF DEEDS
CAMBRIDGE, MA
I HEREBY CERTIFY THE FOREGOING
IS A TRUE COPY OF A PAPER
RECORDED IN BOOK 46737

PAGE 38

_Maria O. Curatone_
REGISTER

# EXHIBIT

4



After Recording Return To:

Decision One Mortgage Company, LLC
6060 J.A. Jones Drive, Suite 1000
Charlotte, North Carolina 28287



Bk: 47885 Pg: 457   Doc: MTG
Page: 1 of 18   07/28/2008 12:17 PM

---

[Space Above This Line For Recording Data]

Loan Number 2090060723540
MIN: 100077910006670158

# MORTGAGE

## DEFINITIONS

<div style="margin-left:2em">
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JULY 24, 2006, together with all Riders to this document.

(B) "Borrower" is BRADLEY R NELSON. Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is Decision One Mortgage Company, LLC. Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of NORTH CAROLINA. Lender's address is 6060 J.A. JONES DRIVE, SUITE 1000, CHARLOTTE, NORTH CAROLINA 28287.

(E) "Note" means the promissory note signed by Borrower and dated JULY 24, 2006. The Note states that Borrower owes Lender SIX HUNDRED THOUSAND AND 00/100ths Dollars (U.S.$600,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 1, 2036.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:
</div>

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

*(left margin, vertical:)* Property: 65 Lovers Lane, Groton, MA

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3022 1/01   *(page 1 of 11 pages)*

132

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

_____County_____ of _____MIDDLESEX_____ :
[Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]

SEE ATTACHED SCHEDULE "A"

which currently has the address of __65 LOVERS LANE_____
                                                                          [Street]

__GROTON_____ , Massachusetts __01450____ ("Property Address"):
          [City]                                        [Zip Code]

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3022 1/01 *(page 2 of 11 pages)*

133

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to



MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3022 1/01  *(page 3 of 11 pages)*

Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking



services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

---

**MASSACHUSETTS**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3022  1/01  *(page 5 of 11 pages)*

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

**MASSACHUSETTS**—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3022  1/01  *(page 6 of 11 pages)*

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**MASSACHUSETTS**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3022  1/01  *(page 7 of 11 pages)*

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**MASSACHUSETTS**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**       Form 3022  1/01   *(page 8 of 11 pages)*

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**MASSACHUSETTS**–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**   Form 3022 1/01  *(page 9 of 11 pages)*



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

*BN*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
Erica Gesing                                              BRADLEY R. NELSON          -Borrower

_____          _____ (Seal)
                                                                                                         -Borrower

_____ (Seal)   _____ (Seal)
                                              -Borrower                                      -Borrower


COMMONWEALTH OF MASSACHUSETTS

                                            ss:  Middlesex _____

COUNTY OF MIDDLESEX

    On this ___24th___ day of ___July_____, 2 006 , before me personally appeared **BRADLEY R NELSON**, to me known (or satisfactorily proven) to be the person(s) described in and who executed the foregoing instrument, and acknowledged that ___he___ executed the same as ___his___ free act and deed.

(Seal)

                                            _____
                                            (Signature and title of officer taking acknowledgment)
                                            Erica Gesing
                                            My Commission Expires: 11/10/11

## Exhibit A - Property Description

**Closing Date:**          07/24/2006

**Borrower(s):**          Bradley R. Nelson

**Property Address:**          65 Lovers Lane, Groton MA 01450

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1" = 100', dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, Page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997 and recorded with said Deeds in Book 27796, Page 330.

Being the same premises conveyed to the herein named mortgagor by deed recorded with Middlesex South District Registry of Deeds in Book 42146, Page 493.

Loan Number 2090060723540

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 24TH day of JULY, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to **DECISION ONE MORTGAGE COMPANY, LLC** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**65 LOVERS LANE, GROTON, MASSACHUSETTS 01450**
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 8.54%. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1ST day of AUGUST, 2008, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN AND 54/100THS percentage points (7.54%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.





MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)--Single Family--Freddie Mac MODIFIED INSTRUMENT Form 3192 1/01  *(page 1 of 3 pages)*

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.54%** or less than **8.54%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point (**1%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.54%** or less than **8.54%**.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)—Single Family—Freddie Mac MODIFIED INSTRUMENT  Form 3192  1/01  *(page 2 of 3 pages)*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
BRADLEY R. NELSON                        -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)—Single Family—Freddie Mac MODIFIED INSTRUMENT  Form 3192  1/01  *(page 3 of 3 pages)*



Loan Number 2090060723540

# BALLOON PAYMENT RIDER

THIS BALLOON PAYMENT RIDER ("Rider") is made this **24TH** day of **JULY, 2006,** and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to **Decision One Mortgage Company, LLC** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**65 LOVERS LANE, GROTON, MASSACHUSETTS 01450**

[Property Address]

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

"THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER."

Sections 4 C of the Adjustable Rate Note and Adjustable Rate Rider, second paragraph, are amended to read as follows:

The Note holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change date in full by **AUGUST 1, 2046** at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. I understand that this loan is a balloon loan and that if I pay only my monthly payments, I will have a final balloon payment due on the Maturity Date of **AUGUST 1, 2036.**

Balloon Payment Rider                              Page 1 of 2

147

At least ninety (90) but not more than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the "balloon payment" (which is the entire unpaid principal balance of loan and interest then due) which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time.)

Witness   Erica Gesing

BRADLEY R. NELSON                                        (Seal)
                                                        -Borrower

Witness

                                                        (Seal)
                                                        -Borrower

Witness

                                                        (Seal)
                                                        -Borrower

Balloon Payment Rider                    Page 2 of 2

# RIDER

### Release of Massachusetts Homestead / Sole Ownership Certification

This rider amends the terms of the Mortgage dated July 24, 2006 between Decision One Mortgage Company, LLC, principally located in Charlotte, North Carolina "(Bank)" and Bradley R. Nelson (each a "Mortgagor").

A.   Mortgagor signing below releases any and all rights acquired pursuant to the Declaration of Homestead dated March 24, 2004 and recorded with the Middlesex South Registry of Deeds in Book 42318, Page 358 as against the holder of the Mortgage only. Mortgagor signing below specifically reserves all other rights acquired pursuant to said Declaration of Homestead.

B.   The Mortgagor signing below certifies that he is the sole owner of the property described in the Mortgage and that he is not married.

Executed as an instrument under seal this 24 day of July 2006.

REGISTRY OF DEEDS
SOUTHERN DISTRICT
ATTEST:
*Eugene C. Brune*
REGISTER

Bradley R. Nelson

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On July 24, 2006, before me, the undersigned notary public, personally appeared the above-named Bradley R. Nelson and proved to me through satisfactory evidence of identification, which was a driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Notary Public: Erica Gestin
My Commission Expires: 11-10-11

COMMONWEALTH OF MASSACHUSETTS.
MIDDLESEX S.S. 12/23/2024
SOUTH DIST. REGISTRY OF DEEDS
CAMBRIDGE, MA
I HEREBY CERTIFY THE FOREGOING
IS A TRUE COPY OF A PAPER 47885
RECORDED IN BOOK _____

PAGE _____ 457

_Maria C. Curatone_
REGISTER



# EXHIBIT

5



Bk: 46956 Pg: 562   Doc: DIS
Page: 1 of 1   02/13/2006 09:48 AM



**This instrument must be recorded:**
SOUTHERN MIDDLESEX County, MA

**Recording requested by:**
Option One Mortgage Corporation (OOMC)

Loan #: 0012836557  LPS #: 3195403  Bin #:

### DISCHARGE OF MORTGAGE

THIS CERTIFIES that a certain mortgage executed by BRADLEY R. NELSON to
OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION dated 2/27/2004 and
recorded 3/1/2004 Instrument #: 2004 00049426 in Book 42146 on Page 494
(Re-Recorded:  Inst#: N/A in Book N/A on Page N/A), of the records in the
office of the Clerk of SOUTHERN MIDDLESEX County, MA, is hereby fully
released and satisfied.

Certificate No.:

Property Address:  65 LOVERS LN., GROTON, MA 01450
   IN WITNESS WHEREOF, the said Option One Mortgage Corporation, a
California Corporation, 6501 Irvine Center Drive, Irvine, CA 92618 by its
authorized officer, has hereunto set its corporate hand.

