Kyra I. Nelson
65 Lovers Lane
Groton, MA 01450
kyra.nelson5@gmail.com
(617) 821-2341

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

KYRA I, NELSON,

    Debtor,

Chapter 13

Case # 24-41202

**REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF PLAINTIFF'S OPPOSITION TO
WELLS FARGO'S OBJECTION TO DEBTOR'S
PLAN**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Massachusetts Notice of Law, Mass. R. Evid 202,  Plaintiff hereby respectfully requests that the Court take Judicial Notice of the following documents, instruments, and other things, and to consider them, for purposes of Plaintiff's **OPPOSITION TO WELLS FARGO'S OBJECTION TO DEBTOR'S PLAN and Plaintiff's** entire action, to be included and incorporated by reference in every paper by all parties, at every hearing, and at trial.

## POINTS AND AUTHORITIES

Mass. Guid. Evid. Section 202 – Judicial Notice of Law (as amended through October 3, 2024)

**(a) Mandatory.** A court shall take judicial notice of

1   **(1)** the General Laws of the Commonwealth, public acts of the Massachusetts Legislature, the
2   common law of Massachusetts, rules of court, the contents of the Code of Massachusetts Regulations,
    and Federal statutes, and

3   **(2)** the contents of Federal regulations and the laws of foreign jurisdictions that are brought to the
4   court's attention.

5   **(b)Permissive.** A court may take judicial notice of the contents of Federal regulations and the laws of
    foreign jurisdictions not brought to its attention, legislative history, municipal charters, and charter
6   amendments.

7   **(c)Not Permitted.** A court is not permitted to take judicial notice of municipal ordinances, town bylaws,
    special acts of the Legislature, or regulations not published in the Code of Massachusetts Regulations.

8   ***Subsections (a)(1) and (2).*** *These subsections are derived from 44 U.S.C. §1507 (contents of the*
9   *Federal Register shall be judicially noticed); G. L. c. 30A, §6 (regulations published in the Code of*
    *Massachusetts Regulations shall be judicially noticed); and G. L. c. 233, §70 ("The courts shall take*
10  *judicial notice of the law of the United States or of any state, territory or dependency thereof or of a*
    *foreign country whenever the same shall be material."). See also* <u>*Cohen v. Assessors of Boston*</u>*, 344*
11  *Mass. 268, 269 (1962);* <u>*Ralston v. Commissioner of Agric.*</u>*, 334 Mass. 51, 53-54 (1956);* <u>*Mastrullo v.*</u>
12  <u>*Ryan*</u>*, 328 Mass. 621, 622 (1952);* <u>*Brodsky v. Fine*</u>*, 263 Mass. 51, 54 (1928). While the court must take*
    *judicial notice of the existence of a law, that notice does not extend to notice of the adjudicative fact*
13  *that the law was followed. See, e.g.,* <u>*Commonwealth v. Tantillo*</u>*, 103 Mass. App. Ct. 20, 27-29 (2023)*
14  *(in prosecution for negligent operation of motor vehicle where prescription bottles of Tramadol and*
    *Clonazepam were found in defendant's car, judge could take judicial notice of requirement of G. L. c.*
15  *94C, §21, that prescriptions contain cautionary statements, but it was improper for judge to take*
    *judicial notice that "all bottles would" have cautionary statements on them, since labels could be*
    *dislodged or contents of bottles could be combined).*

16  **Pursuant to Evidence Code  §201**

17  **(a) Scope.** This section governs judicial notice of an adjudicative fact only, not a legislative fact.

18  **(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not
19  subject to reasonable dispute because it

20      **(1)** is generally known within the trial court's territorial jurisdiction or

21
22      **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be
23  questioned.

24
25   **(c) When Taken.** A court may take judicial notice at any stage of the proceeding, whether requested or
    not, except a court shall not take judicial notice in a criminal trial of any element of an alleged offense.

26   **(d) Opportunity to Be Heard.** On timely request, a party is entitled to be heard on the propriety of
27  taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before
    notifying a party, the party, on request, is still entitled to be heard.

28

1

2

**(e) Instructing the Jury.** In a civil case, the court must instruct the jury to accept the noticed fact as conclusive. In a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive.

3

4

*A judge may take judicial notice of a firmly established theory or methodology that has been determined to be reliable in our courts. Commonwealth v. Davis, 487 Mass. 448, 454-455 (2021).*

5

6

*In Yankee Atomic Elec. Co. v. Secretary of the Commonwealth, 402 Mass. 750, 759 n.7 (1988), the court explained the difference between "judicial notice" of facts and "official notice" of facts. The latter includes matters that are "indisputably true," as well as other factual matters that an agency may take notice of due to its special familiarity with the subject matter. See G. L. c. 30A, §6.*

7

8

9

10

11

12

13

14

***Court Records and Prior Proceedings.*** *"[A] judge may take judicial notice of the court's records in a related action." Jarosz v. Palmer, 436 Mass. 526, 530 (2002). See also Adoption of Zak, 90 Mass. App. Ct. 840, 844 n.7 (2017); Home Depot v. Kardas, 81 Mass. App. Ct. 27, 28 (2011). In contrast, "[a] judge may not take judicial notice of facts or evidence brought out at a prior hearing that are not also admitted in evidence at the current hearing." Commonwealth v. O'Brien, 423 Mass. 841, 848-849 (1996); Furtado v. Furtado, 380 Mass. 137, 140 n.1 (1980); Ferriter v. Borthwick, 346 Mass. 391, 393 (1963). See also Care & Protection of Zita, 455 Mass. 272, 283 (2009) ("We recognize the challenges that confront a judge who has presided over a case that is closely related to a new proceeding; it may be impossible to erase a judge's memory of the prior case. But each party is entitled to an impartial magistrate and a decision based on the evidence presented in her case."); Matter of Hernandez, 101 Mass. App. Ct. 856, 869 & n.20 (2022) (in civil commitment proceeding, judge erred in taking judicial notice of prior competency findings in same proceeding but was entitled to take judicial notice of procedural history of related criminal case).*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Property records attached as Exhibit 1 through 8, and Exhibits 13 and 14, here are records from the Registry's Office of Middlesex South Registry of Deeds that follows the necessary elements of the Recordation Act of Massachusetts requiring enforceability of only perfected and recorded, publicly noticed documents. These records reflect the exact name of the party that has received a right or interest, and that the right and interest has been perfected and duly noticed to the public before it can take effect and be enforceable. Without this recordation and notice to the public, no rights, including judgments, are enforceable against a property owner. These records state the parties that have obtained legal rights and interest in Debtor's real property in Massachusetts. These records also reflect the fact that the parties with the rights have not relinquished their rights to another party and still maintain and hold the rights and interests that are duly perfected with the Registry's office. Without this perfection, there can be no lawsuits, rulings, judgments or liens that**

can be enforced against the Debtor Kyra Nelson in this bankruptcy case and unrecorded,

unnoticed entities cannot request payment as a secured creditor without the perfection of its

claim.  The property rights and Recordation Act and enforcement are clear as to the parties

with enforceable rights against the property at 65 Lovers Lane, Groton, MA 01450 and are

attached here to make it known to the Court the entitlements as they are recorded and

perfected on the property without question as to who has these rights.  We are seeking

judicial notice as Wells Fargo has made unverifiable claims that there are recorded and

perfected liens, interests or rights, which these documents will prove have not been lawfully

perfected and do not exist on the property at 65 Lovers Lane, Groton, MA 01450.  For

many years Wells Fargo has perpetuated a serious fraud on the court by making claims on

real property which are not based on the laws of real property rights in Massachusetts.  The

long standing and strictly construed Recordation Laws and other statutes in Massachusetts

that perfect property interests cannot be by-passed or ignored by the Court and create an

interest that lawfully does not exist.  Well Fargo continues to attempt to  convince the courts

that an unenforceable right exists when in reality, all Federal and State regulator records

actually say the opposite of what Wells Fargo stated; therefore the need for judicial notice

of the federal regulator records and perfected interests are necessary for the Debtor to

prove Wells Fargo's claims to be a fraud on the court from which this Court should cause

Wells Fargo to cease and desist in its claims of interest.  Wells Fargo's Claims that have not

and cannot be perfected, and which the statute of limitation has run on the claims, that have

now been discovered to be deceptively, fraudulently and unlawfully brought in front of the

Court will present them to be false claims against the Debtor.

- **Exhibit 1** is a true and correct copy of the Original Deed to Bradley R. Nelson that was

  provided when the previous owner gave up all rights, title and interest in the property and

Plaintiff's Request for Judicial Notice

transferred the real estate to Mr. Nelson. Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 2** is a true and correct copy of the Option One Mortgage voluntarily granted by Mr. Nelson to use the property as collateral for the loan agreement. "Covenants: Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for the encumbrances of record." Wells Fargo has no interest in the property regarding this transaction. Mr. Nelson had a right to secure the payment of the loan on originated on 2/27/2004 for as long as Mr. Nelson was in control of the collateral. (This lien was later released when it was paid off in 2006 as shown in Exhibit 5.) Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 3** is a true and correct copy of the Option One Mortgage voluntarily granted by Mr. Nelson to use the property as collateral for the loan agreement. "Covenants: Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for the encumbrances of record." Wells Fargo has no interest in the property regarding this transaction. Mr. Nelson had a right to secure the payment of the loan originated on 12/23/2005 for as long as Mr. Nelson was in control of the collateral. (This lien was later released when it was paid off in 2006 as shown in Exhibit 6.) Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 4** is a true and correct copy of the Decision One Mortgage voluntarily granted by Mr. Nelson to use the property as collateral for the loan agreement. "Covenants: Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for the encumbrances of record." Wells Fargo has no interest in the property regarding this transaction. Mr. Nelson had a right to secure the

payment of the loan on originated 7/28/2006 for as long as Mr. Nelson was in control of the

collateral. (This lien was later released when it was paid off in 2006 as shown in Exhibit 5.)

Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 5** is a true and correct copy of the Discharge of Mortgage originated on 3/1/2004 by

Option One Mortgage Corporation. See Exhibit 3, is paid off and released on the property. Wells

Fargo has no interest in the property regarding this transaction.

- **Exhibit 6** is a true and correct copy of the Discharge of Mortgage originated on 12/23/2005

by Option One Mortgage Corporation. See Exhibit 4, is paid off and released on the property.

Wells Fargo has no interest in the property regarding this transaction.

- **Exhibit 7** is a true and correct copy of the World Savings FSB Loan voluntarily granted by

Mr. Nelson to use the property as collateral for a First Position Lien funding a nonnegotiable loan

agreement between Borrower (Mr. Nelson) and World Savings FSB (Charter # 33966):

"Covenants:  Borrower is lawfully seized of the estate hereby conveyed and has the right to

mortgage, grant and convey the Property and that the Property is unencumbered, except for the

encumbrances of record."  This lien was never modified, or granted a release by the Lender to

anyone.  This lien secured a funding where World Savings FSB provided money to Mr. Nelson

and this debt was never transferred to another party by World Savings, FSB to intercept the

payments due to World Savings Bank.  There has been no authorized release of this lien or

transfer of its rights and the lien is still the only perfected and duly recorded lien providing World

Savings FSB its position on the property, per Massachusetts statutes and laws recorded to reflect

property rights dating back over hundred years. Mr. Nelson had a right to secure the payment of

the loan originated on 3/2/2007 for as long as Mr. Nelson was in control of the collateral. Page 9,

Paragraph 26, of this lien states that the "**AGREEMENTS ABOUT LENDERS RIGHTS IF**

Plaintiff's Request for Judicial Notice

**THE PROPERTY IS SOLD OR TRANSFERRED**" has the <u>only remedy available, per the</u>

<u>actual contract,</u> to World Savings:

  "**<u>Acceleration of Payment of Sums Secured</u>**.  Lender may, at its option, <u>require immediate</u>
<u>payment in full of all</u> Sums Secured by this Security instrument if all or any part of the Property,
or if any right in the Property, is sold or transferred without Lender's prior written permission.
However, Lender shall not require immediate payment in full if this is prohibited by Federal Law
in effect on the date of the Security Instrument."

There is only a remedy is acceleration, as there is no remedy of foreclosure on the property to a

new beneficial owner or transferee in this Agreement.

Wells Fargo has no interest in the property regarding this transaction. Wells Fargo has no interest

in the property regarding this transaction.  There have been no "rights" exercised by Wells Fargo

because there are no lawful rights that Wells Fargo has acquired regarding this real estate

pursuant to the Statute of Frauds.

- **Exhibit 8** is a true and correct copy of the World Savings FSB Loan voluntarily granted by

Mr. Nelson to use the property as collateral for a Second Position Lien funding a nonnegotiable

loan agreement between Borrower (Mr. Nelson) and World Savings FSB (Charter # 33966):

"Covenants:  Borrower is lawfully seized of the estate hereby conveyed and has the right to

mortgage, grant and convey the Property and that the Property is unencumbered, except for the

encumbrances of record."  This lien was never modified, or granted a release by the Lender to

anyone.  This lien secured a funding where World Savings FSB provided money to Mr. Nelson

and this debt was never transferred to another party by World Savings, FSB to intercept the

payments due to World Savings Bank.  There has been no authorized release of this lien or

transfer of its rights and the lien is still the only perfected and duly recorded lien providing World

Savings FSB its position on the property, per Massachusetts statutes and laws recorded to reflect

property rights dating back over hundred years. Mr. Nelson had a right to secure the payment of

the loan originated on 3/2/2007 for as long as Mr. Nelson was in control of the collateral. Page 8,

7

Paragraph 16, of this lien states that the: "**Transfer of the Property or a Beneficial Interest in**

**Borrower**" has the only remedy available to World Savings:

"If all or any part of the Property, or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest is Borrower is sold or transferred), Lender may at its option, require immediate payment in full 'of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Federal Law."

There is no remedy of foreclosure on the property to a new beneficial owner or transferee in this Agreement.

Wells Fargo has no interest in the property regarding this transaction. There have been no "rights" exercised by Wells Fargo because there are no lawful rights that Wells Fargo has acquired regarding this real estate pursuant to the Statute of Frauds.

**Property records attached as Exhibit 9, 10, 11 and 12 here are records from the**

**Government Offices the Federal Deposit Insurance Corporation and the Office of the**

**Comptroller of the Currency and the Courts of the United States that follow the necessary**

**elements of the public notice requiring enforceability of only perfected and recorded,**

**publicly noticed documents. These records reflect the exact name of the party that has**

**received a right or interest, and that the right and interest has been perfected and duly**

**noticed to the public before it can take effect and be enforceable. Without this recordation**

**and notice to the public, no rights, including judgments are enforceable against a property**

**owner. These records state the parties that have obtained legal rights and interest that**

**affect the Debtor's real property in Massachusetts.**

- **Exhibit 9** is a true and correct copy of the Federal Deposit Insurance Corporation's official

Government website confirming the World Savings Bank at 2005 Taylor Street, Houston,

TX, has merged with Wells Fargo Bank South, N.A. and subsequently merged into Wells Fargo

South Central, N.A. as it is known today. Wells Fargo (Charter #3511) in South Dakota has no

interest in this transaction.

- **Exhibit 10** is a true and correct copy of the Congressional Records reported by Wells Fargo banking entities as to the mergers and acquisitions of the Holding Company Wells Fargo & Company, and its subsidiaries acquisitions of certain assets acquired by the subsidiaries themselves. The records show that the Wachovia mergers and acquisitions provided no assets to Wells Fargo Chatter #3511 in South Dakota during these mergers. These records also clearly demonstrate that there have been no mergers of Worlds Savings Bank, FSB, Wachovia Mortgage Company or Wells Fargo Southwest that have any reported acquisitions of assets to Wells Fargo Chatter #3511 in South Dakota. No court order (much less dicta) or bank may alter the information from a federal regulator, including the OCC and the FDIC. Any claims other than those based on the actual records of the federal regulators are void pursuant to the D'Oench Doctrine of Common Law Estoppel. The OCC and FDIC records show that Defendant has no interest in the lien or debt. Wells Fargo (Charter #3511) in South Dakota has no interest in this transaction and any claims otherwise are void *ab initio*.

- **Exhibit 11** is a true and correct copy of the Office of the Comptroller of the Currency's public listing of "NATIONAL BANKS ACTIVE as of 4/30/2024. This public acknowledgement lists the bank Wells Fargo South Central, N. A (5146). at 2005 Taylor Street, Houston, Tx as a separate charter and national bank that is not connected to the Wells Fargo Bank, N.A. (3511) in Sioux Falls, South Dakota. This listing confirms that there is no such bank known as "Wells Fargo" as the name of a single bank:

Wells Fargo Bank South Central, N. A., 2005 Taylor Street Houston TX "5146"

Wells Fargo Bank, N. A., 101 North Philips Avenue Sioux Falls SD "3511"

Wells Fargo Delaware Trust Company, N. A. 2200 Concord Pike, 5th Floor Wilmington DE "34465"

Wells Fargo National Bank West 4455 Spring Mountain Road Las Vegas, NV "27389"

Wells Fargo Trust Company, N. A, 2389 Washington Boulevard Ogden UT "13718"

9

Wells Fargo (Charter #3511) in South Dakota has no interest in this transaction that was the property of Wells Fargo South Central, N.A.

- **Exhibit 12** is a true and correct copy of the Chapter 7 Bankruptcy Discharge of Debtor ordered by the Court granting a discharge under section 727 of title 11, U.S.C, (the Bankruptcy Code) by Judge Joan N. Feeney the U S Bankruptcy Judge on October 23, 2012. Mr. Bradley Nelson was discharged of all personal liability for the debts evidenced by the nonnegotiable Notes in favor of World Savings Bank, FSB in March of 2007 when World Savings Bank funded two loan agreements for Mr. Nelson secured by liens that have not been released or assigned to another entity since the inception of the loan agreements.  Wells Fargo did not participate in this Chapter 7 Bankruptcy and therefore had no lien "ride-through" in this bankruptcy, had no Proof of Claim allowing them to be a "secured creditor" with any privileges afforded secured creditors, and has no claims that a judge agreed that any debts or liens were in favor of Wells Fargo, as all pre-petition liens were accepted as lawfully recorded and perfected liens ONLY, according to the well establish laws and statutes of the State of Massachusetts.  Wells Fargo (Charter #3511) in South Dakota has no interest in this action, was not accepted on the Debtor's schedule and did not require payments or arrearages to be enforced by Wells Fargo as a secured creditor.  The judicial notice is to show why the Bankruptcy jurisdiction is to administer reorganization of Debtor's liabilities only and it is not the court of land holder or land entitlement issues. The Judge abandoned the property back to the Debtor, Mr. Nelson, in the pre-petition condition without any liens in the name or entitlement to Wells Fargo (#3511).

Wells Fargo (Charter #3511) in South Dakota has no interest in this bankruptcy action.

Plaintiff's Request for Judicial Notice

1   Wells Fargo (Charter #3511) in South Dakota has no interest in this bankruptcy action.

2

3   • **Exhibit 13 is** a true and correct copy of the Warranty Deed for Kyra Nelson to show what was

4   warranted by the seller in the transaction. All rights, title and interests were transferred in the real

5   estate transaction. There were no liens that had been amended or noticed to be anything other

6   than the exact records of the Registry of Middlesex South in Massachusetts. There were no

7   notices of assignments or transfers and no records of *lis pendens* on the property.

8

9   Wells Fargo (Charter #3511) in South Dakota has no interest in this real estate transaction.

10

11   • **Exhibit 14** is a true and correct copy of the Mortgage securing the payment of $499,000

12   to the seller of the property in exchange for all rights, title and interest in the real estate.

13

14   Wells Fargo (Charter #3511) in South Dakota has no interest in this real estate transaction.

15   **II. CONCLUSION**

16

17   Under Section 201 and 202 of the Evidence Code, judicial notice is mandatory "of any matter

18   specified in Mass. Guid. Evid. Section 202 – Judicial Notice of Law (as amended through October 3,

19   2024), as a court shall take judicial notice of the above. Debtor requests that the Court provide the

20   opportunity to be heard on the key issues why Wells Fargo has no interest in Debtor's bankruptcy.

21   For the reasons stated above, Plaintiffs respectfully request that the Court take judicial

22   notice of the above listed facts, information, documents, and exhibits.

23

24                          Respectfully Submitted.

25   Dated: January $\underline{0}$ , 2025.

26                          By: _Kyra Nelson_____ -
                            Kyra I. Nelson
27                          65 Lovers Lane
                            Groton, MA 01450
28                          kyra.nelson5@gmail.com
                            (617) 821-2341
                            11

## DECLARATION OF KYRA I. NELSON

I, Kyra I. Nelson, am the debtor, herein in this matter and declare that the following statements are true and correct to the best of my personal knowledge and belief, except as to the matters which are therein stated upon my information and belief, and as to those matters, I believe it to be true.  If called to testify, I am competent to testify to the following facts:

1.    Attached as Exhibit 1 is a true and correct copy of the Original Deed to Bradley R. Nelson when he purchased the property at 65 Lovers Lane in Groton, Massachusetts.

2.    Attached as Exhibit 2 is a true and correct copy Option One Mortgage voluntarily granted by Mr. Nelson on 2/27/2004.

3.    Attached as Exhibit 3 is a true and correct copy of Option One Mortgage voluntarily granted by Mr. Nelson on 12/23/2005.

4.    Attached as Exhibit 4 is a true and correct copy of the Decision One Mortgage voluntarily granted by Mr. Nelson on 7/28/2006.

5.    Attached as Exhibit 5 is a true and correct copy of the Discharge of Decision One Mortgage voluntarily granted by Mr. Nelson on 3/1/2004.

6.    Attached as Exhibit 6 is a true and correct copy of Discharge of Mortgage originated on 12/23/2005 by Option One Mortgage Corporation.

7.    Attached as Exhibit 7 is a true and correct copy of World Savings FSB Loan voluntarily granted by Mr. Nelson to use the property as collateral for a First Position Lien funding a nonnegotiable loan agreement between Borrower (Mr. Nelson) and World Savings FSB (Charter # 33966).

8.    Attached as Exhibit 8 is a true and correct copy of World Savings FSB Loan voluntarily granted by Mr. Nelson to use the property as collateral for a Second Position Lien funding a nonnegotiable loan agreement between Borrower (Mr. Nelson) and World Savings FSB (Charter # 33966).

9.    Attached as **Exhibit 9** is a true and correct copy of the Federal Deposit Insurance Corporation's official Government website confirming the World Savings Bank at 2005 Taylor Street, Houston, TX,

was merged with Wells Fargo Bank South, N.A. and subsequently merged into Wells Fargo South Central, N.A. as it is known today.

10.    Attached as **Exhibit 10** is a true and correct copy of the Congressional Records reported by Wells Fargo banking entities as to the mergers and acquisitions of the Holding Company Wells Fargo & Company, and its subsidiaries acquisitions of certain assets acquired by the subsidiaries themselves. These records also clearly demonstrate that there have been no mergers of Worlds Savings Bank, FSB, Wachovia Mortgage Company or Wells Fargo Southwest that have any reported acquisitions of assets to Wells Fargo Charter #3511 in South Dakota.

11.    Attached as **Exhibit 11** is a true and correct copy of the Office of the Comptroller of the Currency's public listing of "NATIONAL BANKS ACTIVE as of 4/30/2024. This public acknowledgement lists the bank Wells Fargo South Central, N. A (5146) at 2005 Taylor Street, Houston, Tx, as a separate charter and national bank that is not connected to the Wells Fargo Bank, N.A. (3511) in Sioux Falls, South Dakota.

12.    Attached as **Exhibit 12** is a true and correct copy of the Chapter 7 Bankruptcy Discharge of Debtor ordered by the Court granting a discharge under section 727 of title 11, U.S.C, (the Bankruptcy Code) by Judge Joan N. Feeney the U S Bankruptcy Judge on October 23, 2012. Mr. Bradley Nelson was discharged of all personal liability for the debts evidenced by the nonnegotiable Notes in favor of World Savings Bank, FSB in March of 2007 when World Savings Bank funded two loan agreements for Mr. Nelson secured by liens that have not been released or assigned to another entity since the inception of the loan agreements.

13.    Attached as **Exhibit 13** is a true and correct copy of the Warranty Deed for Kyra Nelson to show what was warranted by the seller in the transaction.  All rights, title and interests were transferred in the real estate transaction.

14.    Attached as **Exhibit 14** is a true and correct copy of the Mortgage securing the payment of $499,000 to the seller of the property in exchange for all rights, title and interest in the real estate.

14.   Attached as **Exhibit 14** is a true and correct copy of the Mortgage securing the payment of $499,000 to the seller of the property in exchange for all rights, title and interest in the real estate.

I declare under penalty of perjury under the laws of the State of Massachusetts and the Bankruptcy Code of Title 11 that the foregoing is true and correct.