Option One Mortgage Corporation, a California Corporation

January 03, 2006

BY
Michelle D. Barney, Vice President-Reconveyance and Release

STATE OF CA
COUNTY OF ORANGE
ON January 03, 2006, before me J. Graham, a Notary Public in and for the
County of ORANGE, State of CA, personally appeared Michelle D. Barney, Vice
President-Reconveyance and Release, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that
by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

J. Graham
Notary Public
   Commission Expires: 8/19/2008
Prepared by: FNLPS, 15661 Redhill Ave., Suite 200, Tustin, CA 92780
(MIN#:)     279  0841
1/28/2006

```
J. GRAHAM
Comm. # 1508736
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Exp. Aug. 19, 2008
```

2/12/2006

When Recorded Mail To:
Fidelity National LPS
PO Box 19523
Irvine, CA 92623-9523

MA_028_3195403_0012836557_GRP1



COMMONWEALTH OF MASSACHUSETTS.
MIDDLESEX S.S. _____ 12/23/2024
SOUTH DIST. REGISTRY OF DEEDS
CAMBRIDGE, MA
I HEREBY CERTIFY THE FOREGOING
IS A TRUE COPY OF A PAPER
RECORDED IN BOOK _____ 46956

PAGE _____ 562

_____ REGISTER



# EXHIBIT

6



Loan No: 0020524005



2005 00176520
Bk: 46164 Pg: 391  Doc: DIS
Page: 1 of 1   09/14/2006 02:52 PM

## DISCHARGE OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS,** that OPTION ONE MORTGAGE CORPORATION, A **CALIFORNIA CORPORATION** a corporation existing under the laws of the state of CALIFORNIA and having its principal place of business at 6591 Irvine Center Drive
Irvine, CA 92618

is the owner of a certain Indenture of Mortgage, bearing the date of 12/23/2005 , made and executed by: BRADLEY R. NELSON as mortgagor(s) to **OPTION ONE MORTGAGE CORPORATION** as mortgagee, and recorded in the Office of the register of Titles and County Recorder in and for the County of MIDDLESEX SOUTH and State of Massachusetts in Mortgage Book 46737 , Page 38 , Document No 2005 00284154 (and noted on the Certificate of Title No.  ), is, with the indebtedness thereby secured, fully paid and satisfied.

commonly known as: 65 LOVERS LN.
             GROTON, MA 01450-1831
The register of Titles and said County Recorder is hereby authorized and directed to discharge the same upon the record thereof, according to the statute in such case provided.

In Testimony Whereof, the said corporation has caused these present to be executed in its corporate name by its VICE PRESIDENT and its corporate seal to be hereunto affixed THIS 03RD DAY OF AUGUST IN THE YEAR 2006
**OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION**

BY: _____
     CRYSTAL MOORE
     VICE PRESIDENT

STATE OF FLORIDA          COUNTY OF PINELLAS
On THIS 03RD DAY OF AUGUST IN THE YEAR 2006 , before me, the undersigned notary public, personally appeared CRYSTAL MOORE proved to me through satisfactory evidence of identification, which were State issued Picture ID, to be the person whose name is signed on the preceding document, and acknowledged to me that he/she signed it voluntarily for its stated purpose as the VICE PRESIDENT of OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION a corporation.

_____
MARIA LEONOR GERHOLDT
Notary Public/Commission expires 05/26/2009

MARIA LEONOR GERHOLDT
Notary Public State of Florida
My Commission Exp. May 26, 2009
No. DD 0434531
Bonded through (800) 432-4254
Florida Notary Assn., Inc.

This instrument was prepared by:
J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When recorded mail to:
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

OOMRC 6028790   CTO1014792



Attest Middlesex S. Register

form1/RCNMA1

155

COMMONWEALTH OF MASSACHUSETTS.
MIDDLESEX S.S. _12/23/2024_
SOUTH DIST. REGISTRY OF DEEDS
CAMBRIDGE, MA
I HEREBY CERTIFY THE FOREGOING
IS A TRUE COPY OF A PAPER
RECORDED IN BOOK _48164_

PAGE _391_

REGISTER