Dated: January ___, 2025

Kyra l. Nelson
65 Lovers Lane
Groton, MA 01450
kyra.nelson5@gmail.com
(617) 821-2341

14

# EXHIBIT

# 1

# Original Deed for Bradley R. Nelson

MASSACHUSETTS EXCISE TAX
Southern Middlesex District ROD #
Date: 03/01/2004 02:28 PM
Ctrl# 025172 08587 Doc# 00049425
Fee: $2,508.00 Cons: $550,000.00



2004 00049425
Bk: 42146 Pg: 493   Doc: DEED
Page: 1 of 1   03/01/2004 02:26 PM

## MASSACHUSETTS QUITCLAIM DEED

We, Richard M. Akins and Ann M. Akins, of 65 Lovers Lane, Groton, Massachusetts 01450, for consideration paid, and in full consideration of FIVE HUNDRED FIFTY THOUSAND AND 00/100 Dollars (U.S. $550,000.00) grant to Bradley R. Nelson, Individually, of 127 Smith Place, Cambridge, Massachusetts 02138 with *quitclaim covenants* the following property in Groton, Middlesex County, Massachusetts:

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1" = 100', dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, Page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997 and recorded with said Deeds in Book 17796, Page 330.

Being the same premises conveyed to the herein named grantors by deed recorded with Middlesex South District Registry of Deeds in Book 35449, Page 285.

Witness our hands and seals this 27th day of February, 2004.

Richard M. Akins

Ann M. Akins

Commonwealth of Massachusetts

Middlesex, ss.                                         Date: February 27, 2004

On February 27, 2004, before me, the undersigned notary public, personally appeared the above-named Richard M. Akins and Ann M. Akins and proved to me through satisfactory evidence of identification, which was a driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

Notary Public: Meridith A. Gregory
My Commission Expires: 1/22/2010

REGISTRY OF DEEDS
SOUTHERN DISTRICT
ATTEST:

PROPERTY ADDRESS:   65 Lovers Lane Groton, Massachusetts 01450

REGISTER

**Southern Middlesex - 20/20 Perfect Vision i2 Document Detail Report**

Current datetime: 12/30/2024 2:33:01 PM

| Doc# | Document Type | Town | Book/Page | File Date | Consideration |
|------|---------------|------|-----------|-----------|---------------|
| 49425 | DEED | | 42146/493 | 03/01/2004 | |

**Property-Street Address and/or Description**

65 LOVERS LN

**Grantors**

AKINS RICHARD M,  AKINS ANN M

**Grantees**

NELSON BRADLEY R

**References-Book/Pg  Description  Recorded Year**

49111/233  HOME  2007

**Registered Land Certificate(s)-Cert#  Book/Pg**

EXHIBIT

2

WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

2004 00049426
Bk: 42146 Pg: 494    Doc: MTG
Page: 1 of 10    03/01/2004 02:28 PI

Loan Number: 161031546
Servicing Number: 001283655-7

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on      February 27, 2004               . The mortgagor is
BRADLEY R NELSON

("Borrower"). This Security Instrument is given to
          Option One Mortgage Corporation, a California Corporation                     ,
which is organized and existing under the laws of          CALIFORNIA                  , and whose address is
                    3 Ada, Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
          FOUR HUNDRED NINETY FIVE THOUSAND
            . . AND NO/100THs   Dollars (U.S.   $495,000.00            ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on      March 01, 2034      .This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described
property located in      Middlesex                                        County, Massachusetts:
MAP O, BLK 270, LOT AA5(115-30

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of          65   LOVERS LANE, GROTON

                                                                        [Street, City]

Massachusetts        01450-1831          ("Property Address");
                     [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.
All of the foregoing is referred to in this Security Instrument as the "Property."
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and
will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     COVENANTS. Borrower and Lender covenant and agree as follows:
     1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal
of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

MASSACHUSETTS - Single Family
Page 1 of 6

MAD10011 (04-22-99)

Property: 65 Lovers Lane, Groton

Loan Number: 161031546          Servicing Number: 001283655-7          Date: 02/27/04

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien, in legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

Page 2 of 6                                                                                    MA010012 (04-22-99)

Loan Number: 161031546          Servicing Number: 001283655-7          Date: 02/27/04

    **6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

    Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

    Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

    **7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

    Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

    **8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

    **9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

    **10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

    If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

    Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

    **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to

Page 3 of 6                                                                                           MAD10013 (04-22-99)

Loan Number: 161031546     Servicing Number: 001283655-7     Date: 02/27/04

commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

MAD10014 (04-22-99)

Loan Number:  161031546          Servicing Number:  001283655-7          Date:  02/27/04

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest

thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter exercise the statutory power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. Misrepresentation and Nondisclosure. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. Time is of the Essence. Time is of the essence in the performance of each provision of this Security Instrument.

26. Waiver of Statute of Limitations. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. Reimbursement. To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands, and statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. Clerical Error. In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents. In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. Assignment of Rents. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

MAD10015 (04-22-99)

Loan Number: 161031546          Servicing Number: 001283655-7          Date: 02/27/04

[Check applicable box(es)]

[X] Adjustable Rate Rider          [ ] Condominium Rider          [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider     [ ] Planned Unit Development Rider     [ ] Occupancy Rider
[X] Other(s) (specify)
      Exhibit A

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
Meridith A. Gregory                                                                   -Borrower


_____          _____ (Seal)
                                                                                      -Borrower

_____ (Seal)   _____ (Seal)
BRADLEY R NELSON                 -Borrower                                            -Borrower


_____ (Seal)   _____ (Seal)
                                 -Borrower                                            -Borrower


COMMONWEALTH OF MASSACHUSETTS,                    County ss:   Middlesex

    On this      27th       day of    February       , 2004 , before me personally appeared

    Bradley R. Nelson

acknowledged the foregoing to be     his        free act and deed.

My Commission Expires:    1/22/10

                                      _____
                               Notary Public   Meridith A. Gregory

Exhibit A

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1" = 100', dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, Page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997 and recorded with said Deeds in Book 17796, Page 330.

Being the same premises conveyed to the herein named mortgagor by deed recorded with Middlesex South District Registry of Deeds herewith.

Loan Number: 161031546     Servicing Number: 001283655-7     Date: 02/27/04

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made February 27, 2004                               ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to

Option One Mortgage Corporation, a California Corporation

(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

65  LOVERS LANE,  GROTON, MA 01450-1831

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**The Note** provides for an initial interest rate of          6.200%               . The
Note provides for changes in the interest rate and the monthly payments, as follows:

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
      **(A) Change Dates**
      The interest rate I will pay may change on the first day of   March 01    2006          ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
      **(B) The Index**
      Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
      If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
      **(C) Calculation of Changes**
      Before each Change Date, the Note Holder will calculate my new interest rate by adding
      FOUR AND 60/100                         percentage point(s) ( 4.600%   )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                              USRI0021 (02-23-99)

Loan Number: 161031546   Servicing Number: 001283655-7   Date: 02/27/04

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than

9.200%   or less than   6.200%                    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than       12.200%            or less than   6.200%               .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 2 of 3                                                                    USRI0022 (02-23-99)

Loan Number:  161031546      Servicing Number:  001283655-7      Date:  02/27/04

      BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)      _____(Seal)
BRADLEY R NELSON


_____(Seal)      _____(Seal)


_____(Seal)      _____(Seal)

REGISTRY OF DEEDS
SOUTHERN DISTRICT
ATTEST:

REGISTER

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3

USRI0023 (02-23-99)

# EXHIBIT

## 3

WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN:   RECORDS MANAGEMENT

Bk: 46737 Pg: 38    Doc: MTG
Page: 1 of 11    12/28/2005 02:34 PM

Loan Number:   681010622
Servicing Number:   002052400-5

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on      December 23, 2005          . The mortgagor is
BRADLEY R NELSON

("Borrower"). This Security Instrument is given to
            Option One Mortgage Corporation, a California Corporation                 ,
which is organized and existing under the laws of            CALIFORNIA                , and whose address is
                  3 Ada, Irvine, CA 92618
("Lender"). Borrower owes Lender the principal sum of
            FIVE HUNDRED FORTY THOUSAND
            . . . AND NO/100THs    Dollars (U.S.   $540,000.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on      January 01, 2036           . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described
property located in         Middlesex                                      County, Massachusetts:
115-30

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of          65   LOVERS LN, GROTON                                    [Street, City]

Massachusetts        01450-1831          ("Property Address");
                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.
All of the foregoing is referred to in this Security Instrument as the "Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and
will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal
of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

MASSACHUSETTS - Single Family
Page 1 of 6

MAD10011 (02-27-04)

Property: 65 Lovers Lane, Groton

Loan Number:  681010622          Servicing Number:  002052400-5          Date:  12/23/05

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

Page 2 of 6                                                                                                                MAD10012 (02-27-04)

Loan Number: 681010622          Servicing Number: 002052400-5          Date: 12/23/05

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to

Page 3 of 6

MAD10013 (02-27-04)

Loan Number:  681010622          Servicing Number:  002052400-5          Date:  12/23/05

commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

Page 4 of 6                                                                                      MAD10014 (02-27-04)

Loan Number: 681010622          Servicing Number: 002052400-5          Date: 12/23/05

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest

thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter exercise the statutory power of sale and/or any other remedies or take any other actions permitted by applicable law.  Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. Misrepresentation and Nondisclosure. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. Time is of the Essence. Time is of the essence in the performance of each provision of this Security Instrument.

26. Waiver of Statute of Limitations. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. Reimbursement. To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. Clerical Error. In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents. In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. Assignment of Rents. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.



MAD10015 (02-27-04)

Loan Number: 681010622          Servicing Number: 002052400-5          Date: 12/23/05

[Check applicable box(es)]

[X] Adjustable Rate Rider          [ ] Condominium Rider          [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider          [ ] Planned Unit Development Rider          [ ] Occupancy Rider
[X] Other(s) (specify)          [ ]
    Exhibit A

        BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and
in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____          _____ (Seal)
Erica Gesing                                                                          -Borrower


_____          _____ (Seal)
                                                                                      -Borrower


_____ (Seal)          _____ (Seal)
BRADLEY R NELSON          -Borrower                                                   -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                                   -Borrower


COMMONWEALTH OF MASSACHUSETTS,                    County ss: Middlesex

        On this   23rd          day of December 2005          , before me, the undersigned notary public,
personally appeared

        Bradley R. Nelson


proved to me through satisfactory evidence of identification, which was/were   driver's license          ,
to be the person(s) whose name(s) is signed on the preceding document, and acknowledged to me that he/she/they signed it
voluntarily for its stated purpose.

My Commission Expires:   11/10/11
(Seal)

                                    _____
                                    Notary Public   Erica Gesing

## RIDER

Release of Massachusetts Homestead / Sole Ownership Certification

This rider amends the terms of the Mortgage dated December 23, 2005 between Option One Mortgage Corporation, principally located in Foxborough, Massachusetts "(Bank)" and Bradley R. Nelson (each a "Mortgagor").

A. Mortgagor signing below releases any and all rights acquired pursuant to the Declaration of Homestead dated March 24, 2004 and recorded with the Middlesex South Registry of Deeds in Book 42318, Page 358 as against the holder of the Mortgage only. Mortgagor signing below specifically reserves all other rights acquired pursuant to said Declaration of Homestead.

B. The Mortgagor signing below certifies that he is the sole owner of the property described in the Mortgage and that he is not married.

Executed as an instrument under seal this 23 day of December 2005.

_____    _____
Bradley R. Nelson

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On December 23 , 2005, before me, the undersigned notary public, personally appeared the above-named Bradley R. Nelson and proved to me through satisfactory evidence of identification, which was a driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

Notary Public: Erica Gesing
My Commission Expires: 11/10/11

MArGinal reference
B 4238 P 358

Loan Number: 681010622    Servicing Number: 002052400-5    Date: 12/23/05

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made December 23, 2005                          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
           Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

                     65  LOVERS LN,  GROTON, MA 01450-1831

                                [Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of          7.050%                    . The
Note provides for changes in the interest rate and the monthly payments, as follows:

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
      **(A) Change Dates**
      The interest rate I will pay may change on the first day of    January 01    2009          ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
      **(B) The Index**
      Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
      If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
      **(C) Calculation of Changes**
      Before each Change Date, the Note Holder will calculate my new interest rate by adding
      FIVE AND 60/100                              percentage point(s) ( 5.600%     )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                              USRI0021 (02-23-99)

Loan Number: 681010622   Servicing Number: 002052400-5   Date: 12/23/05

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.050% or less than 7.050% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 13.050% or less than 7.050%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 2 of 3                                                                    USRI0022 (02-23-99)

Loan Number: 681010622     Servicing Number: 002052400-5     Date: 12/23/05

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)      _____(Seal)
BRADLEY R NELSON

_____(Seal)      _____(Seal)

_____(Seal)      _____(Seal)

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3

USRI0023 (02-23-99)

Exhibit A

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1" = 100', dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, Page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997 and recorded with said Deeds in Book 17796, Page 330.

Being the same premises conveyed to the herein named mortgagor by deed recorded with Middlesex South District Registry of Deeds in Book 42146, Page 493.


REGISTRY OF DEEDS
SOUTHERN DISTRICT
ATTEST:

*Eugene C. Brune*

REGISTER



COMMONWEALTH OF MASSACHUSETTS.
MIDDLESEX S.S. ___12/23/2024___
SOUTH DIST. REGISTRY OF DEEDS
CAMBRIDGE, MA
I HEREBY CERTIFY THE FOREGOING
IS A TRUE COPY OF A PAPER
RECORDED IN BOOK _____46737___

PAGE _____38_____

_Maria C. Curtatone_
                              REGISTER



EXHIBIT

4



After Recording Return To:

Decision One Mortgage Company, LLC
6060 J.A. Jones Drive, Suite 1000
Charlotte, North Carolina 28287



Bk: 47885 Pg: 457    Doc: MTG
Page: 1 of 18    07/28/2006 12:17 PM

————————————— [Space Above This Line For Recording Data] —————————————

Loan Number 2090060723540
MIN: 100077910006670158

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JULY 24, 2006, together with all Riders to this document.

(B) "Borrower" is BRADLEY R NELSON. Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is Decision One Mortgage Company, LLC. Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of NORTH CAROLINA. Lender's address is 6060 J.A. JONES DRIVE, SUITE 1000, CHARLOTTE, NORTH CAROLINA 28287.

(E) "Note" means the promissory note signed by Borrower and dated JULY 24, 2006. The Note states that Borrower owes Lender SIX HUNDRED THOUSAND AND 00/100ths Dollars (U.S.$600,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 1, 2036.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider    ☐ Condominium Rider            ☐ Second Home Rider
☒ Balloon Rider            ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider         ☐ Biweekly Payment Rider

*Property: 65 Lovers Lane, Groton, MA*

_BN_

MASSACHUSETTS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022 1/01  *(page 1 of 11 pages)*

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the ____County____ of ____MIDDLESEX____:

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

**SEE ATTACHED SCHEDULE "A"**



which currently has the address of __65 LOVERS LANE__

                                                                [Street]

__GROTON_____, Massachusetts __01450_____ ("Property Address"):

[City]                              [Zip Code]

**MASSACHUSETTS**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3022  1/01  *(page 2 of 11 pages)*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to

MASSACHUSETTS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3022  1/01   *(page 3 of 11 pages)*

Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking



services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).



As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01  *(page 7 of 11 pages)*

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.



**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**MASSACHUSETTS**–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3022  1/01  *(page 9 of 11 pages)*

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

Erica Gesing

_____                          _____ (Seal)
                                                                                              -Borrower

_____                          _____ (Seal)
BRADLEY R. NELSON                                                                             -Borrower

_____                          _____ (Seal)
                                   (Seal)                                                     -Borrower
                                   -Borrower


COMMONWEALTH OF MASSACHUSETTS

                                   ss:   Middlesex _____

COUNTY OF MIDDLESEX

    On this ___24th___ day of ___July_____ , 2_006_, before me personally appeared **BRADLEY R NELSON**, to me known (or satisfactorily proven) to be the person(s) described in and who executed the foregoing instrument, and acknowledged that ___he___ executed the same as ___his___ free act and deed.

(Seal)                                          _____
                                                (Signature and title of officer taking acknowledgment)
                                                Erica Gesing
                                                My Commission Expires: 11/10/11

## Exhibit A - Property Description

Closing Date:              07/24/2006

Borrower(s):               Bradley R. Nelson

Property Address:          65 Lovers Lane, Groton MA 01450

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1" = 100', dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, Page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997 and recorded with said Deeds in Book 27796, Page 330.

Being the same premises conveyed to the herein named mortgagor by deed recorded with Middlesex South District Registry of Deeds in Book 42146, Page 493.

Loan Number 2090060723540

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 24TH day of JULY, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to **DECISION ONE MORTGAGE COMPANY, LLC** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**65 LOVERS LANE, GROTON, MASSACHUSETTS 01450**
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **8.54%**. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)  Change Dates**

The interest rate I will pay may change on the **1ST** day of **AUGUST, 2008,** and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN AND 54/100THS** percentage points (**7.54%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.





**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.54% or less than 8.54%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 14.54% or less than 8.54%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)--Single Family--Freddie Mac MODIFIED INSTRUMENT   Form 3192  1/01   *(page 2 of 3 pages)*



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.



_____ (Seal)
BRADLEY R. NELSON                              -Borrower

_____ (Seal)
                                               -Borrower

_____ (Seal)
                                               -Borrower

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)--Single Family--Freddie Mac MODIFIED INSTRUMENT   Form 3192  1/01   (page 3 of 3 pages)

Loan Number 2090060723540

# BALLOON PAYMENT RIDER

THIS BALLOON PAYMENT RIDER ("Rider") is made this **24TH** day of **JULY, 2006**, and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to **Decision One Mortgage Company, LLC** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**65 LOVERS LANE, GROTON, MASSACHUSETTS 01450**
[Property Address]

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

"THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER."

Sections 4 C of the Adjustable Rate Note and Adjustable Rate Rider, second paragraph, are amended to read as follows:

The Note holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change date in full by **AUGUST 1, 2046** at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. I understand that this loan is a balloon loan and that if I pay only my monthly payments, I will have a final balloon payment due on the Maturity Date of **AUGUST 1, 2036.**

Balloon Payment Rider                                Page 1 of 2

At least ninety (90) but not more than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the "balloon payment" (which is the entire unpaid principal balance of loan and interest then due) which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time.)

| | |
|---|---|
| Witness     Erica Gesing | _____(Seal) |
| | BRADLEY R. NELSON                 -Borrower |
| Witness | _____(Seal) |
| | -Borrower |
| Witness | _____(Seal) |
| | -Borrower |

Balloon Payment Rider                    Page 2 of 2

# RIDER

Release of Massachusetts Homestead / Sole Ownership Certification

This rider amends the terms of the Mortgage dated July 24, 2006 between Decision One Mortgage Company, LLC, principally located in Charlotte, North Carolina"(Bank)" and Bradley R. Nelson (each a "Mortgagor").

    A.        Mortgagor signing below releases any and all rights acquired pursuant to the Declaration of Homestead dated March 24, 2004 and recorded with the Middlesex South Registry of Deeds in Book 42318, Page 358 as against the holder of the Mortgage only.  Mortgagor signing below specifically reserves all other rights acquired pursuant to said Declaration of Homestead.

    B.        The Mortgagor signing below certifies that he is the sole owner of the property described in the Mortgage and that he is not married.

Executed as an instrument under seal this 24 day of July 2006.

REGISTRY OF DEEDS
SOUTHERN DISTRICT
ATTEST:
_Eugene C. Brune_
REGISTER

_____
Bradley R. Nelson

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On July 24, 2006, before me, the undersigned notary public, personally appeared the above-named Bradley R. Nelson and proved to me through satisfactory evidence of identification, which was a driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Notary Public: Erica Gesing
My Commission Expires:

COMMONWEALTH OF MASSACHUSETTS.
MIDDLESEX S.S. ___12/23/2024___
SOUTH DIST. REGISTRY OF DEEDS
CAMBRIDGE, MA
I HEREBY CERTIFY THE FOREGOING
IS A TRUE COPY OF A PAPER
RECORDED IN BOOK _____47885

PAGE _____457

_____ REGISTER



# EXHIBIT

5



Bk: 46956 Pg: 562 Doc: DIS
Page: 1 of 1    02/13/2006 09:48 AM

This instrument must be recorded:
SOUTHERN MIDDLESEX County, MA

Recording requested by:
Option One Mortgage Corporation (OOMC)

Loan #: 0012836557 LPS #: 3195403   Bin #:

DISCHARGE OF MORTGAGE

THIS CERTIFIES that a certain mortgage executed by BRADLEY R. NELSON to
OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION dated 2/27/2004 and
recorded 3/1/2004 Instrument #: 2004 00049426 in Book 42146 on Page 494
(Re-Recorded: Inst#: N/A in Book N/A on Page N/A), of the records in the
office of the Clerk of SOUTHERN MIDDLESEX County, MA, is hereby fully
released and satisfied.

Certificate No.:

Property Address:  65 LOVERS LN., GROTON, MA 01450
IN WITNESS WHEREOF, the said Option One Mortgage Corporation, a
California Corporation, 6501 Irvine Center Drive, Irvine, CA 92618 by its
authorized officer, has hereunto set its corporate hand.

Option One Mortgage Corporation, a California Corporation

January 03, 2006

BY
Michelle D. Barney, Vice President-Reconveyance and Release

STATE OF CA
COUNTY OF ORANGE
ON January 03, 2006, before me J. Graham, a Notary Public in and for the
County of ORANGE, State of CA, personally appeared Michelle D. Barney, Vice
President-Reconveyance and Release, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that
by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

J. Graham
Notary Public
Commission Expires: 8/19/2008
Prepared by: FNLPS, 15661 Redhill Ave., Suite 200, Tustin, CA 92780
(MIN#:)    279  0841
1/28/2006

J. GRAHAM
Comm. # 1508736
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Exp. Aug. 19, 2008

2/12/2006

When Recorded Mail To:
Fidelity National LPS
PO Box 19523
Irvine, CA 92623-9523

MA_028_3195403_0012836557_GRP1



Attest: Middlesex S. Register

COMMONWEALTH OF MASSACHUSETTS.
MIDDLESEX S.S. _____ 12/23/2024
SOUTH DIST. REGISTRY OF DEEDS
CAMBRIDGE, MA
I HEREBY CERTIFY THE FOREGOING
IS A TRUE COPY OF A PAPER
RECORDED IN BOOK _____ 46956

PAGE _____ 5162

_____ REGISTER



# EXHIBIT

6



Loan No: 0020524005



2005 00176520
Bk: 48164 Pg: 391   Doc: DIS
Page: 1 of 1   08/14/2008 02:52 PM

## DISCHARGE OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENTS,** that OPTION ONE MORTGAGE CORPORATION, A
**CALIFORNIA CORPORATION** a corporation existing under the laws of the state
of CALIFORNIA  and having its principal place of business at
6591 Irvine Center Drive
Irvine, CA 92618

is the owner of a certain Indenture of Mortgage, bearing the date of
12/23/2005 , made and executed by: **BRADLEY R. NELSON**  as mortgagor(s)
to   **OPTION ONE MORTGAGE CORPORATION**   as mortgagee, and recorded in the
Office of the register of Titles and County Recorder in and for the County
of MIDDLESEX SOUTH  and State of Massachusetts in Mortgage Book 46737 ,
Page 38 , Document No 2005 00284154  (and noted on the Certificate of
Title No.  ), is, with the indebtedness thereby secured, fully paid and
satisfied.

commonly known as: 65 LOVERS LN.
         GROTON, MA 01450-1831
The register of Titles and said County Recorder is hereby authorized and
directed to discharge the same upon the record thereof, according to the
statute in such case provided.

In Testimony Whereof, the said corporation has caused these present to be
executed in its corporate name by its VICE PRESIDENT  and its corporate
seal to be hereunto affixed THIS 03RD DAY OF AUGUST IN THE YEAR 2006
**OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION**

BY: _____
     CRYSTAL MOORE
     VICE PRESIDENT

STATE OF FLORIDA            COUNTY OF PINELLAS
On THIS 03RD DAY OF AUGUST IN THE YEAR 2006 , before me, the undersigned
notary public, personally appeared CRYSTAL MOORE  proved to me through
satisfactory evidence of identification, which were State issued Picture
ID, to be the person whose name is signed on the preceding document, and
acknowledged to me that he/she signed it voluntarily for its stated
purpose as the VICE PRESIDENT  of OPTION ONE MORTGAGE CORPORATION, A
CALIFORNIA CORPORATION  a corporation.

_____
MARIA LEONOR GERHOLDT
Notary Public/Commission expires 05/26/2009



MARIA LEONOR GERHOLDT
Notary Public State of Florida
My Commission Exp. May 26, 2009
No. DD 043482
Bonded through (800) 432-4254
Florida Notary Assn., Inc.

This instrument was prepared by:
J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When recorded mail to:
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

OOMRC 6028790   CTO1014792



Attest. Middlesex S. Register

COMMONWEALTH OF MASSACHUSETTS.

MIDDLESEX S.S. ___12/23/2024___

SOUTH DIST. REGISTRY OF DEEDS

CAMBRIDGE, MA

I HEREBY CERTIFY THE FOREGOING

IS A TRUE COPY OF A PAPER

RECORDED IN BOOK _____48164_____

PAGE _____391_____

REGISTER



EXHIBIT

7

H

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0045123882

NOTE AMOUNT: $511,500.00

2007 00044555
Bk: 49111 Pg: 205   Doc: MTG
Page: 1 of 14   03/12/2007 01:10 PM

FOR RECORDER'S USE ONLY

## MORTGAGE

THIS IS A FIRST MORTGAGE WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR BIWEEKLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS MORTGAGE IS $639,375.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.   DEFINITIONS OF WORDS USED IN THIS MORTGAGE
   (A)   Security Instrument. The Mortgage, which is dated **March 2, 2007** will be called the "Security Instrument."

   (B)   Borrower. **BRADLEY R NELSON, AN UNMARRIED MAN** sometimes will be called "Borrower" and sometimes simply "I" or "me."

   (C)   Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .

   (D)   Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $511,500.00 ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay the debt in full by March 26, 2037.

   (E)   Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

   (F)   Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

   (G)   Person. Any person, organization, governmental authority or other party will be called "Person."



SD166A (2005-04-2)
DEFERRED INTEREST

Page 1          MA          LENDER'S USE ONLY          003

0045123882

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I mortgage, irrevocably grant and convey the Property with Mortgage Covenants (as defined by Section 19 of the Massachusetts General Law, Chapter 183) to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender, any changes to the Secured Notes made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described below:

(i)   The property which is located at **65 LOVERS LN, GROTON, MA  01450-1831**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to mortgage, grant and convey the Property to Lender; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows:

## 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

0045123882

2.    PAYMENTS FOR TAXES AND INSURANCE

(A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

(B)    Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all Sums Secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all Sums Secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 27, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the Sums Secured by this Security Instrument.

SD166C (2005-04-2)

MA

0045123882

### 3. APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;
Second, to pay any advances due to Lender under this Security Instrument;
Third, to pay the amounts due to Lender under Paragraph 2 above;
Fourth, to pay interest due under the Secured Notes;
Fifth, to pay deferred interest due under the Secured Notes;
Sixth, to pay principal due under the Secured Notes;
Last, to pay late charges due under the Secured Notes.

### 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5. BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

SD166D (2005-04-2)

MA

0045123882

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 27 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE
       OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5 above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.    LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

0045123882

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

10.   **CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**
      (A)   **Borrower's Obligations**
            Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

            Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

      (B)   **Lender's Rights**
            Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 27 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

11.   **OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**
      Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

      Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

      Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

12.   **MAXIMUM LOAN CHARGES**
      If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

13.   **LEGISLATION AFFECTING LENDER'S RIGHTS**
      If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

SD166F (2005-04-3)

Page 6

MA

0045123882

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **65 LOVERS LN, GROTON, MA  01450-1831**. A notice will be given to me at an alternative address if I give Lender a notice of my alternative address. I may designate only one mailing address at a time for notification purposes. Any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used in this Mortgage," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B), enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 27, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An **assignment** is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

SD166G (2005-04-2                                   Page 7                                          MA

0045123882

### 19.   CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

### 20.   LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

### 21.   WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

### 22.   CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

### 23.   MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

### 24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)   If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B)   The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)   If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

SD168H (2005-04-2)

Page 8

MA

0045123882

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.    FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
    **Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

    **Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

    (i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

    (ii)    Lender approves the creditworthiness of the transferee in writing;

    (iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

    (iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

    (v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

SD166l (2005-04-2)                                                                Page 9                                                                MA

0045123882

## 27. RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading; or (v) there occurs any breach of the Statutory Condition (as defined by Section 20 of the Massachusetts General Law, Chapter 183). If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, the Lender may take action to have the Property sold under any applicable Federal Law, rule or regulation and, where Federal Law is not applicable, under the law of the state where the Property is located, which will be called the "Applicable Law."

Lender does not have to give me notice of a Breach of Duty unless notice is required by Applicable Law. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed under the Applicable Law to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property. In addition to any other right or remedy available to Lender, if there is any Breach of Duty, including, without limitation, a breach of the Statutory Condition, Lender shall have and may exercise the Statutory Power of Sale (as defined by Section 21 of the Massachusetts General Law, Chapter 183).

The sale of the Property may be postponed by or at the direction of Lender except as limited or prohibited by the Applicable Law. If the Property is sold under the Applicable Law, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property, except to the extent that the Applicable Law limits or prohibits any such charges.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to, attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

## 28. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all of the amounts secured by this Security Instrument, Lender shall release or cancel this Security Instrument.

## 29. STATEMENT OF OBLIGATION

To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

## 30. WAIVER OF REDEMPTION

My right of redemption is waived to the extent allowed by applicable law.

THIS SPACE INTENTIONALLY LEFT BLANK.

SD166J (2005-04-2)

MA

0045123882

31.   ( X )   QUICK QUALIFYING LOAN PROGRAM

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

32.   ( X )   OWNER OCCUPANCY

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

SD166K (2005-04-2)

MA

0045123882

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

EXECUTED AS AN INSTRUMENT UNDER SEAL

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

WITNESS(ES):

_____        _____

BORROWER(S):

_____    (Seal)
BRADLEY R NELSON

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

_____ [Space Below This Line For Acknowledgment] _____

## COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.

On this 2nd day of March, 2007, before me, the undersigned notary public, personally appeared Bradley Nelson, proved to me through satisfactory evidence of identification, which was/were [  ] Mass. driver's license(s) or [  ] _____, to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

_____

Notary Public John G. Molloy
My Commission Expires: 7/28/2011

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3022 1/01   Page 17 of 16

Exhibit A

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., survyed for Kevin Saaristo, Scale 1" = 100' dated June 1994" by David E. Ross Assocaites, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997, and recorded with said Deeds in Book 17796, Page 330.

For our title reference see Deed 42146, Page 493.

Being the same premises conveyed to the herein named mortgagor (s) by deed recorded with Middlesex South District Registry of Deeds in Book 42146, Page 493.  .

REGISTRY OF DEEDS
SOUTHERN DISTRICT
ATTEST:
*Eugene C. Brune*
REGISTER

COMMONWEALTH OF MASSACHUSETTS.
MIDDLESEX S.S. _12/24/2024_
SOUTH DIST. REGISTRY OF DEEDS
CAMBRIDGE, MA
I HEREBY CERTIFY THE FOREGOING
IS A TRUE COPY OF A PAPER
RECORDED IN BOOK _49111_

PAGE _205-218_

_Maria C. Curtatone_
                              REGISTER

EXHIBIT

8

14

**RECORDING REQUESTED BY:**
WORLD SAVINGS BANK

**WHEN RECORDED MAIL TO:**
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0045177896



Bk: 49111 Pg: 219   Doc: MTG
Page: 1 of 14   03/12/2007 01:10 PM

FOR RECORDER'S USE ONLY

65 Lovers Lane, Groton

OPEN END MORTGAGE
(SECURING FUTURE ADVANCES)
THIS MORTGAGE IS SECURITY FOR AN EQUITY LINE OF CREDIT AGREEMENT AND
DISCLOSURE STATEMENT MATURING March 15, 2037.

THIS MORTGAGE (herein called the "Security Instrument") is made this **2nd** day of **March,
2007**. The Mortgagor is BRADLEY R NELSON, AN UNMARRIED MAN (herein "Borrower"). This
Security Instrument is given to **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS
SUCCESSORS AND/OR ASSIGNEES**, and whose address is **1901 Harrison Street, Oakland, CA
94612** (herein "Lender").

PURSUANT TO an Equity Line of Credit Agreement and Disclosure Statement dated **March 2,
2007** and all renewals, extensions, substitutions and modifications thereof, including without limitation,
modifications that increase the Credit Limit thereunder (herein "Note"), Borrower may incur maximum
unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to
the maximum principal sum outstanding at any time of ONE HUNDRED TWO THOUSAND THREE
HUNDRED AND 00/100 Dollars (U.S. **$102,300.00**), which is due and payable, if not sooner paid, on
**March 15, 2037.**

BORROWER, IN consideration of the indebtedness herein recited, does hereby mortgage, grant
and convey to Lender and Lender's successors and assigns, with power of sale, the following
described property located in the County of MIDDLESEX State of **MASSACHUSETTS SEE EXHIBIT
"A," ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN**, which has the
address of **65 LOVERS LN, GROTON, MA  01450-1831** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, rights, appurtenances, fixtures and rents (subject however to the rights and authorities
given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain
a part of the property covered by this Security Instrument; and all of the foregoing, together with
said property (or the leasehold estate if this Security Instrument is on a
leasehold) are hereinafter referred to as the "Property";

0 0 3

SD840A2 (2005-04-3)          Page 1          MA          LENDER'S USE ONLY
ELOC

0045177896

**TO SECURE** to Lender (a) the repayment of all sums now or hereafter advanced under the terms of the Note, including any advances that may exceed the Credit Limit, together with interest; (b) the payment of all other sums, with interest, advanced under this Security Instrument to protect the security of this Security Instrument (including, without limitation, such sums that are advanced by Lender whether or not at the time the sums are advanced there is any principal sum outstanding under the Note); and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

**BORROWER COVENANTS** that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:**

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and all other charges due under this Security Instrument and due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. Dollars by check or money order. If any check or other instrument received by Lender as payment is returned to Lender unpaid, Lender may (a) charge Borrower the non-sufficient funds (NSF) fee specified in the Note or, if the Note does not specify any such fee amount, an amount not to exceed the maximum NSF charge permitted by applicable law; and (b) require that any or all subsequent payments be made by money order or with certified funds. If Borrower is in default, Lender may require Borrower to make any payment needed to cure the default by money order or with certified funds. "Certified funds" means a certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payment(s) are insufficient to bring Borrower's obligations current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Borrower's obligations current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payment(s) in the future.

2. **Funds for Escrow Items.** At loan origination or at any time thereafter, Lender may require that Borrower pay to Lender on the day periodic payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) condominium or homeowners association dues, fees and assessments, if any. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 2. Any waiver by Lender of Borrower's obligation to pay Funds to Lender may only be in writing.

0045177896

When Borrower is not required to pay for Escrow Items by paying Funds to Lender, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. If Borrower is obligated to pay Escrow Items directly and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may require that Borrower then pay to Lender Funds for any or all Escrow Items by a notice given in accordance with Section 12, and Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 2.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et. seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they or any successor legislation or regulation might be amended from time to time ("RESPA") and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires Lender to pay interest on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument Lender shall promptly refund to Borrower any Funds held by Lender. If under Section 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3.  **Application of Payments.** Unless the Note or applicable law requires otherwise, Lender will apply payments received under Sections 1 and 2 in the order selected by Lender.

4.  **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property (including, without limitation, all dues, fees, assessments and other charges that are imposed on the Property by any applicable condominium association, homeowners association or similar organization), which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any.

0045177896

Borrower agrees that Borrower will not obtain any additional advances, whether voluntary or involuntary, or allow any modification or extension of any loan secured by a lien or other encumbrance with a priority senior to this Security Instrument without the prior written consent of Lender. Violation of this provision shall constitute a default under this Security Instrument entitling Lender to all rights and remedies afforded herein, in law or equity, including but not limited to, acceleration of the loan.

Borrower further agrees to deliver to Lender any notices that Borrower receives from the holder of any such senior lien or encumbrance.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this loan, a one-time charge for flood zone determination and certification and a one-time charge for tracking services. Borrower also shall be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense, pursuant to Section 7 below. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance coverage that Borrower could have obtained.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, such as credit life and/or disability insurance or earthquake or other hazard insurance for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

If the Property is a unit in a condominium, cooperative or planned unit development (the "Project") and the Project is covered by a master or blanket policy maintained by the Project's owners association, in the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was specifically required by Lender, in lieu of restoration or repair following a loss to the Property and/or the Project, any proceeds payable to Borrower and/or Lender for a loss to the Property are hereby assigned and shall be paid to Lender for application to sums secured by this Security Instrument, with any excess paid to Borrower. Borrower shall take such actions as may be reasonable to insure that the Project's owners association maintains a public liability insurance policy acceptable to Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied first to reimburse Lender for costs and expenses incurred in

SD840D (2005-04-1)                                           Page 4                                    MA

0045177896

connection with obtaining the proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion regardless of any impairment or lack of impairment of any security, as follows: (a) to the extent allowed by applicable law, to the sums secured by this Security Instrument in a manner that Lender determines and/or (b) to restoration or repair of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender. During any repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or applicable law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 17 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund or unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

If any insurance proceeds are used to reduce the amount of principal owing to Lender under the Note, that use will not delay the due date or change the amount of regularly scheduled payments under the Note, unless Lender and Borrower agree to such delay or change in writing.

6. **Preservation and Maintenance of Property; Assignment of Rights for Injury to Property.** Borrower shall keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations, not commit waste or permit impairment or deterioration of the Property, comply with the provisions of any lease if this Security Instrument is on a leasehold, and, if this Security Instrument is on a unit in a Project, (a) perform all of Borrower's obligations under the declaration or covenants creating or governing the Project, the by-laws and regulations of the Project, and constituent documents, and (b) pay when due all dues, fees, assessments and other charges that are imposed on Borrower or the Property by the condominium association, homeowners association or similar organization.

An **assignment** is a transfer of rights to another. Borrower may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. Borrower assigns these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to sums secured by this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, Borrower will sign any further assignments or other documents that may be necessary to enforce this assignment.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which might materially affect Lender's interest in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or ordinances), or if Borrower abandons the Property, then Lender may do and pay for whatever it deems reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument. Lender's actions may include,

0045177896

without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5 above (such insurance may cost more and provide less coverage than the insurance Borrower might purchase), and paying any sums secured by a lien which has priority over this Security Instrument. Any amounts disbursed by Lender under this Section 7 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. Nothing contained in this Section 7 shall require Lender to incur any expense or take any action hereunder.

Lender also may charge Borrower fees for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by applicable law.

If Lender required mortgage insurance as a condition of making the loan, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

In the event Borrower is subject of a bankruptcy proceeding and delinquent amounts owing under the Note and/or this Security Agreement are to be paid according to a plan requiring approval of the bankruptcy court, Borrower agrees that such bankruptcy plan shall provide for interest on all delinquent amounts being paid through the plan (including, without limitation, principal, interest or periodic finance charges, fees and charges under the Note, and Lender advances, fees and charges under this Security Instrument) at the then current rate of interest provided in the Note.

8.  **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause for the inspection.

9.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver; No Offset.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of Section 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Note, (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property under the terms of this Security Instrument,

0045177896

(b) is not personally liable on the Note or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Security Instrument or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

**12. Notice; Notice of Grievance.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other single address as Borrower may designate by notice to Lender as provided herein, and (b) except as permitted below for changes of address, any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other single address as Lender may designate by notice to Borrower as provided herein. Borrower may give notice to Lender of a change of Borrower's address in writing or by calling Lender's customer service telephone number provided on Borrower's billing statement. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with this Section 12) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If applicable law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 16 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 12.

**13. Governing Law; Severability; Loan Charges.** This Security Instrument shall be governed by federal law, rules, and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

If a law which sets maximum loan charges is finally interpreted so that such law is applicable to Lender and that the interest or other loan charges collected or to be collected in connection with the Note or the Security Instrument exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Borrower's Copy; Modification; Clerical Errors; Replacement Documents.** Borrower shall be furnished a conformed copy of the Note and of this Security Instrument at the time of execution or after recordation hereof. The Note and/or this Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender. In the event Lender at any time discovers that the Note and/or this Security Instrument contains an error caused by a clerical mistake or calculation, computer, printing or similar error, Borrower agrees to reexecute the document(s) containing the error and to hold Lender harmless for any such error. If any document evidencing this loan is lost, stolen, mutilated or destroyed, and Lender delivers a signed indemnification in Borrower's favor, then Borrower agrees to sign and deliver to Lender a replacement document identical in form and content which will have the effect of the original for all purposes.

SD840G (2005-04-1)                           Page 7                                    MA

0045177896

**15. Borrower's Loan Application.** Borrower shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note.

Lender extended Borrower this loan in reliance upon Borrower's representation in the loan application that Borrower intends to occupy the Property as Borrower's principal residence. Lender may have provided Borrower more favorable loan terms, such as a lower interest rate in the Note or a higher loan-to-value, than otherwise would have been made available in the absence of Borrower's representation. Borrower agrees to occupy, establish and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and to continue to occupy the Property as Borrower's principal residence for at least one year thereafter, unless extenuating circumstances exist which are beyond Borrower's control.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Federal Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**17. Acceleration; Remedies.** Borrower will be in default if (a) the full minimum payment due under the Note, or any other payment required by the Note or this Security Instrument, is not made when it is due; (b) Borrower has engaged in fraud or made a material misrepresentation at any time in connection with the equity account evidenced by the Note; (c) Borrower takes any action or fails to take any action that adversely affects the Property or Lender's rights in the Property. If a default occurs (other than under Section 16 unless otherwise required by applicable law), Lender shall give notice to Borrower prior to acceleration. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

SD840H3 (2005-04-1)                    Page 8                                        MA
ELOC

0045177896

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Security Instrument due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Security Instrument discontinued at any time prior to entry of a judgment enforcing this Security Instrument or any such other earlier period as applicable law might specify for the termination of Borrower's right to reinstate, if: (a) Borrower pays Lender all sums which would be then due under this Security Instrument and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Security Instrument, and repays all Lender's expenses incurred in pursuing Lender's remedies as provided in Section 17 hereof, including, but not limited to, reasonable attorneys' fees; and (c) Borrower takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. Upon such payment and cure by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred. However, the right to reinstate shall not apply in the case of acceleration under Section 16.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and to the extent permitted by applicable law, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under Section 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under Section 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, maintenance and repairs of the Property, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**21. Statement of Obligations.** Lender may furnish a statement of obligation, payoff demand statement, or any similar statement by delivering such statement by first class mail upon receipt of a written request. If Lender is requested by Borrower or Borrower's agent to deliver such statement for facsimile transmission, Lender may collect a special handling charge of $10 for each such delivery and need not send a copy of such statement by first class mail.

**22. Waivers.** Borrower waives all rights and benefits of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

SD840/2 (2005-04-2)
ELOC

MA

0045177896

**23. ( x ) Quick Qualifying Loan.** Borrower applied for this loan under Lender's "Quick Qualifying" loan program. Borrower acknowledges that Lender relied upon certain statements of fact made by Borrower in approving the loan without requiring full documentation from Borrower and certain information verifications from third parties, enabling Borrower to obtain this loan rapidly. These statements included, but are not limited to, Borrower's certification that (a) except for any loan made by Lender concurrently with this loan, Borrower has no other "Quick Qualifying" loan with Lender, and (b) there are no undisclosed financial arrangements circumventing the terms of this loan transaction, including, but not limited to, unauthorized secondary financing, sales price adjustments, equity exchanges, credits to down payments or payments made outside escrow, or illusory transfers of title. Borrower agrees that Lender may deem Borrower to be in material breach of this section if any secondary financing is obtained, or an escrow is opened, on the Property within six months of the date of this Security Instrument. Borrower shall be in default if any material statements of fact or any of the above certifications were false or misleading, or if Borrower is in material breach of this Section.

Notwithstanding anything to the contrary in the Note or this Security Instrument, in the event of Borrower's default under this Section, Lender, at its option, may (1) accelerate the loan in accordance with Section 16 without Borrower having the right of reinstatement under Section 18, or (2) increase the applicable interest rate under the Note by two percentage points (2.00%) for the remaining term of the Note (but not to exceed any lifetime interest rate cap or any maximum rate allowed by applicable law) and make corresponding changes to Borrower's periodic payment amount in order to amortize the loan according to the Note.

**24. (    ) Affordable Housing Program.** The obligation evidenced by the Note is the repayment of down payment and/or closing cost assistance provided to Borrower through a Federal Home Loan Bank's Affordable Housing Program. Notwithstanding anything to the contrary in this Security Instrument, this Security Instrument may be subordinate to more than one instrument and interest does not accrue on down payment and/or closing cost assistance amounts. In the event of any conflict between the provisions of the Note and this Security Instrument, the Note provision shall prevail.

( X )  VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK

0045177896

**25. Future Advances.** This Security Instrument is given to secure (A) payment of the indebtedness including future advances and (B) performance of any and all obligations under the Note, the related agreements, and this Security Instrument. This Security Instrument secures a revolving line of credit under which advances, payments or readvances may be made from time to time in accordance with the Note. The maximum amount of advances secured by this Security Instrument is stated above. Borrower hereby agrees that if the outstanding unpaid balance of the revolving line of credit under the Note is ever reduced to zero the lien and security interest hereof shall remain in full force and effect to secure any future advances made under said revolving line of credit.

**26. Request for Notice.**

REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender at World Savings Bank, FSB, Attention: Default Administration, T6B0, 4101 Wiseman Boulevard, San Antonio, Texas 78251 of any default under the superior encumbrance and of any sale or other foreclosure action.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS

SD840K (2006-12-1)                    Page 11                    MA

0045177896

IN **WITNESS WHEREOF,** Borrower has executed this Security Instrument.

### EXECUTED AS AN INSTRUMENT UNDER SEAL

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

WITNESS(ES):

BORROWER(S):

(Seal)

BRADLEY R NELSON

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

## COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.

On this 2nd day of March, 2007, before me, the undersigned notary public, personally appeared Conrad D. Parquette, Sheri L. Parquette, and Vincent Parquette, proved to me through satisfactory evidence of identification, which was/were [ ] Mass. driver's license(s) or [ ] _____ _____, to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

Notary Public: John G. Molloy
My Commission Expires: 7/28/2011



Exhibit A

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachuetta, being showed as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1"=100', dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, Page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997 and recorded with said Deeds in Book 17796, Page 330.

Being the same premises conveyed to the herein named mortgagor (s) by deed recorded with Middlesex South District Registry of Deeds in Book , Page .

42144, Page 493

REGISTRY OF DEEDS
SOUTHERN DISTRICT
ATTEST:

*Eugene C. Brune*

REGISTER



COMMONWEALTH OF MASSACHUSETTS.
MIDDLESEX S.S. ___12/23/2024___
SOUTH DIST. REGISTRY OF DEEDS
CAMBRIDGE, MA
I HEREBY CERTIFY THE FOREGOING
IS A TRUE COPY OF A PAPER
RECORDED IN BOOK _____49111_____

PAGE _____219_____

_Marie C. Curtatone_

REGISTER



# EXHIBIT

9

Home  >  Resources  >  Data Tools  >  BankFind Suite  > Find Institutions by Name & Location

Help ⓘ



<table>
<tr><td>‹ 🏛 BankFind Suite Home</td><td>Back to Search Results</td></tr>
</table>

# Wells Fargo Bank South, National Association



## Institution Details

Data as of 09/11/2023



**Institution Closed**
Merged or acquired on 11/01/2009
without government assistance

**FDIC Cert #**
33966

**Established**
01/17/1995

**Bank Charter Class**
National Banks, member of the
Federal Reserve Systems (FRS)

**Primary Federal Regulator**
Comptroller of the Currency

**Main Office Address**
2005 Taylor Street
Houston, TX 77007

**Financial Information**
Create financial reports for this institution

**Consumer Assistance**
HelpWithMyBank.gov

**Contact the FDIC**
Questions about Bank Information

## Succeeding Institution

### Wells Fargo Bank South Central, National Association
### Cert - 5146



**FDIC Insured**
Since 01/01/1934
**Click to View Succeeding Institution**

See the succeeding institution for more information.

Get additional detailed information by selecting from the following:

<table>
<tr><td>Locations</td><td>History</td><td>Institution Profile</td><td>Other Names</td></tr>
</table>

**17 Historical Events**

Results
25 ▾



Page #

[                                                                    ] Go

| | Description of Event | View Details |
|---|---|---|
| 01/17/1995 | Institution established. Original name: World Savings Bank, SSB (33966). | ℹ |
| 12/01/2000 | Changed Chartering Agency to OTS. | ℹ |
| 12/01/2000 | Changed Bank Class to SB. | ℹ |
| 12/01/2000 | Changed Primary Federal Regulatory Agency to OTS. | ℹ |
| 12/01/2000 | Changed Institution Name to World Savings Bank, FSB (Texas). | ℹ |
| 12/01/2000 | Changed Institution Name to World Savings Bank, FSB (Texas). | ℹ |
| 12/01/2000 | Main Office moved to 2085 Westheimer Road, Houston, TX 77098. | ℹ |
| 10/12/2007 | Main Office moved to 2005 Taylor Street, Houston, TX 77077. | ℹ |
| 12/31/2007 | Changed Institution Name to Wachovia Bank, FSB. | ℹ |
| 03/23/2009 | Main Office moved to 2005 Taylor Street, Houston, TX 77007. | ℹ |
| 10/31/2009 | Institution becomes member of the Federal Reserve System. | ℹ |
| 10/31/2009 | Changed Chartering Agency to OCC. | ℹ |
| 10/31/2009 | Changed Bank Class to N. | ℹ |
| 10/31/2009 | Changed Organization Type to COMMERCIAL BANK. | ℹ |
| 10/31/2009 | Changed Primary Federal Regulatory Agency to OCC. | ℹ |
| 10/31/2009 | Changed Institution Name to Wells Fargo Bank South, National Association. | ℹ |
| 11/01/2009 | Merged and became part of Wells Fargo Bank South Central, National Association (5146) in Houston, TX. | ℹ |

*Data prior to 01/01/2000 may include small anomalies which may or may not effect the historic events of this institution. If you have questions or concerns, please contact the FDIC using the link above.

9/13/2023, 10:54 AM

top of page

| ◁ | 1 | ▷ |
Page #

Go

EXHIBIT

10



# Merger
# Decisions
## 2011

Federal
Deposit
Insurance
Corporation

FDIC

# FEDERAL DEPOSIT INSURANCE CORPORATION

## MERGER DECISIONS

### ANNUAL REPORT TO CONGRESS

Bank Merger Act Reporting Requirements
(Saturday, January 01, 2011 through Saturday, December 31, 2011)

The Merger applications listed below have been approved by the FDIC during the year 2011. Regarding each application, the FDIC considered and found favorably with respect to the statutory factors, including the financial and managerial resources and future prospects of the existing and proposed institutions; the convenience and needs of the community to be served; the risk to the stability of the United States banking or financial system; and the effectiveness of each depository institution involved in the merger in establishing a program to combat money laundering activities, including in overseas branches.

Except as noted, reports regarding the competitive factors were requested from the Attorney General, and the Summary Report by the Attorney General indicated that the transaction would not have a significant adverse effect on competition.

In each case, the FDIC has determined that the transaction would not result in a monopoly or further any combination or conspiracy to monopolize or to attempt to monopolize the business of banking in any part of the United States.   In addition, the FDIC determined that the transaction would not have the effect in any section of the country to substantially lessen competition or tend to create a monopoly or in any other manner restrain trade, unless the anticompetitive effects of the transaction were clearly outweighed in the public interest by the probable effect of transaction in meeting the convenience and needs of the community to be served.

Finally, the FDIC determined that, for each interstate merger case (other than a case involving an insured depository institution in default or in danger of default), the resulting insured depository institution, including its affiliated insured depository institutions, upon consummation of the transactions would not control more than ten percent (10%) of the total amount of deposits of all insured depository institutions in the United States.

Note:   Additional copies of this Report can be downloaded from the FDIC's Public Information Center's web site at: www.fdic.gov/bank/individual/merger.

|  | Applicant Institution | | | Other/Target Institution | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Institution Name<br>City, State | Total Assets<br>(000's) | Cert # | Institution Name<br>City, State | Assets<br>Acquired<br>(000's) | Offices<br>Acquired | Cert# | Action<br>Approved | DOJ<br>Reply Date | Application<br>Number |
| JPMorgan Chase Bank, National Association<br>COLUMBUS, OH | 1,642,691,000 | 628 | Chase Equipment Finance, Inc.<br>COLUMBUS, OH | 0 | 0 | N/A | 03/11/2011 | | 20103958 |
| JPMorgan Chase Bank, National Association<br>COLUMBUS, OH | 1,791,060,000 | 628 | J.P. Morgan Investors Services Co.<br>BOSTON, MA | 0 | 0 | N/A | 09/23/2011 | | 20111249 |
| JPMorgan Chase Bank, National Association<br>COLUMBUS, OH | 1,791,060,000 | 628 | Chase Auto Finance Corp.<br>GARDEN CITY, NY | 0 | 0 | N/A | 09/23/2011 | | 20111252 |
| The Park National Bank<br>NEWARK, OH | 6,346,125 | 6653 | Park Insurance Insurance Group<br>NEWARK, OH | 0 | 0 | N/A | 12/16/2011 | | 20113026 |
| Farmers & Merchants Bank<br>CRESCENT, OK | 133,627 | 12761 | F & M Bank, National Association,<br>Oklahoma city, Oklahoma<br>YUKON, OK | 78,714 | 3 | 27421 | 09/21/2011 | | 20111862 |
| BancFirst<br>OKLAHOMA CITY, OK | 4,997,077 | 27476 | Exchange National Bank of Moore<br>MOORE, OK | 155,746 | 1 | 18872 | 05/20/2011 | | 20110881 |
| BancFirst<br>OKLAHOMA CITY, OK | 5,183,738 | 27476 | The Okemah National Bank<br>OKEMAH, OK | 70,638 | 1 | 4163 | 08/29/2011 | | 20112260 |
| BancFirst<br>OKLAHOMA CITY, OK | 5,196,891 | 27476 | 1st Bank Oklahoma<br>CLAREMORE, OK | 191,470 | 5 | 31826 | 12/01/2011 | | 20112936 |
| BOKF, National Association<br>TULSA, OK | 24,858,667 | 4214 | Southwest Trust Company, National Association<br>OKLAHOMA CITY, OK | 54,505 | 0 | 33884 | 12/11/2011 | | 20112973 |
| The Bryn Mawr Trust Company<br>BRYN MAWR, PA | 1,694,566 | 11866 | PWMG Bank and Trust, Inc.<br>HERSHEY, PA | 18,250 | 0 | N/A | 05/18/2011 | | 20111337 |
| Doral Bank<br>SAN JUAN, PR | 7,500,276 | 32102 | Doral Bank, FSB<br>NEW YORK, NY | 217,005 | 7 | 34905 | 08/08/2011 | | 20121890 |
| RBS Citizens, National Association<br>PROVIDENCE, RI | 113,481,240 | 57957 | Citizens Automobile Finance, Inc.<br>PROVIDENCE, RI | 11,504 | 0 | N/A | 07/20/2011 | | 20111500 |
| First Citizens Bank and Trust Company, Inc.<br>COLUMBIA, SC | 8,239,766 | 15504 | The Exchange Bank of South Carolina, Inc.<br>KINGSTREE, SC | 126,944 | 3 | 15077 | 03/23/2011 | | 20112112 |
| Crescent Bank<br>MYRTLE BEACH, SC | 407,149 | 57135 | Community FirstBank of Charleston<br>CHARLESTON, SC | 583,280 | 6 | 34335 | 05/04/2011 | | 20101352 |
| Wells Fargo Bank, National Association<br>SIOUX FALLS, SD | 1,070,489,000 | 3511 | Wachovia Holdings, Inc.<br>CHARLOTTE, NC | 0 | 0 | N/A | 01/26/2011 | | 20110061 |
| Wells Fargo Bank, National Association<br>SIOUX FALLS, SD | 1,102,278,000 | 3511 | Wells Fargo Dealer Services, Inc<br>IRVINE, CA | 0 | 0 | N/A | 06/30/2011 | | 20110665 |
| Wells Fargo Bank, National Association<br>SIOUX FALLS, SD | 1,102,278,000 | 3511 | Wachovia Mortgage Corporation<br>CHARLOTTE, NC | 0 | 0 | N/A | 05/04/2011 | | 20110666 |
| Wells Fargo Bank, National Association<br>SIOUX FALLS, SD | 1,102,278,000 | 3511 | Wells Fargo Financial Mississippi Inc<br>DES MOINES, IA | 0 | 0 | N/A | 06/30/2011 | | 20111285 |
| Wells Fargo Bank, National Association<br>SIOUX FALLS, SD | 1,102,278,000 | 3511 | Wells Fargo Financial Mississippi 2 Inc.<br>DES MOINES, IA | 0 | 0 | N/A | 06/30/2011 | | 20111288 |
| Wells Fargo Bank, National Association<br>SIOUX FALLS, SD | 1,102,278,000 | 3511 | Meridian Mortgage Corporation<br>PHILADELPHIA, PA | 0 | 0 | N/A | 06/30/2011 | | 20111289 |

**Corporate Reorganization Mergers (Page 5 of 7, of 126 records)**

**Data Date(s) 01/01/2011 to 12/31/2011**

| | **Applicant Institution** | | | **Other/Target Institution** | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Institution Name<br>City, State** | **Total Assets<br>(000's)** | **Cert #** | **Institution Name<br>City, State** | **Assets<br>Acquired<br>(000's)** | **Offices<br>Acquired** | **Cert#** | **Action<br>Approved** | **DOJ<br>Reply Date** | **Application<br>Number** |
| Wells Fargo Bank, National Association<br>SIOUX FALLS, SD | 1,102,278,000 | 3511 | South Trust Mortgage Corporation<br>MARIETTA, GA | 0 | 0 | N/A | 06/30/2011 | | 20111290 |
| Wells Fargo Bank, National Association<br>SIOUX FALLS, SD | 1,093,200,000 | 3511 | First Union Financial Investments LLC<br>ROSEVILLE, CA | 0 | 0 | N/A | 07/08/2011 | | 20111597 |
| Wells Fargo Bank, National Association<br>SIOUX FALLS, SD | 1,093,200,000 | 3511 | WES Holding Corporation<br>CHARLOTTE, NC | 0 | 0 | N/A | 07/08/2011 | | 20111598 |
| Wells Fargo Bank, National Association<br>SIOUX FALLS, SD | 1,104,800,000 | 3511 | Wells Fargo Preferred Capital, Inc.<br>DES MOINES, IA | 0 | 0 | N/A | 11/22/2011 | | 20112605 |
| American Bank & Trust<br>WESSINGTON SPRINGS, SD | 291,131 | 1117 | Peoples State Bank<br>DE SMET, SD | 67,053 | 1 | 9002 | 06/10/2011 | | 20111261 |
| The First National Bank of McMinnville<br>MCMINNVILLE, TN | 418,977 | 4952 | FNB Financial Group, LLC<br>MURFREESBORO, TN | 0 | 0 | N/A | 05/18/2011 | | 20111095 |
| Community State Bank<br>AUSTIN, TX | 20,620 | 11561 | Treaty Oak Bank<br>AUSTIN, TX | 109,617 | 4 | 22512 | 05/11/2011 | | 20110930 |
| Charter Bank<br>CORPUS CHRISTI, TX | 151,308 | 18660 | Charter Alliance Bank<br>CORPUS CHRISTI, TX | 21,263 | 1 | 58751 | 01/21/2011 | | 20103700 |
| The Bank of Texas<br>DEVINE, TX | 51,186 | 26905 | The Bank of Texas Bancshares, Inc.<br>DEVINE, TX | 4,519 | 0 | N/A | 10/06/2011 | | 20112219 |
| Texas Bank and Trust Company<br>LONGVIEW, TX | 1,322,661 | 17842 | First State Bank<br>VAN, TX | 43,996 | 1 | 16768 | 10/20/2011 | | 20112439 |
| First Bank & Trust Company<br>LUBBOCK, TX | 473,379 | 14778 | Jefferson Bank<br>DALLAS, TX | 40,700 | 0 | 34196 | 07/26/2011 | | 20120985 |
| Beal Bank, SSB<br>PLANO, TX | 3,568,540 | 32574 | Charter Bank<br>ALBUQUERQUE, NM | 663,972 | 0 | 59030 | 08/05/2011 | | 20111821 |
| American Bank of Texas<br>SHERMAN, TX | 1,132,404 | 20473 | American Bank of Texas, National<br>Association<br>MARBLE FALLS, TX | 765,374 | 16 | 23433 | 10/17/2011 | | 20120974 |
| Capital One, National Association<br>MCLEAN, VA | 126,901,280 | 4297 | Capital One National Community<br>Development Corporation<br>NEW YORK, NY | 0 | 0 | N/A | 04/14/2011 | | 20110599 |
| Citizens National Bank<br>WINDSOR, VA | 51,519 | 57320 | CNB Bancorp, Inc.<br>WINDSOR, VA | 0 | 0 | N/A | 12/14/2011 | | 20112660 |
| AmericanWest Bank<br>SPOKANE, WA | 1,592,256 | 22441 | Bank of the Northwest<br>BELLEVUE, WA | 146,340 | 4 | 58620 | 07/22/2011 | | 20111992 |
| AmericanWest Bank<br>SPOKANE, WA | 1,592,256 | 22441 | Sunrise Bank<br>SAN DIEGO, CA | 231,990 | 4 | 57808 | 07/22/2011 | | 20111993 |
| PyraMax Bank, FSB<br>GREENFIELD, WI | 482,280 | 29120 | South Milwaukee Investments, Inc.<br>LAS VEGAS, NV | 0 | 0 | N/A | 08/25/2011 | | 20111917 |
| East Wisconsin Savings Bank, S.A.<br>KAUKAUNA, WI | 244,058 | 30313 | EWSB Investments, Inc.<br>LAS VEGAS, NV | 0 | 0 | N/A | 02/14/2011 | | 20110438 |
| Peoples State Bank<br>PRAIRIE DU CHIEN, WI | 406,504 | 12814 | Security State Bank<br>GUTTENBERG, IA | 90,999 | 1 | 15914 | 08/02/2011 | | 20111512 |

**Corporate Reorganization Mergers (Page 6 of 7, of 126 records)**

**Data Date(s) 01/01/2011 to 12/31/2011**

# EXHIBIT

# 11

### National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 8709 | 1st National Bank | 1000 East Main Street | Lebanon | OH | 6646 | 480723 |
| 15592 | Academy Bank, National Association | 1201 Walnut Street | Kansas City | MO | 19600 | 535753 |
| 25173 | ADP Trust Company, National Association | 800 Delaware Avenue, Suite 602 | Wilmington | DE | 59194 | 5397639 |
| 25307 | Affinity Bank, National Association | 3175 Highway 278 | Covington | GA | 29510 | 321273 |
| 25225 | Agility Bank, National Association | 2401 N. Shepherd | Houston | TX | 59239 | 5728916 |
| 14688 | Albany Bank and Trust Company National Association | 3400 West Lawrence Avenue | Chicago | IL | 17230 | 2732 |
| 13790 | Alerus Financial, National Association | 401 Demers Avenue | Grand Forks | ND | 3931 | 933256 |
| 14206 | Amarillo National Bank | 400 South Taylor, Plaza One | Amarillo | TX | 14531 | 353555 |
| 16804 | Amerant Bank, National Association | 220 Alhambra Circle | Coral Gables | FL | 22953 | 83638 |
| 24369 | American Bank and Trust Company, National Association | 4301 East 53rd Street | Davenport | IA | 34955 | 2733263 |
| 22286 | American Bank, National Association | 234 Fifth Avenue S.W. | Lemars | IA | 5800 | 345345 |
| 15820 | American Bank, National Association | 100 American Bank Plaza | Corpus Christi | TX | 20241 | 807955 |
| 16320 | American Bank, National Association | 2707 West Northwest Highway | Dallas | TX | 21567 | 494654 |
| 17319 | American Bank, National Association | 200 West Highway 6 | Waco | TX | 23886 | 307361 |
| 24456 | American Commerce Bank, National Association | 400 Highway 27 North Bypass | Bremen | GA | 57686 | 3272956 |
| 1154 | American Commercial Bank & Trust, National Association | 701-705 La Salle Street | Ottawa | IL | 3719 | 856243 |
| 25151 | American Express National Bank | 115 West Towne Ridge Parkway | Sandy | UT | 27471 | 1394676 |
| 23521 | American First National Bank | 9999 Bellaire Boulevard | Houston | TX | 34656 | 2694681 |
| 15037 | American Heritage National Bank | 24 2nd Street South | Long Prairie | MN | 8843 | 61757 |
| 18613 | American National Bank | 4301 North Federal Highway | Oakland Park | FL | 26398 | 481430 |
| 15435 | American National Bank | 8990 West Dodge Road | Omaha | NE | 19300 | 660655 |
| 22553 | American National Bank - Fox Cities | 2200 N. Richmond Street | Appleton | WI | 33812 | 2051127 |
| 16617 | American National Bank & Trust | 2732 Midwestern Parkway | Wichita Falls | TX | 22373 | 498362 |
| 24219 | American National Bank of Minnesota | 7638 Woida Road | Baxter | MN | 26499 | 306159 |
| 24716 | American Plus Bank, National Association | 630 West Duarte Road | Arcadia | CA | 58469 | 3623110 |
| 24182 | AMG National Trust Bank | 1155 Canyon Boulevard, Suite 310 | Boulder | CO | 57295 | 3015939 |
| 16625 | Anahuac National Bank | 801 S. Ross Sterling | Anahuac | TX | 22381 | 424352 |
| 25243 | Anchorage Digital Bank National Association | 101 S. Reid Street, Suite 329 | Sioux Falls | SD | 59276 | 5561001 |
| 5525 | Anna-Jonesboro National Bank | 201 S. Main | Anna | IL | 3759 | 855844 |
| 8796 | Armed Forces Bank, National Association | 320 Kansas Avenue | Ft. Leavenworth | KS | 4666 | 983457 |
| 23006 | Asian Pacific National Bank | 333 West Valley Boulevard | San Gabriel | CA | 33013 | 1462986 |
| 23695 | Associated Bank, National Association | 200 North Adams Street | Green Bay | WI | 5296 | 917742 |
| 23250 | Associated Trust Company, National Association | 815 North Water Street | Milwaukee | WI | 27102 | 1629903 |
| 5581 | Austin Bank, Texas National Association | 200 East Commerce Street | Jacksonville | TX | 3276 | 548351 |
| 25139 | Axiom Bank, National Association | 258 Southhall Lane, Suite 400 | Maitland | FL | 31390 | 408875 |
| 11622 | B2 Bank National Association | 8355 Unity Drive, Suite 400 | Mt. Iron | MN | 5105 | 108652 |
| 3956 | Baker Boyer National Bank | 7 West Main Street | Walla Walla | WA | 2987 | 69678 |
| 1253 | Ballston Spa National Bank | 87 Front Street | Ballston Spa | NY | 6959 | 505 |
| 12150 | BancCentral, National Association | 604 Flynn Street | Alva | OK | 4033 | 251352 |
| 4975 | Bank First, National Association | 402 North 8th Street | Manitowoc | WI | 5304 | 594947 |
| 24077 | Bank of America California, National Association | 555 California Street | San Francisco | CA | 25178 | 1443266 |
| 13044 | Bank of America, National Association | 100 North Tryon Street, Suite 170 | Charlotte | NC | 3510 | 480228 |
| 24153 | Bank of Brenham, National Association | 501 S. Austin Street | Brenham | TX | 57102 | 3042234 |
| 10844 | Bank of Bridger, National Association | 101 S. Main Street | Bridger | MT | 2224 | 17950 |
| 16976 | Bank of Brookfield-Purdin, National Association | 939 Park Circle Drive | Brookfield | MO | 9385 | 236256 |
| 20415 | Bank of Desoto National Association | 2011 N. Hampton Road | Desoto | TX | 26542 | 638355 |
| 14510 | Bank of Hillsboro, National Association | 230 South Main | Hillsboro | IL | 16276 | 659341 |
| 24100 | Bank of Southern California, National Association | 12265 El Camino Real, Suite 100 | San Diego | CA | 57044 | 3076453 |
| 17548 | Bank of Whittier, National Association | 15141 East Whittier Boulevard | Whittier | CA | 24211 | 250843 |
| 16643 | BankChampaign, National Association | 2101 South Neil | Champaign | IL | 22434 | 436739 |
| 25140 | BankFinancial, National Association | 21110 South Western Avenue | Olympia Fields | IL | 28808 | 454676 |
| 25028 | BankUnited, National Association | 14817 Oak Lane | Miami Lakes | FL | 58979 | 3938186 |
| 23216 | Barrington Bank & Trust Company, National Association | 201 South Hough Street | Barrington | IL | 34395 | 2508751 |
| 25276 | BayFirst National Bank | 700 Central Avenue | St. Petersburg | FL | 34997 | 2771694 |
| 18358 | Beacon Business Bank, National Association | 425 California Street | San Francisco | CA | 25644 | 403067 |
| 23869 | Bessemer Trust Company of California, National Association | 100 California Street | San Francisco | CA | 35413 | 2845782 |
| 24547 | Bessemer Trust Company of Delaware, National Association | 20 Montchanin Road | Wilmington | DE | 58011 | 3310287 |
| 25287 | Bessemer Trust Company of Nevada, National Association | 1700 South Pavilion Center Drive | Las Vegas | NV | 59346 | 5805479 |
| 16417 | Bessemer Trust Company, National Association | 1271 Avenue of the Americas, 46th Floor | New York | NY | 21868 | 976703 |
| 24466 | Beverly Bank & Trust Company, National Association | 10258 South Western | Chicago | IL | 57701 | 3216017 |

## National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 8674 | Big Bend Banks, National Association | 301 South Highland Avenue | Marfa | TX | 3320 | 362856 |
| 24798 | Black Hills Community Bank, National Association | 840 Mount Rushmore Road | Rapid City | SD | 58723 | 3636428 |
| 22121 | BlackRock Institutional Trust Company, National Association | 400 Howard Street | San Francisco | CA | 32961 | 1444021 |
| 23903 | Blue Ridge Bank, National Association | 1 East Market Street | Martinsville | VA | 35274 | 233527 |
| 14583 | BMO Bank National Association | 320 South Canal Street | Chicago | IL | 16571 | 75633 |
| 24536 | BMO Harris Central National Association | 110 East Irving Park Road | Roselle | IL | 58216 | 3353154 |
| 24224 | BNC National Bank | 20175 North 67th Avenue | Glendale | AZ | 57197 | 2358769 |
| 6301 | BNY Mellon, National Association | One Mellon Bank Center, 500 Grant Street | Pittsburgh | PA | 7946 | 934329 |
| 13679 | BOKF, National Association | Bank of Oklahoma Tower | Tulsa | OK | 4214 | 339858 |
| 17383 | Brazos National Bank | 2300 Brazosport Blvd. | Richwood | TX | 24038 | 863362 |
| 23290 | Bremer Bank, National Association | Lawson Building, 372 St. Peter Street | St. Paul | MN | 12923 | 800657 |
| 14447 | Broadway National Bank | 1177 N.E. Loop 410 | San Antonio | TX | 15797 | 474254 |
| 24944 | Brown Brothers Harriman Trust Company of Delaware, NA | 4250 Lancaster Pike | Wilmington | DE | 59025 | 4032791 |
| 24429 | Association | 140 Broadway | New York | NY | 25824 | 931207 |
| 14479 | Buena Vista National Bank | 1309 Swanwick | Chester | IL | 10844 | 621441 |
| 18242 | C3bank, National Association | 850 S. Coast Hwy 101, Suite 1 | Encinitas | CA | 25249 | 754068 |
| 24577 | Association | 15606 Brookhurst St. | Westminster | CA | 57974 | 3394380 |
| 24936 | Canandaigua National Trust Company of Florida | 1586 Main Street | Sarasota | FL | 58999 | 3952904 |
| 23850 | Capital Bank, National Association | 2275 Research Blvd. | Rockville | MD | 35278 | 2808602 |
| 13688 | Capital One, National Association | 1680 Capital One Drive | McLean | VA | 4297 | 112837 |
| 17525 | Capitol National Bank | 200 Washington Square North | Lansing | MI | 24199 | 285544 |
| 25272 | Carthage Savings and Loan, National Association | 313 State St | Carthage | NY | 28942 | 900678 |
| 412 | Cayuga Lake National Bank | 3 Cayuga Street | Union Springs | NY | 6954 | 63201 |
| 23323 | Cedar Hill National Bank | 8100 Denmark Road | Charlotte | NC | 34478 | 2651899 |
| 7524 | Cendera Bank, National Association | 615 East Bells Boulevard | Bells | TX | 3098 | 89957 |
| 20448 | Center National Bank | 301 N. Ramsey Avenue | Litchfield | MN | 10976 | 1017957 |
| 4284 | Central National Bank | 802 N. Washington | Junction City | KS | 4702 | 234355 |
| 16626 | Central National Bank | 8320 U.S. Highway 84 West | Waco | TX | 22396 | 428060 |
| 24617 | CenTrust Bank, National Association | 385 Waukegan Road | Northbrook | IL | 58158 | 3377235 |
| 24310 | Cetera Trust Company, National Association | 400 Robert Street North | St. Paul | MN | 57405 | 3089752 |
| 25137 | CFBank, National Association | 4960 E. Dublin Granville Rd. Suite 400 | Columbus | OH | 28263 | 767974 |
| 24755 | Chain Bridge Bank, National Association | 1445-A Laughlin Avenue | Mclean | VA | 58595 | 3597211 |
| 9405 | Champlain National Bank | Main and William Streets, 7558 Court Street | Elizabethtown | NY | 7356 | 126012 |
| 23158 | Chester National Bank | 1112 State Street | Chester | IL | 30220 | 231279 |
| 25215 | Chilton Trust Company, National Association | 396 Royal Palm Way | Palm Beach | FL | 59255 | 4397164 |
| 23950 | Chino Commercial Bank, National Association | 14245 Pipeline Avenue | Chino | CA | 35366 | 2925620 |
| 24106 | CIBC National Trust Company | 3290 Northside Parkway, 7th Floor | Atlanta | GA | 91325 | 975751 |
| 1461 | Citibank, N.A. | 5800 S Corporate Place | Sioux Falls | SD | 7213 | 476810 |
| 18410 | Citicorp Trust Delaware, National Association | 20 Montchanin Road, Suite 180 | Greenville | DE | 25677 | 449038 |
| 24571 | Citizens Bank, National Association | One Citizens Plaza | Providence | RI | 57957 | 3303298 |
| 23834 | Citizens Bank, National Association | 4201 South Treadaway Boulevard | Abilene | TX | 12309 | 617051 |
| 25088 | Citizens Community Federal National Association | 219 Fairfax Street | Altoona | WI | 57265 | 962890 |
| 16076 | Citizens National Bank | 200 Forks of River Parkway | Sevierville | TN | 20954 | 717737 |
| 5484 | Citizens National Bank | 118 South Houston Street | Cameron | TX | 3127 | 59352 |
| 17456 | Citizens National Bank | 1320 East Loop 304 | Crockett | TX | 24085 | 700252 |
| 14273 | Citizens National Bank at Brownwood | 1 Carnegie | Brownwood | TX | 14779 | 233358 |
| 14435 | Citizens National Bank of Albion | 10 West Elm Street | Albion | IL | 15760 | 853747 |
| 13522 | Citizens National Bank of Cheboygan | 303 N. Main Street | Cheboygan | MI | 5018 | 773742 |
| 8515 | Citizens National Bank of Crosbyton | 202 W. Main | Crosbyton | TX | 3158 | 901451 |
| 13516 | Citizens National Bank of Texas | 200 N. Elm Street | Waxahachie | TX | 5574 | 552161 |
| 20184 | Citizens National Bank, National Association | 2711 East Texas Street | Bossier City | LA | 26381 | 594853 |
| 22968 | City First Bank, National Association | 1432 U Street, N.W. | Washington | DC | 34352 | 2697963 |
| 14695 | City National Bank | 555 South Flower Street | Los Angeles | CA | 17281 | 63069 |
| 17652 | City National Bank | 1465 West Second Avenue | Corsicana | TX | 24367 | 697950 |
| 15977 | City National Bank of Florida | 25 West Flagler Street | Miami | FL | 20234 | 814430 |
| 14807 | City National Bank of West Virginia | 3601 Mccorkle Avenue, S.E. | Charleston | WV | 17735 | 1011526 |
| 15649 | Clare Bank, National Association | 345 West Pine | Platteville | WI | 1022 | 988144 |
| 13731 | Classic Bank, National Association | 102 N. Houston | Cameron | TX | 3126 | 182951 |
| 3248 | Clear Fork Bank, National Association | 100 S. Main | Albany | TX | 3067 | 340751 |
| 14347 | CNB Bank & Trust, National Association | West Side Square | Carlinville | IL | 3775 | 613343 |

### National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 24861 | Coastal Carolina National Bank | 1012 38th Avenue North, Suite 100 | Myrtle Beach | SC | 58864 | 3821822 |
| 24626 | Column National Association | 1717 Mangrove Avenue, Suite 100 | Chico | CA | 58224 | 3435948 |
| 21527 | Comerica Bank & Trust, National Association | 101 North Main Street, Suite 200 | Ann Arbor | MI | 1596 | 772446 |
| 14371 | Commercial Bank of Texas, National Association | 215 E. Main Street | Nacogdoches | TX | 1209 | 885869 |
| 15257 | Commercial National Bank of Texarkana | 5515 Summerhill Road | Texarkana | TX | 19024 | 794149 |
| 16553 | Commonwealth National Bank | 2214 St. Stephens Road | Mobile | AL | 22229 | 578237 |
| 8531 | Community Bank, National Association | 45-49 Court Street | Canton | NY | 6989 | 202907 |
| 7518 | Community First Bank, National Association | 118 East Lima Street | Forest | OH | 6584 | 579319 |
| 24080 | Community First National Bank | 215 S. Seth Child | Manhattan | KS | 35585 | 2907019 |
| 18394 | Community National Bank | 210 Main Street | Seneca | KS | 25665 | 354552 |
| 18054 | Community National Bank | 500 West Illinois | Midland | TX | 24897 | 293053 |
| 1368 | Community National Bank | 4811 US Route 5 | Derby | VT | 6271 | 270504 |
| 21389 | Community National Bank & Trust | 14 North Lincoln | Chanute | KS | 27046 | 923752 |
| 14898 | Community National Bank & Trust of Texas | 321 North 15th Street | Corsicana | TX | 18185 | 738769 |
| 15389 | Community National Bank in Monmouth | 311 North Main Street | Monmouth | IL | 19230 | 775241 |
| 18233 | Community National Bank of Okarche | 653 North Main Highway 81 | Okarche | OK | 25161 | 371559 |
| 23148 | Computershare Trust Company, National Association | 150 Royall Street | Canton | MA | 34629 | 2600039 |
| 23664 | Connecticut Community Bank, National Association | 605 West Avenue | Norwalk | CT | 34876 | 2156909 |
| 15543 | Consumers National Bank | 614 East Lincoln Way | Minerva | OH | 19482 | 477321 |
| 24114 | Cornerstone National Bank & Trust Company | One West Northwest Highway | Palatine | IL | 57061 | 2929392 |
| 23771 | Cortrust Bank National Association | 100 E. Havens & Main | Mitchell | SD | 6063 | 611555 |
| 14062 | County National Bank | One South Howell Street | Hillsdale | MI | 14073 | 682143 |
| 22594 | Credit First National Association | 6275 Eastland Road | Brook Park | OH | 33855 | 2122097 |
| 20291 | Credit One Bank, National Association | 6801 South Cimarron Road | Las Vegas | NV | 25620 | 639567 |
| 23574 | Crystal Lake Bank & Trust Company, National Association | 70 North Williams Street | Crystal Lake | IL | 34681 | 2624400 |
| 10254 | Cumberland Valley National Bank & Trust Company | 100 South Main Street | London | KY | 2691 | 647218 |
| 24604 | Dakota Community Bank & Trust, National Association | 609 Main Street | Hebron | ND | 15728 | 815156 |
| 15980 | Dallas Capital Bank, National Association | 14185 Dallas Parkway, Suite 200 | Dallas | TX | 20727 | 3464352 |
| 25237 | Dayforce National Trust Bank | 3311 East Old Shakopee Road | Minneapolis | MN | 59337 | 5805817 |
| 23852 | Desjardins Bank, National Association | 1001 East Hallandale Beach Boulevard | Hallandale | FL | 33565 | 1940747 |
| 18608 | Deutsche Bank National Trust Company | 1999 Avenue of the Stars | Los Angeles | CA | 26732 | 670560 |
| 24452 | Deutsche Bank Trust Company, National Association | 1 Columbus Circle | New York | NY | 34056 | 2326883 |
| 12877 | DNB National Bank | 305 Fourth Street West | Clear Lake | SD | 3977 | 401559 |
| 24249 | Douglas National Bank | 211 East Ward Street | Douglas | GA | 57230 | 3049635 |
| 8114 | Dream First Bank, National Association | 11 North Main Street | Syracuse | KS | 4779 | 543459 |
| 23097 | DSRM National Bank | 5600 Wyoming Blvd, NE, Suite 275 | Albuquerque | NM | 34331 | 2502825 |
| 18431 | Eastbank, National Association | 183 Centre Street | New York | NY | 25749 | 98717 |
| 15748 | Eastern National Bank | 9700 South Dixie Highway | Miami | FL | 20026 | 171133 |
| 23329 | Edison National Bank | 13000 South Cleveland Avenue | Fort Myers | FL | 34489 | 2594419 |
| 24493 | EH National Bank | 9420 Wilshire Boulevard | Beverly Hills | CA | 57734 | 3320576 |
| 3855 | Elevate Bank, National Association | 101 West Main Street | Sedan | KS | 4770 | 195157 |
| 24679 | Embassy National Bank | 1817 North Brown Road | Lawrenceville | GA | 58413 | 3482045 |
| 25125 | Esquire Bank, National Association | 100 Jericho Quadrangle, Suite 100 | Jericho | NY | 58140 | 3447820 |
| 11583 | Evans Bank, National Association | 8599 Erie Rd | Angola | NY | 6947 | 292908 |
| 25290 | EverBank, National Association | 301 West Bay Street, 25th Floor | Jacksonville | FL | 34775 | 2735146 |
| 24907 | Evercore Trust Company, National Association | 300 Delaware Avenue, Suite 1225 | Wilmington | DE | 58927 | 3939240 |
| 17000 | Evergreen National Bank | 28145 Colorado Highway 74 | Evergreen | CO | 23404 | 427858 |
| 13778 | Extraco Banks, National Association | 18 South Main Street | Temple | TX | 5551 | 537560 |
| 24356 | F&M Community Bank, National Association | 100 St. Anthony Street North | Preston | MN | 10967 | 171759 |
| 24373 | Falcon National Bank | 183 Cedar Drive | Foley | MN | 57603 | 3184228 |
| 6375 | Farmers National Bank | 114 West 3rd Street | Prophetstown | IL | 3732 | 933041 |
| 11933 | Farmers National Bank | 759 State Street | Phillipsburg | KS | 4611 | 137559 |
| 14466 | Farmers National Bank of Griggsville | 112 West Quincy Street | Griggsville | IL | 15928 | 166849 |
| 5629 | FCN Bank, National Association | 501 Main Street | Brookville | IN | 4319 | 321947 |
| 25188 | Fidelity Bank, National Association | 100 East English Street | Wichita | KS | 30895 | 762474 |
| 25190 | Fifth Third Bank, National Association | 38 Fountain Square Plaza | Cincinnati | OH | 6672 | 723112 |
| 24719 | Finemark National Bank & Trust | 8695 College Parkway | Fort Myers | FL | 58486 | 3547131 |
| 6769 | First & Farmers National Bank, Inc. | 2020 South US 27 | Somerset | KY | 2738 | 721949 |
| 14564 | First Bankers Trust Company, National Association | 1201 Broadway | Quincy | IL | 16501 | 344647 |
| 24169 | First Century Bank, National Association | 1731 N. Elm Street | Commerce | GA | 57123 | 2997748 |

## National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 5263 | First Citizens National Bank | 200-206 West Court Street | Dyersburg | TN | 4972 | 133850 |
| 6671 | First Colorado National Bank | 133 Grand Ave | Paonia | CO | 3047 | 587752 |
| 17862 | First Commercial Bank, National Association | 1336 East Court Street | Seguin | TX | 24603 | 400365 |
| 24120 | First Community Trust, National Association | 3385 Hillcrest Road, Suite 100 | Dubuque | IA | 57179 | 2973041 |
| 2068 | First Dakota National Bank | 225 Cedar Street | Yankton | SD | 4028 | 441256 |
| 22351 | First Farmers & Merchants National Bank | 114 South Park | Fairmont | MN | 33131 | 1470150 |
| 13544 | First Farmers & Merchants National Bank | 303 E. Main | Luverne | MN | 5186 | 917854 |
| 25025 | First Federal Community Bank, National Association | 141 West Ohio Avenue | Dover | OH | 29787 | 540775 |
| 47 | First Financial Bank, National Association | One First Financial Plaza | Terre Haute | IN | 4382 | 693345 |
| 4166 | First Financial Bank, National Association | 400 Pine Street | Abilene | TX | 3066 | 470050 |
| 24421 | First Financial Trust & Asset Management Company, NA | 400 Pine Street, Suite 300 | Abilene | TX | 57757 | 3213735 |
| 21882 | First Financial Trust, National Association | 351 Main Street | Wakefield | MA | 27479 | 1369870 |
| 10118 | First Hope Bank, A National Banking Association | Union and High Streets | Hope | NJ | 6354 | 434203 |
| 10045 | First Mid Bank & Trust, National Association | 1515 Charleston Avenue | Mattoon | IL | 3705 | 762447 |
| 16579 | First National Bank | 341 Military Street South | Hamilton | AL | 22271 | 330239 |
| 10004 | First National Bank | 200 West Court Street | Paragould | AR | 3887 | 42448 |
| 10465 | First National Bank | 302 South Main Street | Cloverdale | IN | 4324 | 60648 |
| 446 | First National Bank | 223 Main Street | Damariscotta | ME | 4256 | 439404 |
| 6813 | First National Bank | 31 Central Street East | Bagley | MN | 5087 | 392255 |
| 7647 | First National Bank | 101 West Lake Street | Chisholm | MN | 5113 | 371755 |
| 14786 | First National Bank | 414 10th Street | Alamogordo | NM | 17643 | 823450 |
| 9888 | First National Bank | 400 E 1st | Heavener | OK | 4111 | 195456 |
| 14252 | First National Bank | 307 Hustan Avenue | Fort Pierre | SD | 14712 | 355858 |
| 21793 | First National Bank | 141 East Main Street | Oldham | SD | 25894 | 944355 |
| 23182 | First National Bank | 118 North Garfield | Rotan | TX | 34455 | 2490285 |
| 18609 | First National Bank | 729 W. 7th Avenue | Spearman | TX | 26219 | 266066 |
| 20078 | First National Bank | 3801 Fairway Boulevard | Wichita Falls | TX | 26543 | 375566 |
| 9295 | First National Bank | 622 Broad Street | Altavista | VA | 6811 | 979629 |
| 3806 | First National Bank & Trust | 233 South Stephenson Avenue | Iron Mountain | MI | 5062 | 251558 |
| 9952 | First National Bank & Trust | 2714 West Third Street | Elk City | OK | 4086 | 114457 |
| 1926 | First National Bank & Trust Company | 2 Kelli Court | Clinton | IL | 3639 | 32234 |
| 5052 | First National Bank & Trust Company of McAlester | 235 East Choctaw | McAlester | OK | 4145 | 830355 |
| 12072 | First National Bank Alaska | 101 West 36th Avenue | Anchorage | AK | 16130 | 114260 |
| 10697 | First National Bank and Trust | 111 South Main Street | Atmore | AL | 2779 | 670430 |
| 3601 | First National Bank and Trust | 225 State Street | Phillipsburg | KS | 4756 | 183958 |
| 8029 | First National Bank and Trust Co. of Bottineau | 424 Main Street | Bottineau | ND | 3902 | 974558 |
| 13677 | First National Bank and Trust Company of Ardmore | 405 West Main Street | Ardmore | OK | 4037 | 984258 |
| 2477 | First National Bank and Trust Company of Weatherford | 220 Palo Pinto Street | Weatherford | TX | 5575 | 614368 |
| 14184 | First National Bank at Darlington | 245 Main Street | Darlington | WI | 14468 | 57040 |
| 6030 | First National Bank Colorado | 535 Bent Avenue | Las Animas | CO | 3034 | 513256 |
| 13329 | First National Bank in Cimarron | Canal and Main | Cimarron | KS | 4638 | 677354 |
| 14168 | First National Bank in DeRidder | 1003 North Pine Street | DeRidder | LA | 14427 | 480433 |
| 11916 | First National Bank in Frankfort | 124 North Kansas | Frankfort | KS | 4668 | 923350 |
| 14370 | First National Bank in Fredonia | 730 Madison | Fredonia | KS | 13798 | 844455 |
| 14294 | First National Bank in New Bremen | 435 South Washington Street | New Bremen | OH | 14836 | 204826 |
| 10913 | First National Bank in Okeene | 124 North Main Street | Okeene | OK | 4161 | 310950 |
| 14217 | First National Bank in Olney | 101 East Main Street | Olney | IL | 14567 | 412845 |
| 13557 | First National Bank in Ord | 1411 "m" Street | Ord | NE | 5460 | 850054 |
| 10637 | First National Bank in Philip | 103 East Oak Street | Philip | SD | 3999 | 538754 |
| 13975 | First National Bank in Pinckneyville | 210 South Main Street | Pinckneyville | IL | 13813 | 340443 |
| 14821 | First National Bank in Port Lavaca | 1101 Highway 35 Bypass South | Port Lavaca | TX | 17811 | 855264 |
| 14769 | First National Bank in Taylorville | 322 West Main Cross | Taylorville | IL | 17572 | 177443 |
| 14150 | First National Bank in Tigerton | Cedar and Ash Streets | Tigerton | WI | 14400 | 74449 |
| 1794 | First National Bank Minnesota | 226 West Nassau Street | St. Peter | MN | 5247 | 197759 |
| 8476 | First National Bank North | P.O. Box 520 | Walker | MN | 5269 | 805755 |
| 18214 | First National Bank Northwest Florida | 101 East 23rd Street | Panama City | FL | 25122 | 216230 |
| 14905 | First National Bank of Alvin | 1600 East Hwy. 6 | Alvin | TX | 18282 | 354057 |
| 14740 | First National Bank of America | 241 East Saginaw, Suite 101 | East Lansing | MI | 17438 | 413141 |
| 7337 | First National Bank of Anderson | 1071 Highway 90 South | Anderson | TX | 3075 | 362155 |
| 3640 | First National Bank of Beardstown | 300 Washington Street | Beardstown | IL | 3607 | 368933 |

## National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 13675 | First National Bank of Bosque County | P.O. Box 278 | Valley Mills | TX | 5564 | 198961 |
| 14993 | First National Bank of Brookfield | 9136 Washington Avenue | Brookfield | IL | 18564 | 465038 |
| 17001 | First National Bank of Burleson | 899 Northeast Alsbury | Burleson | TX | 23430 | 240954 |
| 5850 | First National Bank of Central Texas | 1835 North Valley Mills Drive | Waco | TX | 3325 | 369659 |
| 15284 | First National Bank of Clarksdale | 402 East Second Street | Clarksdale | MS | 19070 | 11640 |
| 22327 | First National Bank of Coffee County | 420 South Madison Avenue | Douglas | GA | 33506 | 1892154 |
| 24458 | First National Bank of Decatur County | 819 East Shotwell Street | Bainbridge | GA | 57694 | 3232370 |
| 20026 | First National Bank of Dublin | 825 North Patrick | Dublin | TX | 26228 | 648550 |
| 5288 | First National Bank of East Texas | 206 U. S. Highway 271 North | Gilmer | TX | 3218 | 445955 |
| 13637 | First National Bank of Eastern Arkansas | 101 North Washington Street | Forrest City | AR | 3863 | 251745 |
| 14842 | First National Bank of Fort Stockton | 1000 W. Dickinson Blvd. | Fort Stockton | TX | 17913 | 397456 |
| 4410 | First National Bank of Giddings | 108 E. Austin | Giddings | TX | 3217 | 324153 |
| 15158 | First National Bank of Gillette | 319 South Gillette Avenue | Gillette | WY | 18880 | 890050 |
| 15572 | First National Bank of Griffin | 318 South Hill Street | Griffin | GA | 169 | 563233 |
| 23692 | First National Bank of Hereford | 301 West Third Street | Hereford | TX | 34918 | 2759629 |
| 4208 | First National Bank of Huntsville | 1300 11th Street | Huntsville | TX | 3269 | 583352 |
| 6101 | First National Bank of Kansas | 600 N. 4th Street | Burlington | KS | 4794 | 614256 |
| 2592 | First National Bank of Kentucky | 604 Highland Avenue | Carrollton | KY | 2735 | 907444 |
| 15171 | First National Bank of Lake Jackson | 122 West Way | Lake Jackson | TX | 18895 | 560353 |
| 12523 | First National Bank of Louisiana | 128 North Parkerson Avenue | Crowley | LA | 4288 | 575834 |
| 4076 | First National Bank of McGregor | 401 South Main | Mc Gregor | TX | 3330 | 895055 |
| 24637 | First National Bank of Michigan | 348 West Michigan Avenue | Kalamazoo | MI | 58259 | 3404467 |
| 14436 | First National Bank of Nokomis | 122 West State Street | Nokomis | IL | 15763 | 330248 |
| 11397 | First National Bank of Oklahoma | 10900 Hefner Pointe Drive | Oklahoma City | OK | 4211 | 525053 |
| 209 | First National Bank of Omaha | 1601 Capitol Avenue | Omaha | NE | 5452 | 527954 |
| 13478 | First National Bank of Pana | 306 South Locust Street | Pana | IL | 3720 | 860147 |
| 20976 | First National Bank of Pasco | 13315 US Highway 301 South | Dade City | FL | 26829 | 82033 |
| 249 | First National Bank of Pennsylvania | 166 Main Street | Greenville | PA | 7888 | 379920 |
| 14619 | First National Bank of Pulaski | 206 South First Street | Pulaski | TN | 15572 | 972732 |
| 7087 | First National Bank of River Falls | 104 East Locust Street | River Falls | WI | 5364 | 956255 |
| 14680 | First National Bank of Scotia | 201 Mohawk Avenue | Scotia | NY | 11501 | 472616 |
| 10680 | First National Bank of South Carolina | 801 Gilway Street | Holly Hill | SC | 2107 | 347022 |
| 18063 | First National Bank of South Padre Island | 709 Padre Blvd. | South Padre Islan | TX | 24902 | 346566 |
| 14437 | First National Bank of Steeleville | 400 West Broadway | Steeleville | IL | 1049 | 129349 |
| 15550 | First National Bank of Tennessee | 214 East Main Street | Livingston | TN | 19502 | 283737 |
| 14882 | First National Bank of Wauchula | 406 N 6th Avenue | Wauchula | FL | 18136 | 89135 |
| 5674 | First National Bank of Winnsboro | 315 North Main | Winnsboro | TX | 5590 | 501767 |
| 5750 | First National Bank Texas | 901 East Central Texas Expressway | Killeen | TX | 3285 | 613950 |
| 16473 | First National Bank USA | 13386 Highway 90 | Boutte | LA | 22046 | 714839 |
| 10408 | First National Bank, Ames, Iowa | 405 Fifth Street | Ames | IA | 1545 | 820048 |
| 14833 | First National Bank, Cortez | 2258 East Main Street | Cortez | CO | 17872 | 968155 |
| 18278 | First National Bankers Bank | 7813 Office Park Boulevard | Baton Rouge | LA | 25247 | 734538 |
| 16487 | First National Community Bank | 701 North 3rd Avenue | Chatsworth | GA | 22092 | 450632 |
| 11412 | First National Community Bank | 109 East Second Street | New Richmond | WI | 5357 | 23755 |
| 24475 | First National Trust Company | One F.N.B. Boulevard | Hermitage | PA | 57793 | 3229875 |
| 13682 | First Neighbor Bank, National Association | 201 North Meridian | Toledo | IL | 3747 | 413646 |
| 8752 | First Pioneer National Bank | 145 West Fourth Street | Wray | CO | 3063 | 357553 |
| 23393 | First Robinson Savings Bank, National Association | 501 East Main Street | Robinson | IL | 28105 | 660271 |
| 1493 | First Southern National Bank | 27 Public Square | Lancaster | KY | 2700 | 702612 |
| 7045 | First Texas National Bank | 124 South Main Street | Floydada | TX | 3197 | 393252 |
| 14005 | First Texoma National Bank | 220 West Main Street | Durant | OK | 13905 | 388155 |
| 9480 | First United National Bank | Routes 157 and 208 | Fryburg | PA | 7886 | 127224 |
| 13934 | First-Lockhart National Bank | 111 South Main Street | Lockhart | TX | 13599 | 631150 |
| 25282 | Flagstar Bank, National Association | 102 Duffy Avenue | Hicksville | NY | 32541 | 694904 |
| 20214 | Florida Capital Bank, National Association | 10151 Deerwood Park Boulevard, Building 100, Suite 200-A | Jacksonville | FL | 26323 | 188430 |
| 24349 | Forcht Bank, National Association | 2404 Sir Barton Way | Lexington | KY | 57415 | 3141726 |
| 14566 | Forest Park National Bank and Trust Company | 7348 West Madison Street | Forest Park | IL | 9392 | 926632 |
| 14546 | FSNB, National Association | 1420 Southwest Lee Boulevard | Lawton | OK | 16416 | 125154 |
| 24891 | Fulton Bank, National Association | One Penn Square P.O.Box 4887 | Lancaster | PA | 7551 | 474919 |
| 5741 | Gilmer National Bank | 713 US Highway 271 North | Gilmer | TX | 3219 | 323651 |

*Prepared by Supervision Support*

## National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 7699 | Glens Falls National Bank and Trust Company | 250 Glen Street | Glens Falls | NY | 7074 | 866000 |
| 13347 | GNBank, National Association | 100 E. Forest, P. O. Box 67 | Girard | KS | 4673 | 928056 |
| 18558 | Golden Bank, National Association | 9315 Bellaire Boulevard | Houston | TX | 26223 | 536059 |
| 24671 | Goldwater Bank, National Association | 2525 E Camelback Road, Suite 1100 | Phoenix | AZ | 58405 | 3592047 |
| 6684 | Grand Ridge National Bank | 105 West Main Street | Grand Ridge | IL | 3674 | 875132 |
| 25152 | Grasshopper Bank, National Association | 261 Fifth Avenue | New York | NY | 59113 | 5210989 |
| 23049 | Great Plains National Bank | 2017 West Third | Elk City | OK | 34207 | 2482824 |
| 13944 | Greenville National Bank | 446 South Broadway | Greenville | OH | 13703 | 295011 |
| 25053 | Guaranty Bank & Trust, National Association | 100 W. Arkansas | Mt. Pleasant | TX | 1208 | 112163 |
| 20622 | Hana Bank USA, National Association | 201 Main Street | Fort Lee | NJ | 26790 | 609609 |
| 14149 | Haskell National Bank | 601 North First Street | Haskell | TX | 14399 | 170257 |
| 14911 | Hawaii National Bank | 45 North King Street | Honolulu | HI | 18296 | 915065 |
| 23773 | Heartland National Bank | 320 U.S. Highway 27 North | Sebring | FL | 35052 | 2800491 |
| 15401 | Heritage Bank, National Association | 120 South Street W. | Spicer | MN | 19254 | 901358 |
| 15698 | Hiawatha National Bank | N1555 770th Street & Highway 35 | Hager City | WI | 13058 | 505550 |
| 25255 | Hightower Trust Company, National Association | 4400 Post Oak Parkway, Suite 2600 | Houston | TX | 59321 | 2597232 |
| 15359 | Hilltop National Bank | 300 Country Club Road | Casper | WY | 19184 | 1454 |
| 25212 | Hinsdale Bank & Trust Company, National Association | 25 East First Street | Hinsdale | IL | 33849 | 2119773 |
| 6635 | HNB National Bank | 100 North Main Street | Hannibal | MO | 4540 | 908553 |
| 25106 | Home Bank, National Association | 503 Kaliste Saloom Road | Lafayette | LA | 28094 | 929978 |
| 9815 | Home National Bank | 502 Elm Street | Racine | OH | 6680 | 79127 |
| 18763 | Home State Bank / National Association | 40 Grant Street | Crystal Lake | IL | 12815 | 696430 |
| 15593 | Hometown Bank, National Association | 1801 45th Street | Galveston | TX | 19803 | 393953 |
| 2503 | Hometown National Bank | 260 Bucklin Street | LA Salle | IL | 3691 | 770639 |
| 24522 | HSBC Bank USA, National Association | 1800 Tysons Boulevard | Tysons | VA | 57890 | 413208 |
| 24601 | HSBC Trust Company (Delaware), National Association | 300 Delaware Avenue, Suite 1401 | Wilmington | DE | 58188 | 3357620 |
| 11443 | INB, National Association | 322 East Capitol Avenue | Springfield | IL | 3664 | 925037 |
| 12190 | Incommons Bank, National Association | 301 East Commerce | Mexia | TX | 3342 | 414858 |
| 24440 | Association | 1185 Avenue of the Americas | New York | NY | 24387 | 1015560 |
| 25275 | Inspire Trust Company, National Association | 241 Ridge Street | Reno | NV | 59349 | 5805488 |
| 18283 | Intercredit Bank, National Association | 396 Alhambra Circle | Coral Gables | FL | 25258 | 44433 |
| 2782 | Intrust Bank, National Association | 105 N. Main | Wichita | KS | 4799 | 557858 |
| 25185 | Investar Bank, National Association | 7244 Perkins Road | Baton Rouge | LA | 58316 | 3449066 |
| 15292 | Inwood National Bank | 7621 Inwood Road | Dallas | TX | 19080 | 913753 |
| 8 | JPMorgan Chase Bank, National Association | 1111 Polaris Parkway | Columbus | OH | 628 | 852218 |
| 14330 | Junction National Bank | 701 Main Street | Junction | TX | 15078 | 741152 |
| 6544 | Keen Bank, National Association | 101 North State Street | Waseca | MN | 5270 | 837354 |
| 25051 | Key National Trust Company of Delaware | 1105 North Market Street | Wilmington | DE | 59069 | 4368351 |
| 14761 | KeyBank National Association | 127 Public Square | Cleveland | OH | 17534 | 280110 |
| 9536 | Kingston National Bank | 2 North Main Street | Kingston | OH | 6616 | 966722 |
| 12968 | Kleberg Bank, National Association | 100 East Kleberg Avenue | Kingsville | TX | 3286 | 556459 |
| 15168 | Kress National Bank | Highway 87 & 4th Street | Kress | TX | 18182 | 995955 |
| 25149 | Lake Forest Bank & Trust Company, National Association | 727 North Bank Lane | Lake Forest | IL | 27589 | 1917301 |
| 17106 | Lamar National Bank | 200 S. Collegiate Drive | Paris | TX | 23597 | 2161 |
| 23038 | Landmark National Bank | 701 Poyntz Avenue | Manhattan | KS | 5826 | 481177 |
| 2360 | LCNB National Bank | 2 North Broadway | Lebanon | OH | 6623 | 785923 |
| 24431 | Leader Bank, National Association | 141 Massachusetts Avenue | Arlington | MA | 57134 | 3109146 |
| 22210 | Ledyard National Bank | 320 Main Street | Norwich | VT | 33418 | 1863097 |
| 24573 | Legacy Bank, National Association | 4055 West Sunset | Springdale | AR | 57953 | 3306280 |
| 24338 | Legacy Trust Company, National Association | 1415  Louisiana, Suite 1900 | Houston | TX | 57380 | 2597223 |
| 4265 | Legend Bank, National Association | 101 Tarrant Street | Bowie | TX | 3108 | 100357 |
| 25228 | LendingClub Bank, National Association | 2701 N Thanksgiving Way | Lehi | UT | 32551 | 264772 |
| 23925 | Liberty Bank, National Association | 2 Park Plaza, Suite 550 | Irvine | CA | 35331 | 2907439 |
| 24378 | Liberty National Bank | 4425 Singing Hills Boulevard | Sioux City | IA | 57505 | 3110822 |
| 23516 | Liberty National Bank | 629 S. W. C Avenue | Lawton | OK | 11522 | 68756 |
| 25197 | Libertyville Bank & Trust Company, National Association | 507 North Milwaukee Avenue | Libertyville | IL | 34073 | 2339795 |
| 17606 | Llano National Bank | 1001 Ford Street | Llano | TX | 24305 | 946555 |
| 23730 | Lone Star Capital Bank, National Association | 150 N Loop 1604 E | San Antonio | TX | 35015 | 2788656 |
| 17611 | LONE STAR NATIONAL BANK | 206 West Ferguson | Pharr | TX | 24347 | 842460 |
| 14328 | Louisiana National Bank | 2001 North Trenton Street | Ruston | LA | 15059 | 109659 |

## National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 14492 | Mason City National Bank | 104 West Pine Street | Mason City | IL | 16198 | 108746 |
| 17269 | Mccurtain County National Bank | 20 North Park Drive | Broken Bow | OK | 23798 | 423159 |
| 14488 | Merchants Bank, National Association | 102 East Third Street | Winona | MN | 8866 | 779351 |
| 13838 | Midamerica National Bank | 100 West Elm Street | Canton | IL | 3612 | 510938 |
| 25227 | Mid-Central National Bank | 520 Jefferson St S | Wadena | MN | 30943 | 773171 |
| 10354 | Midstates Bank, National Association | 1851 Madison Avenue, Suite 732 | Council Bluffs | IA | 4465 | 728948 |
| 9786 | Midwest National Bank | 302 N. Main Street | Sandoval | IL | 3834 | 122546 |
| 13835 | Millbury National Bank | 18 Main Street | Millbury | MA | 2616 | 881900 |
| 6417 | Minnesota National Bank | 131 12th Street South | Sauk Centre | MN | 5249 | 799751 |
| 13972 | Minnstar Bank National Association | 202 North Main | Lake Crystal | MN | 13809 | 89854 |
| 17176 | Mission National Bank | 3060 16th Street | San Francisco | CA | 23749 | 519360 |
| 16629 | Modern Bank, National Association | 410 Park Avenue, Suite 830 | New York | NY | 22398 | 2398701 |
| 8899 | Moody National Bank | 2302 Post Office Street | Galveston | TX | 3210 | 253356 |
| 24908 | Morgan Stanley Bank, N.A. | 201 South Main Street, 5th Floor | Salt Lake City | UT | 32992 | 1456501 |
| 24981 | Morgan Stanley Private Bank, National Association | 2000 Westchester Avenue | Purchase | NY | 34221 | 2489805 |
| 9610 | Mountain Valley Bank, National Association | 317 Davis Avenue | Elkins | WV | 6786 | 1011432 |
| 23523 | Natbank, National Association | 4031 Oakwood Boulevard | Hollywood | FL | 33959 | 2233875 |
| 25145 | National Advisors Trust Company | 800 East 101st Terrace, Suite 300 | Kansas City | MO | 57160 | 2809373 |
| 3906 | National Bank & Trust | 145 West Colorado Street | La Grange | TX | 3289 | 792659 |
| 14109 | National Bank of Commerce | 1127 Tower Avenue | Superior | WI | 14266 | 775456 |
| 14617 | National Bank of St. Anne | 158 W. Station Street | St. Anne | IL | 16752 | 760340 |
| 25093 | National Cooperative Bank, N.A. | 139 S High St | Hillsboro | OH | 32612 | 99376 |
| 13879 | National Exchange Bank and Trust | 130 South Main | Fond Du Lac | WI | 10044 | 722544 |
| 21158 | Native American Bank, National Association | 201 North Broadway | Denver | CO | 27026 | 664653 |
| 1354 | NBT Bank, National Association | 52 South Broad Street | Norwich | NY | 7230 | 702117 |
| 22770 | Neighborhood National Bank | 2987 Jamacha Road, Suite 2B | EL CAJON | CA | 34548 | 2333140 |
| 15161 | Neighborhood National Bank | 45 North Union Street | Mora | MN | 18885 | 705556 |
| 24961 | Neuberger Berman Trust Company National Association | 1290 Avenue of the Americas, 23rd floor | New York | NY | 59046 | 4149037 |
| 24966 | Association | 919 N. Market Street, Suite 506 | Wilmington | DE | 59047 | 4146830 |
| 23421 | New Covenant Trust Company, National Association | 200 East 12th Street | Jeffersonville | IN | 34732 | 2641827 |
| 24858 | New Horizon Bank, National Association | 1870 Stoneridge Commerce Drive | Powhatan | VA | 58857 | 3816154 |
| 16840 | New Omni Bank, National Association | 1235 South Garfield Avenue | Alhambra | CA | 23086 | 300063 |
| 14240 | Newfield National Bank | 18-24 West Boulevard | Newfield | NJ | 14646 | 632410 |
| 6112 | Newfirst National Bank | 202 East Jackson | El Campo | TX | 3183 | 938859 |
| 15070 | Newtek Bank, National Association | 1111 Brickell Avenue, Suite 135 | Miami | FL | 18734 | 502111 |
| 5073 | NexTier Bank, National Association | 222 Market Street | Kittanning | PA | 7900 | 18827 |
| 24107 | Nicolet National Bank | 111 North Washington Street | Green Bay | WI | 57038 | 2941068 |
| 23547 | North Georgia National Bank | 350 West Belmont Drive | Calhoun | GA | 34662 | 2769954 |
| 25199 | Northbrook Bank & Trust Company, National Association | 1100 Waukegan Road | Northbrook | IL | 57082 | 2938198 |
| 6863 | Northern Interstate Bank, National Association | 501 W. US 2 | Norway | MI | 13784 | 289056 |
| 24372 | Northwestern Bank, National Association | 4 North Main Street | Dilworth | MN | 9746 | 207555 |
| 24849 | Oak View National Bank | 128 Broadview Avenue | Warrenton | VA | 58827 | 3816190 |
| 25150 | OceanFirst Bank, National Association | 975 Hooper Avenue | Toms River | NJ | 28359 | 85472 |
| 24730 | Old Dominion National Bank | 4916 Plank Road, Suite 216 | North Garden | VA | 58504 | 3610718 |
| 8846 | Old National Bank | 1 Main Street | Evansville | IN | 3832 | 208244 |
| 24646 | Old Plank Trail Community Bank, National Association | 20012 Wolf Road | Mokena | IL | 58314 | 3404207 |
| 23702 | Old Point Trust & Financial Services, National Association | 11780 Jefferson Avenue, Suite D | Newport News | VA | 35248 | 2797210 |
| 4596 | Old Second National Bank | 37-39 South River Street | Aurora | IL | 3603 | 936136 |
| 20010 | Pacific National Bank | 1390 Brickell Avenue | Miami | FL | 26299 | 577137 |
| 25291 | Park Bank, National Association | 1200 S. Main Street | Holmen | WI | 13054 | 518354 |
| 25195 | Pathward, National Association | 5501 South Broadband Lane | Sioux Falls | SD | 30776 | 435077 |
| 22545 | Patriot Bank, National Association | 999 Bedford Street | Stamford | CT | 33928 | 2236821 |
| 14418 | Peoples National Bank of Kewanee | 207 North Tremont Street | Kewanee | IL | 926 | 823133 |
| 9408 | Peoples National Bank, N.A. | 108 South Washington | Mcleansboro | IL | 3809 | 375043 |
| 20493 | Pike National Bank | 350 Rawls Drive | Mccomb | MS | 26379 | 880332 |
| 15058 | Pikes Peak National Bank | 2401 West Colorado Avenue | Colorado Springs | CO | 17782 | 643037 |
| 25324 | Pioneer Bank, National Association | 652 Albany Shaker Road | Albany | NY | 20741 | 237619 |
| 21060 | Pioneer Trust Bank, National Association | 109 Commercial Street, NE | Salem | OR | 19827 | 852973 |
| 25258 | Plante Moran Trust, National Association | 3000 Town Center | Southfield | MI | 57418 | 5591633 |
| 1316 | PNC Bank, National Association | 222 Delaware Avenue | Wilmington | DE | 6384 | 817824 |

## National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 9924 | Powell Valley National Bank | 33785 Main Street | Jonesville | VA | 6863 | 31826 |
| 25308 | Premier Bank National Association | 16802 Burke Street | Omaha | NE | 12493 | 860259 |
| 17735 | Progressive National Bank | 300 Washington Street | Mansfield | LA | 24443 | 675855 |
| 6207 | Queensborough National Bank & Trust Company | 113 East Broad Street | Louisville | GA | 2138 | 960935 |
| 24771 | Raymond James Trust, National Association | 880 Carillon Parkway | St. Petersburg | FL | 33879 | 2163477 |
| 23416 | RBC Bank (Georgia), National Association | 3550 Lenox Road NE | Atlanta | GA | 26342 | 3783948 |
| 5815 | Resource Bank, National Association | 555 Bethany Road | Dekalb | IL | 3701 | 235530 |
| 24920 | Rockefeller Trust Company, National Association | 45 Rockefeller Plaza, Fifth Floor | New York | NY | 26622 | 62110 |
| 25216 | RockPointBank, National Association | 401 Chestnut Street, Suite 101 | Chattanooga | TN | 59206 | 5574430 |
| 20948 | Safra National Bank of New York | 546 Fifth Avenue | New York | NY | 26876 | 918918 |
| 25022 | Santander Bank, National Association | 824 N. Market Street, Suite 100 | Wilmington | DE | 29950 | 722777 |
| 21530 | Saratoga National Bank and Trust Company | 171 South Broadway | Saratoga Springs | NY | 27290 | 1211371 |
| 12810 | Savannah Bank National Association | 1565 Main Street, P.O. Box 278 | Savannah | NY | 14619 | 647414 |
| 24150 | Schaumborough Bank & Trust Company, National Association | 1180 East Higgins Road | Schaumburg | IL | 57103 | 2970657 |
| 14838 | Seacoast National Bank | 815 Colorado Avenue | Stuart | FL | 131 | 34537 |
| 14578 | Security First National Bank of Hugo | 100 S. Broadway | Hugo | OK | 432 | 42257 |
| 13650 | Security National Bank | 1 West Broadway | Witt | IL | 3845 | 151546 |
| 15379 | Security National Bank of Omaha | 1120 S. 101st Street | Omaha | NE | 19213 | 844053 |
| 23226 | Security National Bank of South Dakota | 325 Dakota Dunes Blvd | Dakota Dunes | SD | 34394 | 2529176 |
| 24010 | Security National Trust Co. | 1300 Chapline Street | Wheeling | WV | 57081 | 2912750 |
| 12529 | Shamrock Bank, National Association | 101 N. Main | Coalgate | OK | 4236 | 300353 |
| 25270 | Shore United Bank, National Association | 18 East Dover Street | Easton | MD | 4832 | 933023 |
| 24264 | Signature Bank, National Association | 4607 West Sylvania Avenue | Toledo | OH | 57269 | 3076604 |
| 10834 | Skyline National Bank | 113 West Main Street | Independence | VA | 6861 | 90328 |
| 9987 | SNB Bank, National Association | 503 South Main | Shattuck | OK | 4196 | 394156 |
| 20862 | SoFi Bank, National Association | 2750 East Cottonwood Parkway | Cottonwood Heigl | UT | 26881 | 962966 |
| 24737 | Solera National Bank | 319 S. Sheridan Blvd. | Lakewood | CO | 58534 | 3397233 |
| 15651 | Southeast First National Bank | 10144 Commerce Street | Summerville | GA | 19819 | 563934 |
| 22311 | SouthState Bank, National Association | 1101 First Street South | Winter Haven | FL | 33555 | 1929247 |
| 14012 | Southtrust Bank, National Association | 601 Guadalupe | George West | TX | 13919 | 521158 |
| 12346 | Southwest National Bank | 400 East Douglas | Wichita | KS | 4801 | 499855 |
| 23081 | Southwestern National Bank | 6901 Corporate Drive | Houston | TX | 34319 | 2625724 |
| 25211 | St. Charles Bank & Trust Company, National Association | 411 West Main Street | Saint Charles | IL | 27052 | 428547 |
| 15198 | St. Martin National Bank | 136 Maine Street | St. Martin | MN | 18937 | 856159 |
| 25200 | State Bank of the Lakes, National Association | 440 Lake Street | Antioch | IL | 5744 | 595430 |
| 18045 | State Street Bank and Trust Company National Association | 1290 Avenue of the Americas | New York | NY | 24938 | 93619 |
| 18607 | State Street Bank and Trust Company of California, NA | 42 Discovery | Irvine | CA | 26474 | 812164 |
| 23457 | Stearns Bank Holdingford National Association | Main Street | Holdingford | MN | 10160 | 1011656 |
| 15576 | Stearns Bank National Association | 4191 Second Street South | St. Cloud | MN | 10988 | 141556 |
| 23458 | Stearns Bank Upsala National Association | Main Street | Upsala | MN | 9336 | 208459 |
| 24955 | Stifel Trust Company Delaware, National Association | 220 | Greenville | DE | 59043 | 4125778 |
| 24627 | Stifel Trust Company, National Association | 501 N. Broadway | St Louis | MO | 33785 | 2713920 |
| 14369 | Stillman Banccorp National Association | 101 East Main Street | Stillman Valley | IL | 9263 | 407645 |
| 14302 | Stockmens National Bank in Cotulla | 206 N. Main Street | Cotulla | TX | 14864 | 818652 |
| 12044 | Stride Bank, National Association | 324 West Broadway | Enid | OK | 4091 | 278555 |
| 18154 | Summit National Bank | 133 Main Street | Hulett | WY | 25054 | 78559 |
| 4742 | Sunflower Bank, National Association | 8117 Preston Road | Dallas | TX | 4767 | 474759 |
| 14991 | Sunrise Banks, National Association | 5105 S. Crossing Place | Sioux Falls | SD | 18561 | 860053 |
| 9087 | Superior National Bank | 235 Quincy Street | Hancock | MI | 5058 | 245557 |
| 24350 | Synovus Trust Company, National Association | 1148 Broadway | Columbus | GA | 33962 | 2262718 |
| 24467 | T Bank, National Association | 16200 Dallas Parkway, Suite 190 | Dallas | TX | 57703 | 3284445 |
| 23363 | TCM Bank, National Association | 3501 E. Frontage Road | Tampa | FL | 34535 | 2687487 |
| 22611 | TD Bank USA, National Association | 2035 Limestone Road | Wilmington | DE | 33947 | 2121196 |
| 24096 | TD Bank, National Association | 2035 Limestone Road | Wilmington | DE | 18409 | 497404 |
| 20157 | Terrabank National Association | 3191 Coral Way | Miami | FL | 26442 | 238737 |
| 10476 | Texana Bank, National Association | 124 East Rush | Linden | TX | 3302 | 809650 |
| 24693 | Texas Advantage Community Bank, National Association | 1701 Fairway Plaza, Suite 18 | Alvin | TX | 58450 | 3485215 |
| 10420 | Texas Gulf Bank, National Association | 1626 South Voss Road | Houston | TX | 3206 | 514655 |
| 4701 | Texas Heritage National Bank | 107 Webb | Daingerfield | TX | 3161 | 824653 |
| 11879 | Texas National Bank | 201 S. Texas | Mercedes | TX | 3337 | 497954 |

## National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 22807 | Texas National Bank | 400 East Broadway | Sweetwater | TX | 34014 | 1435092 |
| 18594 | Texas National Bank of Jacksonville | 300 Neches Street | Jacksonville | TX | 26181 | 739355 |
| 12308 | Texas Republic Bank, National Association | 2595 Preston Road, Building 100 | Frisco | TX | 3400 | 735067 |
| 16799 | The American National Bank of Mount Pleasant | 301 South Madison Avenue | Mount Pleasant | TX | 22942 | 764067 |
| 17043 | The American National Bank of Texas | 102 West Moore Avenue | Terrell | TX | 23474 | 599764 |
| 3711 | The Atlanta National Bank | 105 Southwest Church Street | Atlanta | IL | 3601 | 672238 |
| 25279 | The Bancorp Bank, National Association | 345 N Reid Place | Sioux Falls | SD | 35444 | 2858960 |
| 13770 | The Bank National Association | 2nd and Carl Albert Parkway | McAlester | OK | 4146 | 829050 |
| 24526 | Association | 333 South Hope Street, Suite 2525 | Los Angeles | CA | 23472 | 398668 |
| 9734 | The Bradford National Bank of Greenville | 100 East College Avenue | Greenville | IL | 3799 | 720746 |
| 7827 | The Brady National Bank | 101 S. Blackburn | Brady | TX | 3109 | 101952 |
| 13678 | The Brenham National Bank | 2211 South Day Street | Brenham | TX | 3113 | 227357 |
| 2311 | The Camden National Bank | 2 Elm Street | Camden | ME | 4255 | 593007 |
| 3817 | The Canandaigua National Bank and Trust Company | 72 South Main Street | Canandaigua | NY | 6985 | 161602 |
| 23690 | The Chicago Trust Company, National Association | 727 North Bank Lane | Lake Forest | IL | 35063 | 2719810 |
| 10034 | The Citizens First National Bank of Storm Lake | 529 Lake Avenue | Storm Lake | IA | 4511 | 424240 |
| 10789 | The Citizens National Bank | 417 Commercial | Greenleaf | KS | 4678 | 991555 |
| 11573 | The Citizens National Bank of Bluffton | 102 South Main Street | Bluffton | OH | 6531 | 738013 |
| 10216 | The Citizens National Bank of Hammond | 19 Main Street | Hammond | NY | 14820 | 855303 |
| 4900 | The Citizens National Bank of Hillsboro | 200 E. Elm Street | Hillsboro | TX | 3255 | 184656 |
| 3988 | The Citizens National Bank of Lebanon | 149 W. Main Street | Lebanon | KY | 2753 | 641449 |
| 5259 | The Citizens National Bank of McConnelsville | 100 East Main Street | McConnelsville | OH | 6638 | 685023 |
| 7266 | The Citizens National Bank of Meridian | 512 22nd Avenue | Meridian | MS | 4993 | 69333 |
| 13692 | The Citizens National Bank of Park Rapids | 300 West First Street | Park Rapids | MN | 5223 | 877752 |
| 14255 | The Citizens National Bank of Quitman | 100 East Stevens Street | Quitman | GA | 14731 | 774235 |
| 11544 | The Citizens National Bank of Somerset | 44 Public Square | Somerset | KY | 2725 | 410917 |
| 13847 | The Citizens National Bank of Woodsfield | 143 S. Main Street | Woodsfield | OH | 6732 | 386825 |
| 5753 | Oklahoma | 500 Montgomery Square | Lawton | OK | 4132 | 294751 |
| 5276 | The City National Bank of Colorado City | 228 Elm | Colorado City | TX | 3144 | 799854 |
| 8745 | The City National Bank of Metropolis | 423 Ferry Street | Metropolis | IL | 3814 | 298245 |
| 10806 | The City National Bank of San Saba | 209 E. Brown | San Saba | TX | 5518 | 714165 |
| 3989 | The City National Bank of Sulphur Springs | 201 Connally Street | Sulphur Springs | TX | 5544 | 596062 |
| 5275 | The City National Bank of Taylor | 212 North Main Street | Taylor | TX | 5548 | 181963 |
| 994 | The Clinton National Bank | 235 Sixth Avenue South | Clinton | IA | 4439 | 773443 |
| 8573 | The Commercial National Bank of Brady | 105 East Second Street | Brady | TX | 3110 | 42354 |
| 10536 | The Conway National Bank | 1400 Third Avenue | Conway | SC | 2102 | 631422 |
| 1323 | The Delaware National Bank of Delhi | 124 Main Street | Delhi | NY | 7025 | 230163 |
| 2515 | The Ephrata National Bank | 31 East Main Street | Ephrata | PA | 7493 | 425911 |
| 6609 | The Fairfield National Bank | 220 East Main Street | Fairfield | IL | 3792 | 640246 |
| 8606 | The Falls City National Bank | 100 S Front Street | Falls City | TX | 3193 | 441050 |
| 9767 | The Farmers and Merchants National Bank of Fairview | 312 North Main | Fairview | OK | 4097 | 73152 |
| 8221 | The Farmers and Merchants National Bank of Nashville | 120 W. St. Louis | Nashville | IL | 3821 | 513546 |
| 3654 | The Farmers' National Bank of Canfield | 20 South Broad Street | Canfield | OH | 6540 | 680813 |
| 2409 | The Farmers National Bank of Danville | 304 West Main Street | Danville | KY | 2740 | 785147 |
| 4271 | The Farmers National Bank of Lebanon | 136 West Main Street | Lebanon | KY | 2754 | 575348 |
| 8345 | The Fayette County National Bank of Fayetteville | 101 N. Court Street | Fayetteville | WV | 6762 | 488420 |
| 2488 | The First Central National Bank of St. Paris | 103 South Springfield Street | St. Paris | OH | 15214 | 538222 |
| 18783 | The First Citizens National Bank of Upper Sandusky | 100 North Sandusky | Upper Sandusky | OH | 14355 | 230423 |
| 12094 | The First Farmers National Bank of Waurika | 319 East D Street | Waurika | OK | 4222 | 353957 |
| 5547 | The First National Bank and Trust Co. | 302 Chickasha Avenue | Chickasha | OK | 4062 | 154154 |
| 2725 | The First National Bank and Trust Company | 345 East Grand Avenue | Beloit | WI | 5285 | 207845 |
| 7115 | Arrow | 121 South Main Street | Broken Arrow | OK | 4050 | 145554 |
| 5252 | The First National Bank and Trust Company of Miami | 2 N. Main Street | Miami | OK | 4148 | 837158 |
| 324 | The First National Bank and Trust Company of Newtown | State and Centre Streets | Newtown | PA | 7658 | 1007417 |
| 11001 | The First National Bank and Trust Company of Okmulgee | 610 East 8th | Okmulgee | OK | 4170 | 634955 |
| 14296 | The First National Bank at St. James | 202 First Avenue South | St. James | MN | 14853 | 794653 |
| 14244 | The First National Bank in Amboy | 220 East Main | Amboy | IL | 14674 | 656032 |
| 13046 | The First National Bank in Cooper | 11 West Side Square | Cooper | TX | 3149 | 767152 |
| 12636 | The First National Bank in Creston | 101 West Adams | Creston | IA | 4444 | 214843 |
| 14072 | The First National Bank in Falfurrias | 200 S. St. Mary Street | Falfurrias | TX | 14095 | 442655 |

### National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 20838 | The First National Bank in Marlow | 301 West Main Street | Marlow | OK | 26260 | 17259 |
| 3393 | The First National Bank in Sioux Falls | 100 South Phillips Avenue | Sioux Falls | SD | 4016 | 326858 |
| 13579 | The First National Bank in Tremont | 134 South Sampson Street | Tremont | IL | 3749 | 353546 |
| 14222 | The First National Bank in Trinidad | 100 East Main Street | Trinidad | CO | 14584 | 474058 |
| 10823 | The First National Bank of Absecon | 106 New Jersey Avenue | Absecon | NJ | 6442 | 188917 |
| 8293 | The First National Bank of Allendale | 301 East Main Street | Allendale | IL | 12365 | 990642 |
| 6091 | The First National Bank of Anson | 1021 12th Street | Anson | TX | 3078 | 366359 |
| 9183 | The First National Bank of Arenzville | 110 S Charles Street | Arenzville | IL | 3599 | 593333 |
| 5786 | The First National Bank of Aspermont | 136 West 7th Street | Aspermont | TX | 3079 | 138257 |
| 5316 | The First National Bank of Assumption | 141 North Chestnut Street | Assumption | IL | 3600 | 604033 |
| 10911 | The First National Bank of Ava | Main Street | Ava | IL | 3761 | 858443 |
| 3533 | The First National Bank of Ballinger | 911 Hutchins Avenue | Ballinger | TX | 3087 | 160454 |
| 13202 | The First National Bank of Bangor | 1798 Commercial Street | Bangor | WI | 5337 | 627854 |
| 4093 | The First National Bank of Bastrop | 489 Highway 71 West | Bastrop | TX | 3091 | 18050 |
| 2302 | The First National Bank of Bellevue | 120 North Street | Bellevue | OH | 6528 | 243414 |
| 4241 | The First National Bank of Bellville | 100 East Main Street | Bellville | TX | 3099 | 91754 |
| 5582 | The First National Bank of Bemidji | 1600 Paul Bunyan Drive, NW | Bemidji | MN | 5093 | 363657 |
| 8588 | The First National Bank of Blanchester | 121 East Main Street | Blanchester | OH | 6530 | 735414 |
| 8830 | The First National Bank of Brooksville | Locust Street | Brooksville | KY | 2682 | 798512 |
| 10397 | The First National Bank of Brownstown | 108 E. Main Street | Brownstown | IL | 3770 | 207041 |
| 4934 | The First National Bank of Carmi | 201 East Main Street | Carmi | IL | 3777 | 209148 |
| 12395 | The First National Bank of Cokato | 365 Broadway Avenue South | Cokato | MN | 5115 | 280558 |
| 8322 | The First National Bank of Coleraine | W Highway 169 | Coleraine | MN | 5117 | 311658 |
| 13802 | The First National Bank of Dennison | 105 Grant Street | Dennison | OH | 6574 | 935719 |
| 9773 | The First National Bank of Dighton | 105 E. Long Street | Dighton | KS | 4654 | 636753 |
| 6487 | The First National Bank of Dryden | 7 W. Main Street | Dryden | NY | 7031 | 241009 |
| 7534 | The First National Bank of Eagle Lake | 100 Commerce Street | Eagle Lake | TX | 3179 | 651952 |
| 8575 | The First National Bank of Eldorado | 100 SW Main Street | Eldorado | TX | 3184 | 665258 |
| 6707 | The First National Bank of Elmer | Main Street | Elmer | NJ | 6464 | 609010 |
| 8561 | The First National Bank of Ely | 595 Aultman Street | Ely | NV | 2273 | 450669 |
| 12739 | The First National Bank of Evant | 115 S. Memory Lane | Evant | TX | 3190 | 379153 |
| 9771 | The First National Bank of Fairfax | 16 South East First Street | Fairfax | MN | 5142 | 938354 |
| 11571 | The First National Bank of Fleming | 201 N. Logan | Fleming | CO | 3018 | 306056 |
| 12141 | The First National Bank of Fletcher | 401 West Cole | Fletcher | OK | 4098 | 185251 |
| 1950 | The First National Bank of Fort Smith | 602 Garrison Avenue | Fort Smith | AR | 3864 | 397540 |
| 8624 | The First National Bank of Frederick | 314 Main Street | Frederick | SD | 3985 | 288152 |
| 86 | The First National Bank of Germantown | 17 N. Main Street | Germantown | OH | 6592 | 505916 |
| 9262 | The First National Bank of Gilbert | 2 North Broadway | Gilbert | MN | 5150 | 975452 |
| 8521 | The First National Bank of Gordon | 134 N. Main Street | Gordon | NE | 5410 | 3252 |
| 3727 | The First National Bank of Granbury | 101 E. Bridge Street | Granbury | TX | 3228 | 329952 |
| 12982 | The First National Bank of Grayson | 200 S. Carol Malone Boulevard | Grayson | KY | 2695 | 610913 |
| 1083 | The First National Bank of Groton | 161 Main Street | Groton | NY | 7085 | 917500 |
| 7592 | The First National Bank of Hartford | 101 South 3rd Avenue | Hartford | AL | 2804 | 112332 |
| 11822 | The First National Bank of Harveyville | 197 Main Street | Harveyville | KS | 4683 | 931458 |
| 12995 | The First National Bank of Hebbronville | 305 N. Smith Street | Hebbronville | TX | 3248 | 173959 |
| 6906 | The First National Bank of Henning | Highways 78 and 108 | Ottertail | MN | 5162 | 23456 |
| 10566 | The First National Bank of Hooker | 119 North Broadway Street | Hooker | OK | 4123 | 816256 |
| 12384 | The First National Bank of Hope | 112 Main Street | Hope | KS | 4690 | 870856 |
| 6922 | The First National Bank of Hughes Springs | 505 E. First | Hughes Springs | TX | 3268 | 849357 |
| 8489 | The First National Bank of Hugo | 321 4th Street | Hugo | CO | 3029 | 276551 |
| 3180 | The First National Bank of Hutchinson | One North Main Street | Hutchinson | KS | 4697 | 754853 |
| 21165 | The First National Bank of Izard County | 2184 AR Highway 56 | Calico Rock | AR | 11252 | 379649 |
| 7768 | The First National Bank of Jeanerette | 1331 East Main Street | Jeanerette | LA | 4290 | 622037 |
| 8161 | The First National Bank of Johnson | 125 Main Street | Johnson | NE | 5422 | 563457 |
| 347 | The First National Bank of Lacon | 111 South Broad Street | Lacon | IL | 3688 | 824738 |
| 11312 | Ridge | 206 West Main Street | Walnut Ridge | AR | 3896 | 799948 |
| 6921 | The First National Bank of Le Center | 701 Ash Street NE | Lonsdale | MN | 5180 | 986551 |
| 6171 | The First National Bank of Lindsay | 101 South Main | Lindsay | OK | 4134 | 296858 |
| 10598 | The First National Bank of Lipan | 101 E. Lipan Drive | Lipan | TX | 3303 | 811457 |
| 3962 | The First National Bank of Litchfield | 324 North State Street | Litchfield | IL | 3807 | 370347 |

### National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 6169 | The First National Bank of Livingston | 2121 Highway 190 West | Livingston | TX | 3305 | 630658 |
| 13126 | The First National Bank of Long Island | 10 Glen Head Road | Glen Head | NY | 7072 | 837000 |
| 11798 | The First National Bank of Louisburg | 1201 West Amity | Louisburg | KS | 4722 | 132451 |
| 7605 | The First National Bank of Manchester | 120 Town Square | Manchester | KY | 2708 | 719610 |
| 3455 | The First National Bank of Manning | 401 Main Street | Manning | IA | 4477 | 818540 |
| 46 | The First National Bank of McConnelsville | 86 North Kennebec Avenue | McConnelsville | OH | 6637 | 44929 |
| 6488 | The First National Bank of McIntosh | 260 Cleveland Avenue SW | McIntosh | MN | 5196 | 988256 |
| 9810 | The First National Bank of Mertzon | 106 S. Broadway | Mertzon | TX | 3339 | 500256 |
| 2221 | The First National Bank of Middle Tennessee | 200 East Main Street | McMinnville | TN | 4952 | 87234 |
| 9050 | The First National Bank of Milaca | 192 Second Avenue S.W. | Milaca | MN | 5198 | 924357 |
| 9784 | The First National Bank of Monterey | Main Street | Monterey | IN | 4364 | 44040 |
| 5774 | The First National Bank of Moody | 101 7th Street | Moody | TX | 3351 | 108269 |
| 12947 | The First National Bank of Moose Lake | 400 Elm Avenue | Moose Lake | MN | 5214 | 706058 |
| 13102 | The First National Bank of Mount Dora | 714 N Donnelly Street | Mount Dora | FL | 3579 | 61832 |
| 3959 | The First National Bank of Nevada, Missouri | 100 West Walnut | Nevada | MO | 4598 | 827355 |
| 11754 | The First National Bank of Okawville | 203 East Walnut Street | Okawville | IL | 3826 | 333940 |
| 8039 | The First National Bank of Oneida | 603 North Main Street | Oneida | TN | 4958 | 966731 |
| 228 | The First National Bank of Orwell | Main Street | Orwell | VT | 6280 | 177500 |
| 6837 | The First National Bank of Osakis | 211-13 Central | Osakis | MN | 5221 | 726458 |
| 11343 | The First National Bank of Pandora | 102 E. Main Street | Pandora | OH | 6671 | 571920 |
| 9721 | The First National Bank of Peterstown | 220 Market Street | Peterstown | WV | 6787 | 719030 |
| 4155 | The First National Bank of Primghar | 180 S. Hayes Avenue | Primghar | IA | 4494 | 343248 |
| 11125 | The First National Bank of Proctor | 211 Second Street | Proctor | MN | 5232 | 731957 |
| 11706 | The First National Bank of Quitaque | 320 East Main Street | Quitaque | TX | 3401 | 644963 |
| 6910 | The First National Bank of Raymond | 403 East Broad Street | Raymond | IL | 3830 | 421445 |
| 11348 | The First National Bank of Russell Springs | Highways 127 and 80 | Russell Springs | KY | 2767 | 173641 |
| 8808 | The First National Bank of Scott City | 501 Main Street | Scott City | KS | 4769 | 414652 |
| 5628 | The First National Bank of Shiner | 103 W. 7th | Shiner | TX | 5529 | 342362 |
| 5466 | The First National Bank of Sonora | 102 East Main | Sonora | TX | 5531 | 591366 |
| 7015 | The First National Bank of Sparta | Broadway and Market Streets | Sparta | IL | 3837 | 246947 |
| 10161 | The First National Bank of Spearville | 303 N Main | Spearville | KS | 4774 | 197254 |
| 3886 | The First National Bank of St. Ignace | 132 N. State Street | St. Ignace | MI | 5074 | 381950 |
| 8094 | The First National Bank of Stanton | 119 N. St. Peter | Stanton | TX | 5536 | 458665 |
| 9813 | The First National Bank of Sterling City | 602 4th Street | Sterling City | TX | 5538 | 411062 |
| 11383 | The First National Bank of Sycamore | South Sycamore Avenue | Sycamore | OH | 6706 | 553926 |
| 11019 | The First National Bank of Tom Bean | 109 Britton Street | Tom Bean | TX | 5557 | 193162 |
| 13706 | The First National Bank of Trinity | 145 South Robb Street | Trinity | TX | 5559 | 479567 |
| 11305 | The First National Bank of Wakefield | 400 Sunday Lake Street | Wakefield | MI | 5076 | 292850 |
| 10180 | The First National Bank of Waterloo | 228 South Main Street | Waterloo | IL | 3842 | 145545 |
| 5635 | The First National Bank of Waverly | 107 N. Market | Waverly | OH | 6725 | 263627 |
| 7899 | The First National Bank of Waynesboro | 626 Liberty Street | Waynesboro | GA | 2160 | 31134 |
| 6830 | The First National Bank of Williamson | 68 E. Second Avenue | Williamson | WV | 6805 | 917630 |
| 14757 | The Fisher National Bank | 102 East Division Street | Fisher | IL | 17513 | 739832 |
| 23864 | The Glenmede Trust Company, National Association | One Liberty Place, 1650 Market Street, Suite 1200 | Philadelphia | PA | 35317 | 2826017 |
| 24173 | The Goldman Sachs Trust Company, National Association | 200 Bellevue Parkway | Wilmington | DE | 57337 | 3066025 |
| 11642 | The Granger National Bank | 200 W. Davilla | Granger | TX | 3232 | 272151 |
| 14035 | The Granville National Bank | 328 South McCoy Street | Granville | IL | 13983 | 560830 |
| 2242 | The Havana National Bank | 112 South Orange Street | Havana | IL | 3677 | 940731 |
| 5842 | The Home National Bank of Thorntown | 117 East Main Street | Thorntown | IN | 14225 | 696645 |
| 644 | The Honesdale National Bank | 733 Main Stt | Honesdale | PA | 7526 | 465618 |
| 7745 | The Huntington National Bank | 17 South High Street | Columbus | OH | 6560 | 12311 |
| 11913 | The Idabel National Bank | 1201 Southeast Washington | Idabel | OK | 4241 | 237954 |
| 7814 | The Jacksboro National Bank | 910 North Main Street | Jacksboro | TX | 3275 | 924058 |
| 5614 | The Karnes County National Bank of Karnes City | 301 E. Calvert Street | Karnes City | TX | 3279 | 979759 |
| 13111 | The Lamesa National Bank | 602 South 1st Street | Lamesa | TX | 3292 | 623052 |
| 11715 | The Lemont National Bank | 1201 State Street | Lemont | IL | 3693 | 480330 |
| 13541 | The Liberty National Bank in Paris | 305 Lamar Avenue | Paris | TX | 3384 | 1669 |
| 13479 | The Lincoln National Bank of Hodgenville | 41 Public Square | Hodgenville | KY | 2750 | 553944 |
| 10079 | The Litchfield National Bank | 316 North State Street | Litchfield | IL | 3808 | 372444 |
| 1027 | The Lyons National Bank | 35 William Street | Lyons | NY | 7151 | 323204 |

### National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 23202 | The Malvern National Bank | 1 Money Place | Malvern | AR | 14644 | 906241 |
| 7911 | The Marion National Bank | 302 East Main Street | Marion | KS | 4728 | 167752 |
| 2449 | The Merchants National Bank | 100 North High Street | Hillsboro | OH | 6605 | 701222 |
| 6991 | The Miners National Bank of Eveleth | 401 Grant Avenue | Eveleth | MN | 5141 | 43856 |
| 24827 | The MINT National Bank | 1213 Kingwood Drive | Kingwood | TX | 58764 | 3821626 |
| 13198 | The National Bank of Adams County of West Union | 218 N. Market Street | West Union | OH | 6728 | 290922 |
| 14788 | The National Bank of Andrews | 1501 N. Main | Andrews | TX | 17603 | 488653 |
| 12229 | The National Bank of Blacksburg | 100 South Main Street | Blacksburg | VA | 6821 | 754929 |
| 1398 | The National Bank of Coxsackie | 3-7 Reed Street | Coxsackie | NY | 7018 | 234506 |
| 22652 | The National Bank of Indianapolis | 107 North Pennsylvania Street, Suite 700 | Indianapolis | IN | 33860 | 2132941 |
| 3147 | The National Bank of Malvern | King and Warren Streets | Malvern | PA | 7590 | 977616 |
| 1195 | The National Bank of Middlebury | 30-32 Main Street | Middlebury | VT | 6275 | 173306 |
| 4107 | The National Capital Bank of Washington | 316 Pennsylvania Avenue, S.E. | Washington | DC | 2093 | 791821 |
| 676 | The National Grand Bank of Marblehead | 91 Pleasant Street | Marblehead | MA | 2608 | 863607 |
| 1214 | The National Iron Bank | 195 Main Street | Salisbury | CT | 2496 | 1008209 |
| 12471 | The Neffs National Bank | 5629 Pennsylvania Route 873 | Neffs | PA | 7646 | 144913 |
| 7005 | The Northumberland National Bank | 245 Front Street | Northumberland | PA | 7666 | 70414 |
| 11780 | The Old Exchange National Bank of Okawville | 110 E. Walnut Street | Okawville | IL | 3827 | 411240 |
| 12267 | The Old Point National Bank of Phoebus | 1 West Mellen Street | Hampton | VA | 6892 | 186221 |
| 9179 | The Park National Bank | 50 North Third Street | Newark | OH | 6653 | 489623 |
| 7892 | The Pauls Valley National Bank | 101 W. Paul Avenue | Pauls Valley | OK | 4173 | 454658 |
| 15733 | The Pennsville National Bank | 170 South Broadway | Pennsville | NJ | 19978 | 828110 |
| 10051 | The Peoples National Bank of Checotah | 300 West Gentry | Checotah | OK | 4059 | 942454 |
| 11595 | The Perryton National Bank | 825 South Main Street | Perryton | TX | 3388 | 8462 |
| 5658 | The Peshtigo National Bank | 250 French Street | Peshtigo | WI | 5317 | 257345 |
| 25302 | The Preferred Legacy National Trust Bank | 4840 Higbee Avenue NW | Canton | OH | 59357 | 5887420 |
| 22926 | The Private Trust Company, National Association | 1422 Euclid Avenue | Cleveland | OH | 34057 | 2328285 |
| 976 | The Putnam County National Bank of Carmel | 43 Gleneida Avenue | Carmel | NY | 6990 | 287007 |
| 5267 | The Riddell National Bank | 1 East National Avenue | Brazil | IN | 4318 | 319047 |
| 8905 | The Salyersville National Bank | Main Street | Salyersville | KY | 2723 | 472018 |
| 13854 | The Santa Anna National Bank | 610 Wallis Avenue | Santa Anna | TX | 5520 | 521064 |
| 14315 | The Security National Bank of Enid | 201 West Broadway | Enid | OK | 14966 | 119153 |
| 3124 | The Security National Bank of Sioux City, Iowa | 601 Pierce Street | Sioux City | IA | 4506 | 418249 |
| 12543 | The State National Bank of Big Spring | 901 Main Street | Big Spring | TX | 3103 | 169354 |

## National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 12742 | The State National Bank of Groom | 99 Broadway | Groom | TX | 3237 | 460556 |
| 4137 | The Stephenson National Bank and Trust | 1820 Hall Avenue | Marinette | WI | 5306 | 598048 |
| 24092 | The Tipton Latham Bank, National Association | 800 West Highway 50 | Tipton | MO | 1941 | 984856 |
| 22281 | The Trust Company of Toledo, National Association | 1630 Timberwolf Drive | Holland | OH | 33239 | 1820979 |
| 9803 | The Turbotville National Bank | Route 54, P.O. Box 37 | Turbotville | PA | 7789 | 906410 |
| 12018 | The Upstate National Bank | 729 Proctor Avenue | Ogdensburg | NY | 13748 | 313009 |
| 2036 | The Vinton County National Bank | 112 West Main Street | McArthur | OH | 6636 | 754826 |
| 5203 | The Waggoner National Bank of Vernon | 1818 Texas Street | Vernon | TX | 5569 | 548267 |
| 8694 | The Yoakum National Bank | 301 W. Grand Avenue | Yoakum | TX | 5595 | 311265 |
| 22883 | Thomasville National Bank | 301 North Broad Street | Thomasville | GA | 34068 | 2344753 |
| 25288 | TIAA Trust, National Association | 8500 Andrew Carnegie Boulevard | Charlotte | NC | 59344 | 5859511 |
| 25143 | TIB National Association | 11701 Luna Road | Farmers Branch | TX | 23647 | 529958 |
| 25239 | Tioga State Bank, National Association | 1 North Main Street | Spencer | NY | 9410 | 910118 |
| 12437 | Titan Bank, National Association | 1701 East Hubbard Street | Mineral Wells | TX | 3225 | 328357 |
| 24789 | Touchmark National Bank | 3651 Old Milton Parkway | Alpharetta | GA | 58687 | 3645840 |
| 25201 | Town Bank, National Association | 850 West North Shore Drive | Hartland | WI | 34717 | 2693264 |
| 8004 | Transact Bank, National Association | 700 17th Street | Denver | CO | 13986 | 403254 |
| 15738 | Tri City National Bank | 6400 South 27th Street | Oak Creek | WI | 18922 | 242444 |
| 17926 | Triad Bank, National Association | 7646 East 61st Street | Tulsa | OK | 24677 | 283652 |
| 24397 | Trinity Bank, National Association | 3500 W Vickery Boulevard | Fort Worth | TX | 57543 | 3185896 |
| 10523 | Trustmark National Bank | 248 East Capitol Street | Jackson | MS | 4988 | 342634 |
| 24 | U.S. Bank National Association | 425 Walnut Street | Cincinnati | OH | 6548 | 504713 |
| 23412 | U.S. Bank Trust Company, National Association | 111 Southwest Fifth Avenue | Portland | OR | 34688 | 2567123 |
| 24090 | U.S. Bank Trust National Association | 1011 Centre Road | Wilmington | DE | 57047 | 2916963 |
| 23604 | U.S. Bank Trust National Association SD | 141 North Main Avenue | Sioux Falls | SD | 34813 | 2667920 |
| 22874 | UMB Bank & Trust, National Association | 2 South Broadway | St. Louis | MO | 34065 | 2337335 |
| 23920 | UMB Bank, National Association | 1010 Grand Avenue | Kansas City | MO | 8273 | 936855 |
| 7236 | Union National Bank | One Fountain Square Plaza | Elgin | IL | 3661 | 963730 |
| 25160 | United Midwest Savings Bank, National Association | 101 South Main Street | Degraff | OH | 32441 | 809276 |
| 23981 | United National Bank | 722 North Broad Street | Cairo | GA | 35427 | 214727 |
| 21008 | Unity National Bank of Houston | 2602 Blodgett Street | Houston | TX | 26351 | 853251 |
| 15790 | Valley National Bank | 615 Main Avenue | Passaic | NJ | 9396 | 229801 |
| 24121 | Vanguard National Trust Company, National Association | Vanguard Boulevard | Malvern | PA | 57304 | 3045383 |
| 25147 | Varo Bank, National Association | 11781 South Lone Peak Way, Suite 100 | Draper | UT | 59190 | 5518023 |
| 17174 | Vast Bank, National Association | 110 N. Elgin Avenue | Tulsa | OK | 23737 | 347956 |
| 13443 | VeraBank, National Association | 201 West Main Street | Henderson | TX | 3250 | 56351 |
| 25210 | Viking Bank, National Association | 4277 Dakota Street | Alexandria | MN | 32082 | 484776 |
| 25202 | Village Bank & Trust, National Association | 234 West Northwest Highway | Arlington Heights | IL | 34011 | 2298995 |
| 23616 | Virginia National Bank | 222 East Main Street | Charlottesville | VA | 34755 | 2708122 |
| 24685 | Waterford Bank, National Association | 3900 North Mccord Road | Toledo | OH | 58433 | 3558482 |
| 24469 | Webster Bank, National Association | 1959 Summer Street | Stamford | CT | 18221 | 761806 |
| 17202 | Wellington Trust Company, National Association | 280 Congress Street | Boston | MA | 23741 | 662172 |
| 11668 | Wells Fargo Bank South Central, National Association | 2005 Taylor Street | Houston | TX | 5146 | 2362458 |
| 1 | Wells Fargo Bank, National Association | 101 North Philips Avenue | Sioux Falls | SD | 3511 | 451965 |
| 23201 | Wells Fargo Delaware Trust Company, National Association | 2200 Concord Pike, 5th Floor | Wilmington | DE | 34465 | 2531991 |
| 21099 | Wells Fargo National Bank West | 4455 Spring Mountain Road | Las Vegas | NV | 27389 | 1225761 |
| 2597 | Wells Fargo Trust Company, National Association | 2389 Washington Boulevard | Ogden | UT | 13718 | 688451 |
| 24185 | West Texas National Bank | #6 Desta Drive, Suite 2400 | Midland | TX | 22957 | 237066 |
| 24683 | West Valley National Bank | 2440 North Litchfield Road | Goodyear | AZ | 58426 | 3480069 |
| 25281 | Western Alliance Trust Company, National Association | 1 East Washington Street, Suite 1400 | Phoenix | AZ | 57288 | 5805451 |
| 6352 | Western National Bank | 210 2nd Street, NW | Cass Lake | MN | 5110 | 278751 |
| 13116 | Western National Bank | 201 North Central Avenue | Duluth | MN | 5131 | 127055 |
| 10971 | Western National Bank | 523 Thayer Avenue | Chester | NE | 4778 | 199351 |
| 25203 | Wheaton Bank & Trust Company, National Association | 100 North Wheaton Avenue | Wheaton | IL | 33803 | 2044811 |
| 23918 | Wheaton College Trust Company, National Association | 501 College Avenue | Wheaton | IL | 57150 | 2960788 |
| 22859 | Wilmington Trust, National Association | Rodney Square North, 1100 North Market Street | Wilmington | DE | 34069 | 2026444 |
| 25142 | Winter Park National Bank | 201 North New York Avenue | Winter Park | FL | 59105 | 5143788 |
| 25196 | Wintrust Bank, National Association | 231 South LaSalle Street | Chicago | IL | 33935 | 2239288 |
| 10865 | WNB Financial, National Association | 204 Main Street | Winona | MN | 5280 | 220059 |
| 16892 | Woodforest National Bank | 1330 Lake Robbins Drive | The Woodlands | TX | 23220 | 412751 |

## National Banks Active As of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 23926 | Woodlands National Bank | 122 Main Street | Hinckley | MN | 1417 | 980951 |
| 14955 | Zapata National Bank | 703 Hidalgo Blvd | Zapata | TX | 18454 | 218261 |
| 4341 | Zions Bancorporation, National Association | One South Main Street | Salt Lake City | UT | 2270 | 276579 |

757

## Federal Branches and Agencies Active as of 4/30/2024

| CHARTER NO | NAME | ADDRESS (LOC) | CITY | STATE | CERT | RSSD |
|---|---|---|---|---|---|---|
| 80145 | Adyen N.V. | 274 Brannan Street | San Francisco | CA | 0 | 5616273 |
| 80026 | Arab Banking Corporation, B.S.C. | 140 East 45th Street, 38th Floor | New York | NY | 0 | 130103 |
| 80004 | Australia & New Zealand Banking Group Limited | 277 Park Avenue, 31st Floor | New York | NY | 0 | 560812 |
| 80041 | Banco Bradesco S.A. | 450 Park Avenue | New York | NY | 0 | 86509 |
| 80029 | Banco de la Republica Oriental del Uruguay | 489 5th Avenue, 22nd Floor | New York | NY | 0 | 132200 |
| 80080 | Bangkok Bank Public Company Limited | 29 Broadway, 19th Floor | New York City | NY | 0 | 565518 |
| 80096 | Bank of China | 444 South Flower Street, 39th Floor | Los Angeles | CA | 58339 | 1218361 |
| 80091 | Bank of China | 42-35 Main Street | Flushing | NY | 33652 | 125707 |
| 80028 | Bank of China | 1045 Avenue of the Americas | New York | NY | 33653 | 908508 |
| 80129 | Bank of China Chicago Branch | 111 S. Wacker Drive, Suite 4800 | Chicago | IL | 0 | 4461515 |
| 80107 | Bank of Communications Co., Ltd - New York Branch | 55 Broadway (A/K/A One Exchange Plaza) | New York | NY | 0 | 1898781 |
| 80127 | Bank of Communications Co., Ltd., San Francisco Branch | 575 Market Street, Suite 3888 | San Francisco | CA | 0 | 4357225 |
| 80030 | Bayerische Landesbank | 560 Lexington Avenue | New York | NY | 0 | 599401 |
| 80039 | China Citic Bank International Limited | 323 West Valley Boulevard | Alhambra | CA | 0 | 806864 |
| 80112 | China Citic Bank International Limited | 410 Park Avenue, 11th Floor | New York | NY | 0 | 3159262 |
| 80087 | CMB Wing Lung Bank Limited | 520 Newport Center Drive | Newport Beach | CA | 0 | 571564 |
| 80132 | CMB Wing Lung Bank Limited San Francisco Branch | Steuart Tower, One Market Plaza, Suite 1200 | San Francisco | CA | 0 | 4725141 |
| 80022 | Commonwealth Bank of Australia | 599 Lexington Avenue | New York | NY | 0 | 569712 |
| 80121 | Desjardins Florida Branch Limited | 1001 East Hallandale Beach Boulevard | Hallandale | FL | 0 | 5083316 |
| 80094 | Erste Group Bank Ag New York Branch | 75 Rockefeller Plaza, 12th Floor | New York | NY | 0 | 233116 |
| 80016 | First Abu Dhabi Bank USA N.V. | 1430 K Street, N.W., Suite 400 | Washington | DC | 0 | 647021 |
| 80065 | Gulf International Bank (UK) Limited | 330 Madison Avenue, 37th Floor | New York | NY | 0 | 919812 |
| 80010 | Gulf International Bank B.S.C. | 335 Madison Avenue | New York | NY | 0 | 253516 |
| 80123 | Icici Bank Limited | 575 Fifth Avenue | New York | NY | 0 | 3712461 |
| 80126 | Itaú Chile New York Branch | 885 Third Avenue, 33rd Floor | New York | NY | 0 | 3930498 |
| 80066 | Metropolitan Bank and Trust Company | 10 East 53rd Street | New York | NY | 33656 | 449515 |
| 80144 | Mitsubishi UFJ Trust and Banking Corporation NY Branch | 1221 Avenue of Americas | New York | NY | 0 | 317810 |
| 80143 | MUFG Bank, Lld Houston Agency | 1100 Louisiana, Suite 4850 | Houston | TX | 0 | 538156 |
| 80140 | MUFG Bank, Ltd. Chicago Branch | 227 West Monroe Street, Suite 1550 | Chicago | IL | 0 | 660637 |
| 80142 | MUFG Bank, Ltd. Dallas Agency | 500 North Akard Street | Dallas | TX | 0 | 1917011 |
| 80141 | MUFG Bank, Ltd. Los Angeles Branch | 445 South Figueroa Street, 27th Floor | Los Angeles | CA | 0 | 112967 |
| 80138 | MUFG Bank, Ltd. Primary NY Branch | 1251 Avenue of The Americas | New York | NY | 0 | 444819 |
| 80139 | MUFG Bank, Ltd. Secondary NY Branch | 1221 Avenue of The Americas | New York | NY | 0 | 4981871 |
| 80011 | National Australia Bank Limited | 277 Park Avenue, 19th Floor | New York | NY | 0 | 41218 |
| 80003 | National Bank of Pakistan | 1875 Connecticut Avenue, Northwest | Washington | DC | 0 | 968726 |
| 80071 | Royal Bank of Canada | 1211 Avenue of the Americas | New York | NY | 0 | 158714 |
| 80072 | Royal Bank of Canada - WFC Branch | Three World Financial Center, 200 Vesey Street | New York | NY | 0 | 511412 |
| 80133 | Royal Bank of Canada Hudson Branch | 30 Hudson Street | Jersey City | NJ | 0 | 5087752 |
| 80061 | Shanghai Commercial Limited | 125 East 56th Street | New York | NY | 0 | 64217 |
| 80104 | The Bank of East Asia, Limited | 388 East Valley Blvd, Suite 218 | Alhambra | CA | 0 | 1858990 |
| 80081 | The Bank of East Asia, Limited | 540 Madison Avenue | New York | NY | 0 | 958400 |
| 80097 | The Bank of East Asia, Limited | 540 MADISON AVENUE | NEW YORK | NY | 33646 | 1751420 |
| 80089 | The National Bank of Kuwait S.A.K.P. | 299 Park Avenue | New York | NY | 0 | 969714 |
| 80134 | The Toronto-Dominion Bank, New York Branch | 1 Vanderbilt Avenue | New York | NY | 0 | 450810 |
| 80114 | UBS AG New York (1285 Avenue of the Americas) Branch | 1285 Avenue of the Americas | New York | NY | 0 | 965510 |
| 80135 | UBS AG Stamford Branch | 600 Washington Boulevard | Stamford | CT | 0 | 2618801 |
| 80082 | United Bank for Africa Plc, America | 575 Fifth Avenue | New York | NY | 0 | 964616 |
| 80009 | Westpac Banking Corporation | 575 Fifth Avenue - 39th Floor | New York | NY | 0 | 629812 |

48

# EXHIBIT

## 12

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

### District of Massachusetts
### Case No. 12–16220
#### Chapter 7

In re Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
   Bradley R. Nelson
   127 Smith Place #A2
   Cambridge, MA 02138

Social Security / Individual Taxpayer ID No.:
   xxx–xx–3622

Employer Tax ID / Other nos.:


## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).


                                          BY THE COURT


Dated: 10/23/12

                                          Joan N. Feeney
                                          United States Bankruptcy Judge


### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

B18 (Official Form 18) (12/07) – Cont.

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts That are Not Discharged

Some of the common types of debts which are not discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

# EXHIBIT

## 13





2023 00146950
Bk: 82344 Pg: 531   Doc: DEED
Page: 1 of 3   12/26/2023 01:39 PM

THIS SPACE PROVIDED FOR RECORDER'S USE ONLY:

WHEN RECORDED RETURN TO:
Bradley r Nelson
65 lovers lane
groton, Massachusetts, 01450

---

## WARRANTY DEED

THE GRANTOR,
-    Bradley R Nelson, a single person,

for and in consideration of: One Dollar ($1.00) and other good and valuable consideration grants,
and conveys with warranty covenants to the GRANTEE:
Kyra I Nelson, 85 Orchard St, BELMONT, Middlesex County, Massachusetts, 02478,
the following described real estate, situated in the County of Massachusetts, State of
Massachusetts:

Legal Description: See attached *Schedule A*

Subject to existing taxes, assessments, liens, encumbrances, covenants, conditions, restrictions,
rights of way and easements of record the grantor hereby covenants with the Grantee that
Grantor is lawfully seized in fee simple of the above granted premises and has good right to sell
and convey the same; and that Grantor, his heirs, executors and administrators shall warrant and
defend the title unto the Grantee, his heirs and assigns against all lawful claims whatsoever.

Tax Parcel Number: 115-30-0

**Grantor Signatures:**

DATED: _12 - 22 - 2023_

Bradley R Nelson
65 lovers lane groton ma 01450
groton, Massachusetts, 01450

STATE OF MASSACHUSETTS, COUNTY OF MIDDLESEX, ss:

On this _22nd_ day of ___December___, _23_, before me personally appeared Bradley R Nelson, to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed same as their free act and deed.

I D MASS LICENSE

_____
Notary Public
Signature of person taking acknowledgment

_Citizens Banker_
Title (and Rank)

My commission expires

MARCELO ALVARADO
Notary Public, Commonwealth of Massachusetts
My Commission Expires August 10, 2029

# SCHEDULE A
## LEGAL DESCRIPTION OF REAL PROPERTY

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1" = 100' dated June 1994" by David E. Ross Assocaites, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997, and recorded with said Deeds in Book 17796, Page 330.

42146 - 493





2023 00146951
Bk: 82344 Pg: 534    Doc: MTG
Page: 1 of 3    12/26/2023 01:39 PM

# MORTGAGE

**THIS MORTGAGE**, made and entered into on _11-28-2022_, by and between _KYRA I NELSON_, hereinafter referred to as "Mortgagor," currently residing at _85 ORCHARD ST   BELMONT MA. 02478_, in the County of _MIDDLESEX_, and _BRADLEY R NELSON_, hereinafter referred to as "Mortgagee," currently located at _65 LOVERS LANE_, _GROTON, MA. 01450_, in the county of _MIDDLESEX_ by which term means the Mortgagee of this mortgage, with the mortgage covenants, to secure payment of $ _499,000.00_, the Principal sum to be paid, with interest on said sum until paid at the rate of _4_ % (percent) computed on the outstanding balance, as provided in this mortgage, and also to secure the performance of all agreements, terms, covenants, conditions and extensions of this Mortgage incorporated herein as referenced.

**THIS MORTGAGE RECORDS THAT** in pursuance to the said agreement and in consideration of the sum $ _499,000.00_, at or before the execution of this MORTGAGE, paid by the MORTGAGEE to the MORTGAGOR, the Mortgagor hereby agrees that he/she will make prompt and timely payment to the Mortgagee on the _15TH_ day of each month (hereinafter known as the "due date"), the monthly sum of $ _1500.00_ with interest at the rate of _4_ % until such time as the repayment of the sum in full has been paid in full.

**THIS MORTGAGE FURTHER RECORDS THAT** in consideration of the aforementioned, the Mortgagor hereby expressly consents that the real estate property is located at _65 LOVERS LANE_, in the City of _GROTON_, in the State of _MA_, in the County of _MIDDLESEX_, bearing the following exact legal description of "Property" as defined in Exhibit A.

**THEREFORE**, the aforementioned real estate property will be held and retained by the Mortgagee as security for the repayment of the aforementioned sum, with interest, under the aforementioned condition(s) that the Mortgagor, his/her heirs, executors, administrators or delegates will pay to the Mortgagee his/her heirs, executors, administrators or delegates the monthly sum of $ _1,560.00_, which includes interest, until such time as the aforementioned sum has been repaid in full to the Mortgagee his/her heirs, executors, administrators or delegates, and that during such time the Mortgagor his/her heirs, executors, administrators or delegates, shall retain, maintain and have full use of the real estate property aforementioned.

**IT IS HEREBY AGREED AND DECLARED**, that should the Mortgagor fail to make the agreed upon payments to the Mortgagee with interest on the agreed upon date that the payment becomes due and payable, the Mortgagee shall have the right and become entitled to take possession of the aforementioned real estate property with the purpose of selling said real estate property in an effort to recover any and all outstanding balance that may be due to Mortgagee out of the sale proceeds of the real estate property.

**IT IS HEREBY FURTHER AGREED AND DECLARED**, by the Mortgagor, that throughout the duration of the Mortgage, and during such time that the real estate property be retained as security for the mortgage amount, the Mortgagor shall obtain and maintain insurance on said property in the joint name of the Mortgagor and the Mortgagee, and that said policy will remain in full force and effect through the

payment of the premium. At any time should the Mortgagor fail to maintain insurance on said property, the Mortgagee can at such time, insure the real estate property, and the premium paid will then be added to the mortgage amount due, if the premium is not paid by the Mortgagor, when requested or demanded to do so by the Mortgagee.

*IT IS FURTHER AGREED,* that the Mortgagor has the right to grant a lease of the aforementioned real estate property with the written consent of the Mortgagee.

*IN CONCLUSION,* the Mortgagor agrees that he/she will accept full responsibility with regard to stamp duty, registration charges and any other out of pocket expense that may be related to the execution and registration of this deed or the transfer of this deed back to the original owner. It is further agreed that both parties will accept cost and professional charges of his/her Solicitor/Advocate.

*IN WITNESS WHEREOF,* this mortgage is executed under seal, and the parties have placed their hands on this date of December 22, 2023.

_____                    _____
Mortgagor                                   Mortgagee


STATE OF MASSACHUSETTS      )
                            )ss:
COUNTY OF MIDDLESEX         )


BE IT KNOWN, that on this 22nd day of December, 2023 before me, a Notary Public in and for the State and County aforesaid, duly commissioned and sworn, personally came and appeared

_____Kyra Nelson_____ and _____Bradley R Nelson_____ who did take an oath and produced proper identification.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal of office the day and year last above written.

My Commission Expires:                      _____
                                            NOTARY PUBLIC

| MARCELO ALVARADO |
| Notary Public, Commonwealth of Massachusetts |
| My Commission Expires August 10, 2029 |

                                            Marcelo Alvarado
                                            Printed Notary Name

Identification Produced:

✓ License ____ Passport

____ Other _____

# EXHIBIT A

# LEGAL DESCRIPTION OF REAL PROPERTY

Exhibit A

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Saaristo, Scale 1" = 100' dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997, and recorded with said Deeds in Book 17796, Page 330.

Deed herewith

EXHIBIT

14

BK: 82344 Pg: 534





2023 00146951
Bk: 82344 Pg: 534   Doc: MTG
Page: 1 of 3   12/26/2023 01:39 PM

# MORTGAGE

*THIS MORTGAGE,* made and entered into on 11-28-2022 , by and between KYRA I NELSON , hereinafter referred to as "Mortgagor," currently residing at 85 ORCHARD ST , BELMONT MA 02478 , in the County of MIDDLESEX , and BRADLEY R NELSON , hereinafter referred to as "Mortgagee," currently located at 65 LOVERS LANE , GROTON, MA, 01450 , in the county of MIDDLESEX by which term means the Mortgagee of this mortgage, with the mortgage covenants, to secure payment of $ 499,000.00 , the Principal sum to be paid, with interest on said sum until paid at the rate of 4 % (percent) computed on the outstanding balance, as provided in this mortgage, and also to secure the performance of all agreements, terms, covenants, conditions and extensions of this Mortgage incorporated herein as referenced.

*THIS MORTGAGE RECORDS THAT* in pursuance to the said agreement and in consideration of the sum $ 499,000.00 , at or before the execution of this MORTGAGE, paid by the MORTGAGEE to the MORTGAGOR, the Mortgagor hereby agrees that he/she will make prompt and timely payment to the Mortgagee on the 15TH day of each month (hereinafter known as the "due date"), the monthly sum of $ 1500.00 with interest at the rate of 4 % until such time as the repayment of the sum in full has been paid in full.

*THIS MORTGAGE FURTHER RECORDS THAT* in consideration of the aforementioned, the Mortgagor hereby expressly consents that the real estate property is located at 65 LOVERS LANE , in the City of GROTON , in the State of MA , in the County of MIDDLESEX , bearing the following exact legal description of "Property" as defined in Exhibit A.

*THEREFORE,* the aforementioned real estate property will be held and retained by the Mortgagee as security for the repayment of the aforementioned sum, with interest, under the aforementioned condition(s) that the Mortgagor, his/her heirs, executors, administrators or delegates will pay to the Mortgagee his/her heirs, executors, administrators or delegates the monthly sum of $ 1,560.00 which includes interest, until such time as the aforementioned sum has been repaid in full to the Mortgagee his/her heirs, executors, administrators or delegates, and that during such time the Mortgagor his/her heirs, executors, administrators or delegates, shall retain, maintain and have full use of the real estate property aforementioned.

*IT IS HEREBY AGREED AND DECLARED,* that should the Mortgagor fail to make the agreed upon payments to the Mortgagee with interest on the agreed upon date that the payment becomes due and payable, the Mortgagee shall have the right and become entitled to take possession of the aforementioned real estate property with the purpose of selling said real estate property in an effort to recover any and all outstanding balance that may be due to Mortgagee out of the sale proceeds of the real estate property.

*IT IS HEREBY FURTHER AGREED AND DECLARED,* by the Mortgagor, that throughout the duration of the Mortgage, and during such time that the real estate property be retained as security for the mortgage amount, the Mortgagor shall obtain and maintain insurance on said property in the joint name of the Mortgagor and the Mortgagee, and that said policy will remain in full force and effect through the

payment of the premium. At any time should the Mortgagor fail to maintain insurance on said property, the Mortgagee can at such time, insure the real estate property, and the premium paid will then be added to the mortgage amount due, if the premium is not paid by the Mortgagor, when requested or demanded to do so by the Mortgagee.

IT IS FURTHER AGREED, that the Mortgagor has the right to grant a lease of the aforementioned real estate property with the written consent of the Mortgagee.

IN CONCLUSION, the Mortgagor agrees that he/she will accept full responsibility with regard to stamp duty, registration charges and any other out of pocket expense that may be related to the execution and registration of this deed or the transfer of this deed back to the original owner. It is further agreed that both parties will accept cost and professional charges of his/her Solicitor/Advocate.

IN WITNESS WHEREOF, this mortgage is executed under seal, and the parties have placed their hands on this date of December 22, 2023.

_____
Mortgagor

_____
Mortgagee

STATE OF MASSACHUSETTS    )
                                              )ss:
COUNTY OF MIDDLESEX    )

BE IT KNOWN, that on this 22nd day of December, 2023 before me, a Notary Public in and for the State and County aforesaid, duly commissioned and sworn, personally came and appeared

___Kyra Nelson___ and ___Bradley R Nelson___ who did take an oath and produced proper identification.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal of office the day and year last above written.

My Commission Expires:

MARCELO ALVARADO
Notary Public, Commonwealth of Massachusetts
My Commission Expires August 10, 2029

_____
NOTARY PUBLIC

Marcelo Alvarado
Printed Notary Name

Identification Produced:

✓ License ____ Passport

____ Other_____

Bk: 82344 Pg: 536

# EXHIBIT A

## LEGAL DESCRIPTION OF REAL PROPERTY

Exhibit A

A certain tract of land on the westerly side of Lovers Lane in Groton, Middlesex County, Massachusetts, being shown as Lot 5, containing approximately 2.03 acres, more or less, and more particularly described on a Plan of Land entitled "Land in Groton, Mass., surveyed for Kevin Sansisto, Scale 1" = 100' dated June 1994" by David E. Ross Associates, Inc., Civil Engineers, and recorded with Middlesex South District Registry of Deeds in Book 24735, page 390.

Subject to a Declaration of Easements for fill and grading, dated October 23, 1997, and recorded with said Deeds in Book 17796, Page 330.

Ded herewith



COMMONWEALTH OF MASSACHUSETTS.
MIDDLESEX S.S. _12/23/2024_
SOUTH DIST. REGISTRY OF DEEDS
CAMBRIDGE, MA
I HEREBY CERTIFY THE FOREGOING
IS A TRUE COPY OF A PAPER
RECORDED IN BOOK _82344_

PAGE _534_

REGISTER

